IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICANS FOR PROSPERITY FOUNDATION<br>1310 North Courthouse Road, Suite 700<br>Arlington, VA 22201,<br><br>   Plaintiff,<br><br> v.<br><br>CENTERS FOR MEDICARE & MEDICAID SERVICES<br>7500 Security Boulevard<br>Baltimore, MD 21244,<br><br>   Defendant. | Civil Action No. 21-2021 |

## COMPLAINT

1. Plaintiff Americans for Prosperity Foundation ("AFPF") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requesting access to agency records maintained by Defendant Centers for Medicare & Medicaid Services ("CMS").

2. AFPF seeks records about CMS's efforts, or lack thereof, to recover Medicaid improper payments. It also seeks records reflecting state-based data on the rates of improper payments and relevant internal CMS correspondence. CMS has neither issued a timely final determination on AFPF's FOIA request nor produced the requested records.

3. The records at issue have significant value that serves the public interest. Although CMS is required by law to recover improperly spent taxpayer dollars, CMS relaxed its regulations regarding recovery efforts for improper payments in 2017. CMS therefore has made it easier for states to allow improper payment rates over the allowable three percent threshold. Further, upon information and belief, CMS has neither released state-by-state improper payment rates nor full evidence of attempts to recover such payments.

**JURISDICTION AND VENUE**

4. Jurisdiction is asserted pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

5. Venue is proper pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

**PARTIES**

6. Plaintiff AFPF is a 501(c)(3) nonprofit organization committed to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society. Among other things, AFPF believes every American should be empowered to pursue better access to quality and affordable healthcare. AFPF is currently investigating Medicaid improper payments and CMS recovery efforts. AFPF routinely files and litigates FOIA requests.

7. Defendant CMS is an agency within the meaning of 5 U.S.C. § 552(f)(1). CMS has possession, custody, and control of agency records to which AFPF seeks access and that are the subject of this Complaint.

**FACTS**

**I.    CMS's Efforts to Recover Improper Medicaid Payments**

8. Section 1903(u) of the Social Security Act requires CMS to recover improper Medicaid payments greater than three percent. *See generally* 42 U.S.C. § 1396b. Yet it appears that CMS has not been diligent in meeting its obligation to recover money improperly sent to states to reimburse the federal government for ineligible Medicaid expenses. For example, in July 2017, CMS issued a rule stating it would only seek reimbursement if "a state's eligibility improper payment rate is above the 3 percent threshold for two consecutive [Payment Error Rate Measurement (PERM)] cycles" and the "state fails to demonstrate a good faith effort in reducing its eligibility improper payment rate." Medicaid/CHIP Program; Medicaid Program and Children's Health Insurance Program (CHIP); Changes to the Medicaid Eligibility Quality Control

and Payment Error Rate Measurement Programs in Response to the Affordable Care Act, 82 Fed. Reg. 31,158, 31,162, 31,177 (July 5, 2017) (to be codified at 42 C.F.R. pts. 431 & 457).

9. The Government Accountability Office has highlighted the need for CMS to do more to conduct fraud risk assessments, create risk-based antifraud strategies for Medicaid programs, improve improper-payment monitoring, and seek legislative authority to permit auditors to conduct prepayment claims reviews. *See High Risk Area: Medicare Program & Improper Payments*, Gov't Accountability Office, https://bit.ly/3A6n06B (last visited July 27, 2021).

10. Notwithstanding supposed improvements at CMS, improper-payment rates continue to rise. Internal CMS reports show Medicaid overpayment rates have ballooned from just under 10% in 2018 to 21% in 2020. *See Fact Sheet: 2020 Estimated Improper Payment Rates for Centers for Medicare & Medicaid Services (CMS) Programs*, Ctrs. for Medicare & Medicaid Servs., Nov. 16, 2020, https://go.cms.gov/3bG6iAt; *see also Fact Sheet: 2019 Estimated Improper Payment Rates for Centers for Medicare & Medicaid Services (CMS Programs)*, Ctrs. for Medicare & Medicaid Servs., Nov. 18, 2019, https://go.cms.gov/2Ua9ezD.

