**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AMERICANS FOR PROSPERITY FOUNDATION

Plaintiff,

v.

CENTERS FOR MEDICARE & MEDICAID SERVICES

Defendant.

**COMPLAINT EXHIBIT 1**

CHUCK GRASSLEY, IOWA, CHAIRMAN

MIKE CRAPO, IDAHO
PAT ROBERTS, KANSAS
MICHAEL B. ENZI, WYOMING
JOHN CORNYN, TEXAS
JOHN THUNE, SOUTH DAKOTA
RICHARD BURR, NORTH CAROLINA
JOHNNY ISAKSON, GEORGIA
ROB PORTMAN, OHIO
PATRICK J. TOOMEY, PENNSYLVANIA
TIM SCOTT, SOUTH CAROLINA
BILL CASSIDY, LOUISIANA
JAMES LANKFORD, OKLAHOMA
STEVE DAINES, MONTANA
TODD YOUNG, INDIANA

RON WYDEN, OREGON
DEBBIE STABENOW, MICHIGAN
MARIA CANTWELL, WASHINGTON
ROBERT MENENDEZ, NEW JERSEY
THOMAS R. CARPER, DELAWARE
BENJAMIN L. CARDIN, MARYLAND
SHERROD BROWN, OHIO
MICHAEL F. BENNET, COLORADO
ROBERT P. CASEY, JR., PENNSYLVANIA
MARK R. WARNER, VIRGINIA
SHELDON WHITEHOUSE, RHODE ISLAND
MAGGIE HASSAN, NEW HAMPSHIRE
CATHERINE CORTEZ MASTO, NEVADA

KOLAN DAVIS, STAFF DIRECTOR AND CHIEF COUNSEL
JOSHUA SHEINKMAN, DEMOCRATIC STAFF DIRECTOR

United States Senate

COMMITTEE ON FINANCE

WASHINGTON, DC 20510–6200

March 1, 2019

**VIA ELECTRONIC TRANSMISSION**

The Honorable Seema Verma
Administrator
Centers for Medicare and Medicaid Services

Dear Administrator Verma:

Section 1903(u) of the Social Security Act requires, except in certain limited cases, that the federal government recoup Medicaid eligibility-related improper payments in excess of three percent made by states. A series of disturbing reports by the Department of Health and Human Services Office of the Inspector General (HHS OIG) and the Louisiana Auditor General suggest that the government needs to do more to uphold Section 1903(u) and safeguard the integrity of the Medicaid program.

Collectively, the fifty-six Medicaid programs in our states and territories make up one of the largest health insurance programs in the developed world, covering an estimated 97 million individuals in 2018, including an average of 76 million in any given month. It represents a considerable investment on behalf of the American taxpayer with an anticipated $7.8 trillion in spending over the next decade, of which approximately $4.8 trillion will be paid by the federal government. To maintain public confidence in such a large commitment of national resources, it is essential to ensure these dollars are spent as Congress intended—namely, to provide specified health and long-term care services for low-income Americans, with a historical focus on the aged, disabled, children, and families.

Unfortunately, throughout its history, governmental efforts to ensure Medicaid payments are spent prudently have fallen short. In 2018, the rolling national Medicaid improper payment rate was 9.79 percent.[1] This stunning error rate actually represented an improvement upon the prior year, which itself was an improvement upon 2016. For context, Medicaid often makes more erroneous payments than Congress appropriates for the entire budget of the National Institutes of Health.[2]

---

[1] Centers for Medicare and Medicaid Services, *Payment Error Rate Measurement Program (PERM) Medicaid Improper Payment Rates*, https://www.cms.gov/Research-Statistics-Data-and-Systems/Monitoring-Programs/Medicaid-and-CHIP-Compliance/PERM/Downloads/2018PERMMedicaidImproperPaymentRates.pdf.

[2] NIH spending was $37.31 billion for 2018. *See* National Institutes of Health, *History of Congressional Appropriations, Fiscal Years 2000-2018*, https://officeofbudget.od.nih.gov/pdfs/FY19/Approp%20History%20by%20IC%20FY%202000%20-%20FY%202018.pdf; Office of Management and Budget, *Historical Tables*, https://www.whitehouse.gov/omb/historical-tables/; Congressional Budget Office, *Medicaid—CBO's April 2018 Baseline*, https://www.cbo.gov/system/files?file=2018-06/51301-2018-04-medicaid.pdf

Section 1903(u) of the Social Security Act requires the government to "make no payment for such period or fiscal year with respect to so much of erroneous excess payments as exceed such allowable [eligibility] error rate of 0.03," but CMS determined more than twenty years ago to focus "on prospective improvements in eligibility determinations rather than disallowances" and there have been no efforts made to recoup payments since 1992.[3] In fact, on July 5, 2017, CMS finalized a rule on the Medicaid Eligibility Quality Control and Payment Error Rate Measurement (PERM) programs that specifies efforts to actually recoup funding in compliance with Section 1903(u) will not even *begin* until next year, and even then only in limited circumstances when a state has failed to even make vaguely defined "good faith" efforts to improve eligibility determinations. Finally, in the exceptional circumstance when a state does not make a "good faith" effort to improve eligibility determinations, CMS has indicated it will at most pursue disallowances in one out of every three years.[4]

