UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICANS FOR PROSPERITY
FOUNDATION,

                *Plaintiff*,

    v.

CENTERS FOR MEDICARE AND
MEDICAID SERVICES,

                *Defendant*.

Civil Action No. 21-2021 (CJN)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

BACKGROUND ........................................................................................................................ 1

LEGAL STANDARD.................................................................................................................. 2

ARGUMENT .............................................................................................................................. 3

A.    In the Attorney-Client Privilege Context, the Foreseeable Harm of Disclosure is Self-
      Evident .......................................................................................................................... 4

B.    The Withheld Materials' Disclosure Foreseeably Would Harm Interests that the
      Attorney-Client Privilege Protects................................................................................ 10

CONCLUSION.......................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*ACLU v. CIA*,
  Civ. A. No. 18-2784 (CJN), 2022 WL 306360 (D.D.C. Feb. 2, 2022) ............................. 10, 11

*Avila v. Dep't of State*,
  Civ. A. No. 17-2685 (RC), 2022 WL 2104483 (D.D.C. June 10, 2022) ............................ 9, 12

*Benjamin v. Dep't of State*,
  178 F. Supp. 3d 1 (D.D.C. 2016) ............................................................................................ 2

*Berd v. Lovelace*,
  21 Eng. Rep. 33 (1577) ............................................................................................................ 6

*Cabezas v. FBI*,
  Civ. A. No. 19-0145 (CJN), 2022 WL 898789 (D.D.C. Mar. 28, 2022) .......................... 10, 12

*Cayuga Nation v. Dep't of the Interior*,
  Civ. A. No. 20-2642 (ABJ), 2022 WL 888178 (D.D.C. Mar. 25, 2022) ............................ 8, 11

*Council on Am.-Islamic Relations v. Gaubatz*,
  667 F. Supp. 2d 67 (D.D.C. 2009) ........................................................................................ 11

*Ecological Rts. Found. v. EPA*,
  Civ. A. No. 19-0980 (BAH), 2021 WL 535725 (D.D.C. Feb. 13, 2021) ..................... 8, 10, 11

*Ecological Rts. Found. v. EPA*,
  541 F. Supp. 3d 34 (D.D.C. 2021) .......................................................................................... 9

*Gen. Acct. Off. v. Gen. Acct. Off. Pers. App. Bd.*,
  698 F.2d 516 (D.C. Cir. 1983) ................................................................................................ 7

*Houston Lighting Power Co. v. United States*,
  606 F.2d 1131 (D.C. Cir. 1979) .............................................................................................. 8

*In re Lindsey*,
  158 F.3d 1263 (D.C. Cir. 1998) .............................................................................................. 4

*In re Sealed Case*,
  107 F.3d 46 (D.C. Cir. 1997) ............................................................................................ 5, 11

*In re Sealed Case*,
  877 F.2d 976 (D.C. Cir. 1989) ................................................................................................ 6

**Cases (cont.)**

*Jaffee v. Redmond*,
  518 U.S. 1 (1996) ........................................................................................ 6

*Jud. Watch, Inc. v. Dep't of Just.*,
  365 F.3d 1108 (D.C. Cir. 2004) ................................................................... 7

*Jud. Watch, Inc. v. Dep't of Just.*,
  813 F.3d 380 (D.C. Cir. 2016) ..................................................................... 3

*Kaiser Aluminum & Chem. Corp. v. United States*,
  157 F. Supp. 939 (Ct. Cl. 1958) .................................................................. 6

*Louise Trauma Center LLC v. Dep't of Homeland Sec.*,
  Civ. A. No. 20-1128 (TNM), 2022 WL 1081097 (D.D.C. Apr. 11, 2022) ................................. 9

*Machado Amadis v. Dep't of State*,
  971 F.3d 364 (D.C. Cir. 2020) ..................................................................... 9

*McGehee v. CIA*,
  697 F.2d 1095 (D.C. Cir. 1983) ................................................................... 3

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009) .................................................................................... 5

*Moody v. IRS*,
  654 F.2d 795 (D.C. Cir. 1981) ..................................................................... 6

*Nat'l Sec. Archive v. CIA*,
  752 F.3d 460 (D.C. Cir. 2014) ..................................................................... 4

