UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICANS FOR PROSPERITY FOUNDATION, <br><br> Plaintiff, <br><br> v. <br><br> CENTERS FOR MEDICARE AND MEDICAID SERVICES, <br><br> Defendant. | Civil Action No. 21-2021 |

## DECLARATION OF HUGH GILMORE

I, Hugh Gilmore, declare as follows:

1. I am the Director of the Freedom of Information Group ("FOIA Group"), Office of Strategic Operations and Regulatory Affairs, Centers for Medicare & Medicaid Services ("CMS"), U.S. Department of Health and Human Services ("HHS" or "the Department"). In this capacity, I am the Freedom of Information Officer for CMS. I have held this position with CMS since 2014.

2. My duties include responding to requests under the Freedom of Information Act, 5 U.S.C. § 522 ("FOIA"), for CMS records. These duties include managing searches for CMS records in response to requests under the FOIA, determining whether to release or withhold records or portions of records in accordance with the FOIA and the HHS regulations implementing the FOIA, and overseeing all FOIA activities within CMS.

3. I make this declaration based upon my personal knowledge and information available to me in my official capacity.

4. My office handled Plaintiff's CMS FOIA request at issue in this case. The

purpose of this declaration is to further explain the processing of CMS records at issue in the above-captioned action, and to explain the withholdings made under the FOIA that Plaintiff now contests.

**ADMINISTRATIVE PROCESSING OF PLAINTIFF'S FOIA REQUEST**

5. On May 21, 2021, Plaintiff submitted a FOIA request to CMS seeking "*all records reflecting:*

> *1. CMS recovery efforts for the $143 billion of improper Medicaid payments identified in the 2019 and 2020 "Estimated Improper Payment Rates for Centers for Medicare & Medicaid Services (CMS) Programs" Fact Sheets. The time period for this request item is January 1, 2019, to the present.*
>
> *2. CMS recovery efforts for improper payments related to erroneous eligibility determinations under Section 1903(u) of the Social Security Act. Responsive records should include the overpayment amount and the recoveries by state and year. The time period for this request item is January 1, 2019, to the present.*
>
> *3. Medicaid improper payment rates for all 50 states and the District of Columbia between 2012 and 2020.5 The time period for this request item is January 1, 2012, to the present.*
>
> *4. State Medicaid eligibility error rates for all 50 states and the District of Columbia between 2012 and 2020.6 The time period for this request item is January 1, 2012, to the present.*
>
> *5. Communications between CMS and states regarding efforts to recover Medicaid improper payments from January 1, 2019 to the present.*

2

> *6. CMS's responses, and all internal and external communications regarding CMS's responses, to a March 11, 2019 letter7 from Senators Toomey and Grassley and a December 22, 2020 letter8 from Senator Ron Johnson regarding Medicaid improper payments and recovery efforts. The time period for this request is March 11, 2019, to January 19, 2021."* ECF 1.

6. CMS conducted searches for records responsive to Plaintiff's FOIA request. Upon conclusion of the searches, the parties engaged in various discussions concerning narrowing the scope of the searches. As a result, from January 2022 to May 2022, CMS provided Plaintiff with five interim productions. It is my understanding that the Plaintiff is satisfied with the documents released and does not contest the adequacy of the search.

7. Plaintiff subsequently requested additional information concerning documents that CMS withheld in full or in part under FOIA Exemption (b)(5)[1]. CMS provided answers to Plaintiff's questions concerning certain withheld information and provided Plaintiff with two draft *Vaughn* indexes that further described documents withheld in full. CMS also determined that information that had previously been withheld could now be released to Plaintiff, in full or in part, and re-released those pages to Plaintiff. As a result, the majority of Plaintiff's concerns were addressed and resolved.

## CONTESTED EXEMPTION 5 WITHHOLDING

8. The parties could not reach an agreement concerning one document which contests the withholding of information under FOIA Exemption (b)(5)[2]. The document is identified as Bates stamped pages CMS MAR 00475-00480, and is described as a September 18,

---

[1] 5 U.S.C. § 552(b)(5).