11. The possible reasons for the continued rise in improper-payment rates vary. For example, Medicaid enrollees may be ineligible because they receive an income more than is permitted under a certain program, or enrollees may not meet residency requirements. State governments often fail to ensure compliance with federal requirements. *See* Brian Blase & Hayden Dublois, *Improper Medicaid Payments Have Soared since Obamacare*, Nat'l Rev., Dec. 9, 2020, https://bit.ly/3y36AKE ("In many instances, [states] ignore federal requirements and do not check applicants' incomes, nor do they conduct regular reviews to ensure that those on the program continue to meet eligibility rules."); *see generally* Brian Blase & Aaron Yelowitz, The ACA's Medicaid Expansion: A Review of Ineligible Enrollees and Improper Payments, Nov. 2019,

*available at* https://bit.ly/3A8NbcP.  Lacking CMS oversight only encourages states to continue to neglect their responsibility to ensure program eligibility.

12. The improper-payment problem and CMS's disappointing efforts to address the matter have not gone unnoticed by legislators, who have tried to ensure CMS lawfully spends Medicaid funds.  For example, in March 2019, Senators Chuck Grassley (R-IA) and Pat Toomey (R-PA) sent a letter to CMS seeking data on eligibility error rates, as well as details of CMS efforts to recoup improper payments and the agency's plans for enforcement.  *See* **Exhibit 1**.

13. More recently, in December 2020, Senator Ron Johnson (R-WI) and a coalition of eight other legislators sent a similar letter to CMS.  *See* **Exhibit 2**.  The nine senators emphasized "concerns regarding the rapid growth of Medicaid abuse and misspending following the passage and implementation of Obamacare."  *Id.*  They also highlighted the "50.8 percent increase" in improper payments over the past three years due to "insufficient documentation to verify eligibility and income" and "non-compliance with eligibility redetermination requirements."  *Id.*  The senators requested CMS provide state-by-state improper-payment rates and details about CMS's plans to reverse the rising trend of the improper-payment rate.  *Id.*

14. Upon information and belief, CMS has failed to fully address the senators' concerns in its responses to their letters.

15. Upon information and belief, CMS has not made state-by-state improper-payment rates publicly available, nor has it disclosed information about its efforts to better police Medicaid improper payments.

II. **AFPF's May 21, 2021 FOIA Request**

16. By letter, dated May 21, 2021, AFPF submitted a FOIA request to CMS seeking access to six categories of records:

4

1. [All records reflecting] CMS recovery efforts for the $143 billion of improper Medicaid payments identified in the 2019 and 2020 "Estimated Improper Payment Rates for Centers for Medicare and Medicaid Services (CMS) Programs" Fact Sheets. [. . .]

2. [All records reflecting] CMS recovery efforts for improper payments related to erroneous eligibility determinations under Section 1903(u) of the Social Security Act. Responsive records should include the overpayment amount and the recoveries by state and year. [. . .]

3. [All records reflecting] Medicaid improper payment rates for all 50 states and the District of Columbia between 2012 and 2020. [. . .]

4. [All records reflecting] [s]tate Medicaid eligibility error rates for all 50 states and the District of Columbia between 2012 and 2020. [. . .]

5. [All records reflecting] [c]ommunications between CMS and states regarding efforts to recover Medicaid improper payments[.]

6. [All records reflecting] CMS's responses, and all internal and external communications regarding CMS's responses to a March 11, 2019 letter from Senators Toomey and Grassley and a December 22, 2020 letter from Senator Ron Johnson regarding Medicaid improper payments and recovery efforts. [. . .]