The apparent lack of effort in recouping misspent federal money is problematic. Recent reviews by HHS OIG of beneficiaries made newly eligible by the Patient Protection and Affordable Care Act (P.L. 111-148, as amended), also known as Obamacare, found more than seven percent of beneficiaries were potentially ineligible in Kentucky,[5] more than 25 percent were potentially ineligible in California,[6] and more than 30 percent were potentially ineligible in New York.[7] In Louisiana, a state Department of Health audit found an astounding 82 percent of recipients ineligible in a random sample.[8]

Diligent federal oversight and legitimate threats of enforcement and disallowances like those specified under Section 1903(u) are essential in Medicaid because the statutory funding mechanism naturally reduces incentives for states to pursue rigorous program integrity efforts. For every dollar saved by states on traditional beneficiaries, the states on average only get to

---

[3] Federal Register, *Changes to the Medicaid Eligibility Quality Control and Payment Error Rate Measurement Programs in Response to the Affordable Care Act,* Vol. 82, No. 127 at 31160, https://www.govinfo.gov/content/pkg/FR-2017-07-05/pdf/2017-13710.pdf

[4] *Id.* at 31177. *Comment:* One commenter requested clarification for whether payment reductions and disallowances would also be applied to the years between PERM cycles for a state whose last PERM eligibility improper payment rate was above the 3 percent threshold, and that state failed to demonstrate a good faith effort.
*Response:* The disallowance of FFP for states whose PERM eligibility improper payment rate is over the 3 percent threshold and who fail to demonstrate a good faith effort applies to each state only in the state's PERM year. Although this rate remains frozen until the state's next PERM eligibility improper payment rate, the disallowance will not be extended to the 2 years between a state's PERM years. For clarification purposes, we have added language to § 431.1010(a)(2) to specifically state the period of payment reduction/disallowance.

[5] Department of Health and Human Services Office of the Inspector General, *Kentucky Did Not Correctly Determine Medicaid Eligibility For Some Newly Enrolled Beneficiaries*, Report No. A-04-15-08044 (May 2017), https://oig.hhs.gov/oas/reports/region4/41508044.pdf

[6] Department of Health and Human Services Office of the Inspector General, *California Made Medicaid Payments on Behalf of Newly Eligible Beneficiaries Who Did Not Meet Federal and State Requirements*, Report No. A-09-16-02023 (February 2018), https://oig.hhs.gov/oas/reports/region9/91602023RIB.pdf

[7] Department of Health and Human Services Office of the Inspector General, *New York Did Not Correctly Determine Medicaid Eligibility For Some Newly Enrolled Beneficiaries*, Report No. A-02-15-01015 (January 2018), https://oig.hhs.gov/oas/reports/region2/21501015.pdf

[8] Louisiana Department of Health Medicaid Audit Unit, *Medicaid Eligibility: Wage Verification Process of the Expansion Population* (November 8, 2018), https://lla.la.gov/PublicReports.nsf/1CDD30D9C8286082862583400065E5F6/$FILE/0001ABC3.pdf

keep 43 cents.[9] For reducing one dollar on waste, fraud, or legitimate errors in the expansion population made eligible by Obamacare, the states save only 7 cents (10 cents starting in 2020).[10] Furthermore, if states accidentally enroll an individual as an expansion enrollee instead of a traditional enrollee, states are perversely, and significantly, rewarded for their error, unless the federal government subsequently takes action to recoup those mistakenly paid funds.

Our offices would like to work with you on our shared goal of ensuring that the government complies with the intent and plain language of Section 1903(u) of the Social Security Act by discouraging systematic and routine errors in Medicaid eligibility determinations by states. We believe that CMS' past actions have ignored its requirements under the law and are concerned that the July 5, 2017 final rule will perpetuate many of the weaknesses that characterized the previous enforcement regime. Accordingly, please provide answers to the following questions by March 15, 2019:

1. Has CMS attempted to recoup any improper payments related to erroneous eligibility determinations under Section 1903(u) of the Social Security Act since 1992? If so, please identify the overpayment amount and the recoveries by state and year.

2. What are the state by state Medicaid eligibility error rates since the PERM program began tracking this metric in 2008?

3. What are the state by state Medicaid eligibility error rates for traditional eligibility pathways versus the newly eligible pathway created by the Patient Protection and Affordable Care Act since the expansion in 2014?

4. What additional statutory authorities would be beneficial for the purpose of enforcing Section 1903(u)?

Thank you for your attention to these important matters. Should you have questions, please contact Josh Flynn-Brown of Chairman Grassley's Committee staff at 202-224-4515 or Theo Merkel of Senator Toomey's staff at 202-224-4254.

Sincerely,

Charles E. Grassley
Chairman
Committee on Finance

Patrick J. Toomey
Chairman, Subcommittee on Health Care
Committee on Finance

---

[9] Medicaid and CHIP Payment and Access Commission, *Matching Rates*, https://www.macpac.gov/subtopic/matching-rates/
[10] *Id.*