*Reporters Comm. for Freedom of the Press v. Customs & Border Prot.*,
  567 F. Supp. 3d 97 (D.D.C. 2021) ...................................................... 8, 10, 12

*Reporters Comm. for Freedom of the Press v. FBI*,
  3 F.4th 350 (D.C. Cir. 2021) ................................................................ 4, 5, 7

*Rosenberg v. Dep't of Def.*,
  442 F. Supp. 3d 240 (D.D.C. 2020) .............................................................. 4

*Selgjekaj v. Exec. Off. for U.S. Att'ys*,
  Civ. A. No. 20-2145 (CRC), 2021 WL 3472437 (D.D.C. Aug. 6, 2021) .................................. 9

*Swidler & Berlin v. United States*,
  524 U.S. 399 (1998) .................................................................................... 6

**Cases (cont.)**

*Tobias v. Dep't of the Interior*,
  Civ. A. No. 18-1368 (CJN), 2021 WL 4262488 (D.D.C. Sept. 20, 2021) .......................... 9, 12

*United States v. Jicarilla Apache Nation*,
  564 U.S. 162, 165 (2011).................................................................................................. 6, 12

*United States v. Philip Morris, Inc.*,
  314 F.3d 612 (D.C. Cir. 2003) ..................................................................................... 5, 6, 11

*United States v. Zolin*,
  491 U.S. 554 (1989).............................................................................................................. 5, 7

*Weisberg v. Dep't of Justice*,
  627 F.2d 365 (D.C. Cir. 1980) ................................................................................................. 2

**Statutes**

FOIA Improvement Act,
  Pub. L. No. 114-185, 130 Stat. 538 (2016)........................................................................... 3, 7

5 U.S.C. § 552................................................................................................................................ 1
  *Id.* § 552(a)(3)(A)...................................................................................................................... 3
  *Id.* § 552(a)(8)(A)(i).................................................................................................................. 4
  *Id.* § 552(b)................................................................................................................................ 3
  *Id.* § 552(b)(5)........................................................................................................................ 4, 7

42 U.S.C. § 1396b(u)(1)(A)......................................................................................................... 1

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................................................... 2

**Treatises**

1 McCormick on Evidence (Robert P. Mosteller et al. eds., 8th ed. 2020) ................................... 6

**Other Authorities**

H.R. Rep. No. 114-391 (2016)................................................................................................... 6, 7

S. Rep. 114-4 (2015)...................................................................................................................... 7

Defendant Centers for Medicare and Medicaid Services, by and through the undersigned counsel, respectfully files this memorandum in support of its motion for summary judgment. This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Compl. ¶ 1, ECF No. 1. Plaintiff Americans for Prosperity Foundation filed a FOIA request for certain records relating to what it characterizes as the Centers' "efforts, or lack thereof, to recover . . . improper [Medicaid] payments." *Id.* ¶ 2. Though the Centers' search for records responsive to this request yielded over 15,000 potentially responsive records, through months of amicable cooperation, the parties have narrowed their dispute to a single issue concerning three records, amounting to five pages in total—namely, whether disclosing portions of these records that concededly fall within the attorney-client privilege's scope foreseeably would harm interests that the privilege protects.[1] Because disclosing these materials would indeed foreseeably harm interests that the attorney-client privilege protects, this Court should grant the Centers summary judgment.

## BACKGROUND

Section 1903(u) of the Social Security Act requires the Centers to withhold Medicaid funds from states for erroneous payments exceeding 3% of their total approved Medicaid expenditures. 42 U.S.C. § 1396b(u)(1)(A). Believing that the Centers "has not been diligent in meeting [this] obligation," the Foundation filed a FOIA request on May 21, 2021, for records falling within six broad categories relating to this concern. Compl. ¶ 8; FOIA Request, ECF No. 1-3. On July 27, 2021, the Foundation filed this action. Compl. ¶ 30. The Centers' search for records responsive to the Foundations' request initially yielded over 15,000 potentially responsive records. Joint Status Rep., ECF No. 14. Over several months, the parties conferred to ensure that an adequate search

---

[1]     Counsel for the Foundation has authorized the Centers to inform this Court that the parties do not dispute that the privilege does in fact apply to the withheld portions of the memorandum.

was conducted and that all responsive, non-exempt records were produced, in hope of "narrow[ing] the scope of their dispute to the greatest degree possible." Joint Status Rep., ECF No. 21.