[2] 5 U.S.C. § 552(b)(5).

1990, Memorandum from the Office of the General Counsel (OGC) to the Director, Office of Medicaid Management regarding CMS' requested review and clearance of the Revised State Findings on Fiscal Year 1982 Disallowances, to include a draft memorandum which is the subject of the clearance.  This document consists of 7 pages, of which 3 pages are partially withheld and 2 pages are withheld in full, as attorney-client privileged information under FOIA Exemption (b)(5) [3].

9. FOIA Exemption (b)(5)[4] protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." The three most frequently invoked privileges incorporated into FOIA Exemption (b)(5)[5] are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege.  In the case of the document in question, the attorney-client privilege applies to the information this is withheld in part or in full.

10. The attorney-client privilege protects confidential communications between an attorney and a client relating to legal advice. This privilege ensures that confidential communications between government attorneys and their agency clients will not be disclosed without consent to encourage full and frank communications on legal matters. Disclosure of material containing communications between an attorney and a client would impede these frank communications and hinder the agency officials' ability to carry out their duties with the appropriate legal advice.

11. The withheld material constitutes confidential communications between agency

---

[3] 5 U.S.C. § 552(b)(5).

[4] 5 U.S.C. § 552(b)(5).

[5] 5 U.S.C. § 552(b)(5).

attorneys and CMS related to legal matters for which CMS sought professional legal assistance and services. It also includes opinions given by OGC attorneys regarding the subject matter. This information is considered confidential, and CMS has not waived the attorney-client privilege. Should this document be released, agency officials would be discouraged from seeking, and thus less likely to seek, legal review and advice regarding sensitive documents, thus hindering agency counsel's ability to provide sound legal advice and advocacy. This breakdown in communications with agency counsel would cause a foreseeable harm to the agency and detriment to agency officials' ability to seek legal advice.

12. Page CMS MAR 00477 consists of a letter dated July 25, 1990, written by the Director, Office of Medicaid Management to the OGC seeking legal advice and review of a proposed memorandum. This page was released to Plaintiff in full. Pages CMS MAR 00478-00479 are partially redacted to withhold the contents of the memorandum for which legal review was requested, and pages CMS MAR 004780-004781 are withheld in full as an attachment to the memorandum. Page CMS MAR 00475 consists of a memorandum dated September 18, 1990, from the OGC to the Director, Office of Medicaid Management. Portions of this document are withheld in part as the material consists of legal advice provided by OGC to CMS concerning the content of the proposed memorandum. Page CMS MAR 00476 is an extra, blank page that was included in the document. The withheld materials were communicated under an understanding that they would remain confidential, due to the legal nature of the advice being sought and given.

13. The withheld portions of this document consist of communication that concerns the basis of CMS' legal authority to take certain actions. If this communication were to be made public, it would undermine one of the primary purposes of the attorney-client privilege of FOIA

5

Exemption (b)(5) [6], which is to encourage agency staff to obtain legal advice on what they can and cannot legally do by enabling them to do so in a confidential manner. Release of the document would also discourage CMS from seeking legal advice on the scope of its authority to take certain actions in the future, because it would know that any such communications may become public. CMS invoked the attorney-client privilege to protect confidential communications between CMS and counsel with the OGC for purposes of obtaining legal advice regarding the proposed memorandum and attachment to the memorandum. Therefore, the legal advice provided, as well as the substance of the documents that OGC reviewed, is exempt under FOIA Exemption (b)(5) [7] as attorney-client privileged information.

14. I conducted a page-by-page analysis of each page of this document to determine whether any additional non-exempt material could be released. Where reasonably segregable non-exempt information was identified, it was released. There is no additional reasonably segregable material to release because it is privileged.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my information and belief, 28 U.S.C. § 1746. Executed this 14th day of November 2022.

_____

Hugh Gilmore

---

[6] 5 U.S.C. § 552(b)(5).

[7] 5 U.S.C. § 552(b)(5).