**Exhibit 3** (internal footnotes omitted).

17. AFPF identified the relevant time period as "January 1, 2019, to the present" for Items One, Two, and Five. *Id.* It identified the relevant time period as "January 1, 2012, to the present" for Items Three and Four. *Id.* And it identified the relevant time period as "March 11, 2019, to January 19, 2021" for Item Six. *Id.*

18. AFP defined the term "present" as "the date on which the agency begins it search for responsive records." *Id.*

19. AFPF defined the term "record" as "any medium of information storage in the form and format maintained by the agency at the time of the request." *Id.* It explained that "[i]f any portion of a 'record' . . . is responsive to [its] request, then [CMS] should process and disclose the record in its entirety." *Id.* Thus, "[i]f [CMS] consider[ed] a medium of information storage to

contain multiple records that it believe[d] c[ould] be segmented on the basis of the subject-matter of scope of AFPF's request," it must process all potentially segmented records as responsive. *Id.*

20. For Items Three and Four of its request, AFPF clarified it did not "seek records reflecting the blended or combined rates for multiple states known as cohorts, but rather the specific improper payment rate for each state[.]" *Id.*

21. AFPF requested a public interest fee waiver and classification as a representative of the news media for fee purposes. *Id.*

22. By letter, dated June 1, 2021, CMS acknowledged it had received AFPF's FOIA request and assigned it tracking number 052120217034. See **Exhibit 4**.

23. CMS failed to indicate whether it had placed AFPF's request into a "simple" or "complex" processing queue. It also failed to provide an estimated date of completion or to invoke an extension of its response date due to unusual circumstances. *See id.*

24. CMS did not make any determinations on AFPF's fee-related requests.

25. CMS has not provided any further substantive update on the processing of AFPF's request. It has neither issued a final determination nor produced any responsive records.

## COUNT I

**A.      Violation of the FOIA: Failure to Comply with Statutory Requirements**

26. AFPF repeats all of the above paragraphs.

27. The FOIA requires an agency to accept and process any request for access to agency records that (a) "reasonably describes such records," and (b) "is made in accordance with published rules stating the time, place, fees, . . . and procedures to be followed[.]"  5 U.S.C. § 552(a)(3)(A).

28. The FOIA also requires an agency to respond to valid requests within 20 business days or, in "unusual circumstances," within 30 business days. *Id.* § 552(a)(6)(A)–(B).  If an agency requires additional time to process a request, the FOIA mandates that it provide the requester with

"an opportunity to arrange . . . an alternative time frame for processing the request[.]" *Id.* § 552(a)(6)(B)(ii).

29. The FOIA request here seeks access to agency records maintained by CMS. That request reasonably describes the records sought and otherwise complies with the FOIA and applicable regulations.

30. CMS has failed to issue a final determination on or promptly produce agency records responsive to the FOIA request at issue within the applicable time limits.

31. CMS has also failed to comply with the FOIA because it never "arrange[d] . . . alternative time frame[s]" for responding to AFPF's request, never provided an estimated date of completion, and never actively invited AFPF to negotiate "alternative" response deadlines.

32. AFPF has exhausted its administrative remedies under 5 U.S.C. § 552(a)(6)(C).

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff AFPF respectfully requests and prays that this Court:

a. Order Defendant CMS to process AFPF's FOIA request and issue a final determination within 20 business days of the date of the Order;

b. Order Defendant CMS to produce all agency records responsive to AFPF's FOIA request promptly upon issuing the final determination;

c. Maintain jurisdiction over this case until Defendant CMS complies with the Order and, if applicable, adequately justifies its treatment of all responsive records;

d. Award AFPF its costs and reasonable attorney fees incurred here pursuant to 5 U.S.C. § 552(a)(4)(E); and

e. Grant such other relief as the Court may deem just and proper.

Dated: July 27, 2021                             Respectfully submitted,

<div style="margin-left: 3em;">

*/s/ Ryan P. Mulvey*
Ryan P. Mulvey
D.C. Bar No. 1024362
Eric R. Bolinder
D.C. Bar No. 1028335

AMERICANS FOR PROSPERITY FOUNDATION
1310 North Courthouse Road, Suite 700
Arlington, VA 22201
Telephone: (571) 444-2841
rmulvey@afphq.org
ebolinder@afphq.org

*Counsel for Plaintiff*

</div>