The only three records remaining in dispute relate to an agency official's request for, and an agency attorney's provision of, legal advice concerning a contemplated agency action. The first is a two-page draft memorandum titled "Revised State Findings on Fiscal Year 1982 Disallowances," for which the Director of the Centers' Office of Medicaid Management had sought legal advice and clearance from the Centers' Office of the General Counsel. Decl. of Hugh Gilmore ¶¶ 8, 12. The second is a two-page attachment to the draft memorandum. *Id.* ¶ 12. The third is a one-page memorandum, dated September 18, 1990, from the Office of the General Counsel to the Director offering opinions on the Centers' legal authority to take certain actions that the draft memorandum contemplated. *Id.* ¶¶ 8, 11-13. All withholdings were made under FOIA Exemption 5, based on the attorney-client privilege. *Id.* ¶¶ 8-9, 11-13. The Centers produced in full the Director's request for review and clearance of the draft memorandum. *Id.* ¶ 12.

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "FOIA cases are typically and appropriately decided on motions for summary judgment." *Benjamin v. Dep't of State*, 178 F. Supp. 3d 1, 3 (D.D.C. 2016) (internal quotation marks omitted), *aff'd*, No. 16-5175 2017 WL 160801 (D.C. Cir. Jan. 3, 2017). An agency is entitled to summary judgment in a FOIA case if it demonstrates that no material facts are disputed, it has conducted an adequate search for responsive records, and each responsive record found either has been produced or is exempt from disclosure. *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980). To meet this burden, an agency

2

may rely on reasonably detailed, non-conclusory declarations. *See McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).

## ARGUMENT

The only issue remaining in this case is whether disclosing the withheld materials, which concededly fall within the attorney-client privilege's scope, foreseeably would harm interests that the privilege protects. Because the harm that breach of the attorney-client privilege causes is self-evident, an agency typically needs to show little to satisfy the foreseeable harm requirement. The Centers has adequately shown that disclosing the withheld materials would harm interests that the privilege protects in two ways: by (1) exposing communications made under an understanding of attorney-client confidentiality, and (2) chilling agency officials from seeking, and agency attorneys from providing, legal advice concerning contemplated agency actions.

FOIA generally requires a federal agency, "upon any request for records" that "reasonably describes such records" and conforms to applicable agency rules, to "make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). An agency need not, however, produce a responsive record if certain conditions obtain. First, the record must fall within the scope of a FOIA exemption. *Id.* § 552(b). Until 2016, this was the only condition on an agency's ability to withhold a record—so long as the record fell within an exemption's scope, an agency could withhold it. *See Jud. Watch, Inc. v. Dep't of Just.*, 813 F.3d 380, 383 (D.C. Cir. 2016) ("An agency is not required to produce a responsive record if the record comes within any of the nine statutory exemptions.").

In 2016, however, Congress imposed some additional conditions on an agency's ability to withhold records. Under the FOIA Improvement Act, Pub. L. No. 114-185, 130 Stat. 538 (2016), an agency no longer may withhold a record merely because the record falls within an exemption's scope. Instead, an agency must also make one of two additional showings—either that (1) the

record's "disclosure is prohibited by law," or (2) the agency "reasonably foresees that disclosure would harm an interest protected by an exemption." 5 U.S.C. § 552(a)(8)(A)(i); *see also Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (the FOIA Improvement Act "imposes an independent . . . burden on agencies" (cleaned up)).

The foreseeable harm requirement does not on its face appear to be limited to withholdings made on any specific basis. 5 U.S.C. § 552(a)(8)(A)(i). Rather, it appears to apply to withholdings made on any basis, unless disclosure is prohibited by law. *Id.* But that does not mean that an agency faces the same burden to show foreseeable harm no matter the particular basis for its withholding. To the contrary, "[t]he degree of detail necessary to substantiate a claim of foreseeable harm is context-specific." *Rosenberg v. Dep't of Def.*, 442 F. Supp. 3d 240, 259 (D.D.C. 2020), cited with approval by *Reporters Comm.*, 3 F.4th at 370. "In some instances, the withheld information may be so obviously sensitive . . . that a simple statement illustrating why the privilege applies and identifying the harm likely to result from release may be enough." *Id.*

A.    **In the Attorney-Client Privilege Context, the Foreseeable Harm of Disclosure is Self-Evident**

Exemption 5 covers "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). It thus "encompasses the privileges that the Government could assert in civil litigation against a private litigant, such as the attorney-client privilege." *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 462 (D.C. Cir. 2014). "The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services." *In re Lindsey*, 158 F.3d 1263, 1267 (D.C. Cir. 1998). "The privilege promotes sound legal advocacy by ensuring that [an attorney] knows all the information necessary

to represent his client." *United States v. Philip Morris, Inc.*, 314 F.3d 612, 618 (D.C. Cir. 2003), *abrogated in unrelated part*, *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009).

Neither the Supreme Court nor the D.C. Circuit has articulated the standard that an agency must meet to demonstrate foreseeable harm in the attorney-client privilege context. In *Reporters Committee*, the D.C. Circuit held that "[i]n the context of withholdings made under the deliberative process privilege, the foreseeability requirement means that agencies must concretely explain how disclosure 'would'—not 'could'—adversely impair internal deliberations." 3 F.4th at 369-70. But *Reporters Committee* was limited by its own terms to the context of the deliberative process privilege, and did not purport to address the discrete context of the attorney-client privilege. *Id.* at 369. *Reporters Committee* did recognize, however, that a record's "very context and purpose" can "make the foreseeability of harm" resulting from its disclosure "manifest." *Id.* at 372.

In the attorney-client privilege context, the harm of disclosure is self-evident. "In modern society, legal advice and assistance is often essential." *In re Sealed Case*, 107 F.3d 46, 49 (D.C. Cir. 1997). "To provide effective representation, attorneys need full and frank disclosures from their clients." *Id.* (internal quotation marks omitted). "Clients, it has been thought, might not be forthright if their lawyers could be turned into witnesses against them or if they could be forced to disclose their conversations with their lawyers." *Id.* Thus, as the D.C. Circuit has recognized, "the general injury caused by the breach of the attorney-client privilege . . . is clear enough" on its own without need for much additional elaboration. *Philip Morris Inc.*, 314 F.3d at 622.

Four considerations reinforce the conclusion that an agency's burden to show foreseeable harm is low in the attorney-client privilege context. First, "the centrality of open client and attorney communication to the proper functioning of our adversary system of justice," *United States v. Zolin*, 491 U.S. 554, 562 (1989), makes obvious the harm that results from breach of the privilege.

"The attorney-client privilege rests at the center of our adversary system." *Philip Morris Inc.*, 314 F.3d at 618. If clients could not engage in "full and frank communication" with their attorneys, the "broader public interests in the observance of law and the administration of justice" would be undermined. *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (cleaned up).

Second, the attorney-client privilege's "ancient lineage," *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989), makes the harm inherent in its breach one with which our law is well familiar. The attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law," and "among . . . the most established" of them. *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 165, 169 (2011) (internal quotation marks omitted). English law recognized the privilege as early as 1577, *see Berd v. Lovelace*, 21 Eng. Rep. 33 (1577), and its conceptual roots date all the way back to Roman law, *see* 1 McCormick on Evidence § 87 (Robert P. Mosteller et al. eds., 8th ed. 2020). The deliberative process privilege, in contrast, lacks comparably deep roots in our law—it "is a relatively recent innovation by the judicial branch, first appearing in an American judicial decision in 1958." H.R. Rep. No. 114-391, at 10 (2016) (citing *Kaiser Aluminum & Chem. Corp. v. United States*, 157 F. Supp. 939 (Ct. Cl. 1958)).

Third, the attorney-client privilege's unqualified nature means that the interests it protects are interests that our law deems to outweigh all others, making the harm of its breach self-evident. Because the attorney-client privilege cannot be overcome by a showing of sufficient need or undue hardship, *Moody v. IRS*, 654 F.2d 795, 799 n.10 (D.C. Cir. 1981), a breach necessarily undermines values that our law deems to override "the normally predominant" social interest in "ascertaining truth" in all circumstances. *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996).[2] The idea that compromising

---

[2]     The crime-fraud exception to the privilege does not suggest otherwise, because the very "reason for [the privilege]—the centrality of open client and attorney communication to the proper

such weighty values foreseeably causes harm hardly needs to be said. The deliberative process privilege, in contrast, "is qualified and can be overcome by a sufficient showing of need," *Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1113 (D.C. Cir. 2004), which suggests that its breach compromises less weighty values. Such lesser harms naturally require greater explanation.

Fourth, as the D.C. Circuit has recognized, "Congress was particularly concerned with increasing agency overuse and abuse of . . . the deliberative process privilege" when it enacted the FOIA Improvement Act. *Reporters Comm.*, 3 F.4th at 369; *see also* H.R. Rep. No. 114-391, at 10 ("The deliberative process privilege is the most used privilege and the source of the most concern regarding overuse. . . . The deliberative process privilege has become the legal vehicle by which agencies continue to withhold information about government operations. . . . [T]his was a central problem FOIA was trying to fix . . . ." (citations omitted)).

Congress's unique concern over agencies' reliance on the deliberative process privilege is reflected in its choice to single it out for a limitation that applies to no other bases for withholding. Section 2(2) of the FOIA Improvement Act provides that "the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested." 130 Stat. at 540 (codified at 5 U.S.C. § 552(b)(5)). Notably, early drafts of the Act imposed this limit on all withholdings under Exemption 5, not just withholdings under the deliberative process privilege. *See* H.R. Rep. No. 114-391, at 11; S. Rep. 114-4, at 4 (2015). This suggests that the lack of such a limit on the attorney-client privilege in the Act's final text reflects a deliberate legislative choice. *See Gen. Acct. Off. v. Gen. Acct. Off. Pers. App. Bd.*, 698 F.2d 516, 525 n.52 (D.C. Cir. 1983) (the "rejection of a specific provision" during the legislative process "can be particularly

---

functioning of our adversary system of justice—ceases to operate . . . where the desired advice refers *not to prior wrongdoing*, but to *future wrongdoing*." *Zolin*, 491 U.S. at 562-63 (cleaned up).

significant" evidence of Congress's intent); *see also Houston Lighting Power Co. v. United States*, 606 F.2d 1131, 1139 (D.C. Cir. 1979) (removal of language in a proposed bill from one legislative session to the next suggests "a deliberate choice to give [a] provision a [different] scope").

Unsurprisingly, every judge in this District to consider the question has concluded that an agency's burden to show foreseeable harm is relatively low in the attorney-client privilege context, given how obvious the harm of disclosure is. In *Reporters Committee for Freedom of the Press v. Customs & Border Protection*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021), for example, Judge McFadden determined that "an agency's burden under the foreseeable harm requirement" is "more easily met" under the attorney-client privilege than under the deliberative process privilege, as "the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated." Judge McFadden reasoned that "[r]elease of attorney-client communications would undoubtably undermine our legal culture" because "the observance of law otherwise promoted by the privilege would be hampered during agency decisionmaking," emphasizing the attorney-client privilege's "prominent and sacrosanct role in the law." *Id.* (internal quotation marks omitted).

Likewise, in *Cayuga Nation v. Department of the Interior*, Civ. A. No. 20-2642 (ABJ), 2022 WL 888178, at *9 (D.D.C. Mar. 25, 2022), Judge Jackson concluded that disclosure's harm was "apparent" under the attorney-client privilege, because "disclosure of privileged information is a harm in and of itself when it comes to the attorney-client relationship." In *Ecological Rights Foundation v. EPA*, Civ. A. No. 19-0980 (BAH), 2021 WL 535725, at *32 (D.D.C. Feb. 13, 2021), meanwhile, Chief Judge Howell concluded that "[w]hen invoking the attorney-client privilege, [ ] an agency likely does not need to reach far beyond the fact of disclosure to show foreseeable

harm," because "disclosure of privileged information is a harm in and of itself."[3] And, in *Avila v. Department of State*, Civ. A. No. 17-2685 (RC), 2022 WL 2104483, at *12 (D.D.C. June 10, 2022), Judge Contreras determined that a breach of the attorney-client privilege "would jeopardize agency officials' ability to freely give and receive legal advice in its operations."[4]

This Court, too, has recognized that in the attorney-client privilege context, the harm of disclosure is so self-evident as to require little additional explanation. In *Tobias v. Department of the Interior*, Civ. A. No. 18-1368 (CJN), 2021 WL 4262488, at *2 (D.D.C. Sept. 20, 2021) (cleaned up), this Court explained that "[s]o long as the agency specifically focused on the information at issue under review, and it concluded that disclosure of that information would chill future internal discussions, the court can conclude that the agency correctly understood the governing legal requirement and explained why it was met." Applying this standard, this Court concluded that an agency had demonstrated foreseeable harm by explaining that a breach of the attorney-client

---

[3]     Chief Judge Howell later vacated a different portion of this opinion on unrelated grounds. *See Ecological Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 41 (D.D.C. 2021).

[4]     Judges in this District have also reached similar conclusions in the related context of the attorney work-product doctrine. In *Louise Trauma Center LLC v. Department of Homeland Security*, Civ. A. No. 20-1128 (TNM), 2022 WL 1081097, at *6 (D.D.C. Apr. 11, 2022) (internal quotation marks omitted), Judge McFadden concluded that an agency had shown foreseeable harm even though its own "explanation provide[d] little clarity," because "the context and purpose of attorney work product makes self-evident the harm from its disclosure." In *Selgjekaj v. Executive Office for U.S. Attorneys*, Civ. A. No. 20-2145 (CRC), 2021 WL 3472437, at *5 (D.D.C. Aug. 6, 2021) (internal quotation marks omitted), meanwhile, Judge Cooper deemed it "hardly debatable that the government's ability to prosecute [ ] cases would be impeded if its attorneys were deprived of a zone of privacy within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." The D.C. Circuit likewise has endorsed similar reasoning in the context of the deliberative process privilege, concluding that an agency had demonstrated foreseeable harm where it "explained that full disclosure of the [records] would discourage line attorneys from candidly discussing their ideas, strategies, and recommendations, thus impairing the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals." *Machado Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (cleaned up).

privilege "would impair the ability of agency employees to fully inform agency counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency." *Id.*

Then, in *ACLU v. CIA*, Civ. A. No. 18-2784 (CJN), 2022 WL 306360, at *11 (D.D.C. Feb. 2, 2022) (internal quotation marks omitted), this Court explained that an agency had demonstrated foreseeable harm by explaining "that if [certain] confidential attorney-client communications were disclosed, it would subject the legal guidance to scrutiny and reveal preliminary legal risk analysis and strategy." Finally, in *Cabezas v. FBI*, Civ. A. No. 19-0145 (CJN), 2022 WL 898789, at *8 (D.D.C. Mar. 28, 2022) (internal quotation marks omitted), this Court concluded that "[d]isclosure of the legal advice at issue would disrupt the adversarial process of litigation by providing access to information related to the government's potential legal strategies."

None of this is to say that agencies can demonstrate foreseeable harm in the attorney-client privilege context through purely "conclusory statements," such as a bald assertion "that disclosure would undermine the attorney-client privilege." *Reporters Comm.*, 567 F. Supp. 3d at 124 (internal quotation marks omitted). Although "establishing the attorney-client privilege will go a long way to show the risk of foreseeable harm," as Judge McFadden has explained, "an agency must still provide a non-generalized explanation on the foreseeable harm that would result from disclosure of attorney-client communications." *Id.* But because the harm of disclosure is self-evident in the attorney-client privilege context, an agency's burden to explain that harm usually "does not need to reach far beyond the fact of disclosure" itself. *Ecological Rts. Found.*, 2021 WL 535725, at *32.

**B.    The Withheld Materials' Disclosure Foreseeably Would Harm Interests that the Attorney-Client Privilege Protects**

Disclosing the withheld materials foreseeably would harm interests that the attorney-client privilege protects. First, because these materials "were communicated under an understanding that they would remain confidential, due to the legal nature of the advice being sought and given,"

Gilmore Decl. ¶ 12, their disclosure would harm interests that the attorney-client privilege protects in and of itself. *See Philip Morris Inc.*, 314 F.3d at 622 (recognizing "the general injury caused by breach of the attorney-client privilege"); *ACLU*, 2022 WL 306360, at *11 ("if the confidential attorney-client communications were disclosed, it would subject the legal guidance to scrutiny and reveal preliminary legal risk analysis and strategy"); *Cayuga Nation*, 2022 WL 888178, at *9 ("disclosure of privileged information is a harm in and of itself when it comes to the attorney-client relationship"); *Ecological Rts. Found.*, 2021 WL 535725, at *32 ("The purpose of the attorney-client privilege . . . is to provide an assurance of confidentiality to clients, such that disclosure of privileged information is a harm in and of itself." (cleaned up)); *Council on Am.-Islamic Relations v. Gaubatz*, 667 F. Supp. 2d 67, 77 (D.D.C. 2009) (relying on *Philip Morris Inc.* to recognize that disclosure of material that attorney-client privilege protects is itself a freestanding harm, separate from any chilling effect on clients' willingness to speak candidly with counsel).

Second, disclosing the withheld materials would chill Centers officials and attorneys from seeking or providing legal advice concerning the Centers' authority to take contemplated actions. The Centers has explained that the withheld materials "consist of communication that concerns the basis of [its] legal authority to take certain actions," and that their release "would discourage [it] from seeking legal advice on the scope of its authority to take certain actions in the future, because it would know that any such communications may become public." Gilmore Decl. ¶ 13; *see also id.* ¶ 11 ("Should these materials be released, agency officials would be discouraged from seeking, and thus less likely to seek, legal review and advice regarding sensitive documents, thus hindering agency counsel's ability to provide sound legal advice and advocacy."). That is precisely the kind of harm the attorney-client privilege is designed to prevent. *See Sealed Case*, 107 F.3d at 49 ("the privilege is designed to encourage [ ] consulting a lawyer for the purpose of achieving legal

compliance"). This Court and other judges in this District thus have deemed similar explanations sufficient to show foreseeable harm. *See Cabezas*, 2022 WL 898789, at *8 ("Disclosure could also dissuade attorneys from sharing all relevant material and from speaking frankly"); *Reporters Comm.*, 567 F. Supp. 3d at 120 ("Courts have long recognized that confidentiality encourages clients to consult counsel before embarking on a potentially illegal venture.").

Disclosure's chilling effect on clients' willingness to seek, and attorneys' willingness to provide, candid legal advice is especially harmful when the client is a federal agency, which must be able to rely on sound legal advice in order to ensure that it exercises its authority lawfully. *See Jicarilla Apache Nation*, 564 U.S. at 169 ("The privilege aids government entities and employees in obtaining legal advice founded on a complete and accurate factual picture." (internal quotation marks omitted)); *Avila*, 2022 WL 2104483, at *12 ("Disclosure would jeopardize agency officials' ability to freely give and receive legal advice in its operations."); *Reporters Comm.*, 567 F. Supp. 3d at 120 ("Agencies would lose an important tool in their decisionmaking process—employees' ability to confidentially consult agency lawyers. More, the observance of law otherwise promoted by the privilege would be hampered during agency decisionmaking. . . . That rationale and benefit is especially applicable for federal officials making policy decisions." (cleaned up)); *Tobias*, 2021 WL 4262488, at *2 ("disclosure of attorney-client privileged material would impair the ability of agency employees to fully inform agency counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency" (internal quotation marks omitted)).

For all these reasons, the withheld materials' disclosure foreseeably would harm interests that the attorney-client privilege protects.

*      *      *

## CONCLUSION

This Court should grant the Centers summary judgment.

Dated: November 15, 2022

Respectfully submitted,

MATTHEW M. GRAVES,
United States Attorney
D.C. Bar No. 481052

BRIAN P. HUDAK
Chief, Civil Division

/s/ Bradley G. Silverman
BRADLEY G. SILVERMAN
Assistant United States Attorney
D.C. Bar No. 1531664
601 D Street NW
Washington, DC 20530
(202) 252-2575
bradley.silverman@usdoj.gov

*Attorneys for the United States*

13