**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ———————————————— ) | |
| AMERICANS FOR PROSPERITY ) | |
| FOUNDATION ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Civil Action No. 21-2021 (CJN) |
| ) | |
| CENTERS FOR MEDICARE AND ) | |
| MEDICAID SERVICES, ) | |
| ) | |
| *Defendant.* ) | |
| ———————————————— ) | |

## <u>DECLARATION OF RYAN P. MULVEY</u>

I, Ryan P. Mulvey, pursuant to 28 U.S.C. § 1746, do hereby declare and state:

1.     I am Policy Counsel at Americans for Prosperity Foundation ("AFPF").  My responsibilities include, among other things, working on matters involving the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  I represent Plaintiff AFPF in this lawsuit.

2.     I submit this declaration in support of AFPF's cross-motion for summary judgment and in opposition to Defendant Centers for Medicare and Medicaid Services' ("CMS") motion for summary judgment.

3.     The statements in this declaration are based upon knowledge I have acquired in the performance of my official duties, information provided to me in my official capacity by other AFPF personnel, and my first-hand experience reviewing and analyzing relevant records maintained by AFPF during the ordinary course of business.

## <u>AFPF's May 2021 FOIA Request</u>

4.     By letter, dated May 21, 2021, AFPF submitted a FOIA request to CMS seeking access to six categories of records:

1. [All records reflecting] CMS recovery efforts for the $143 billion of improper Medicaid payments identified in the 2019 and 2020 "Estimated Improper Payment Rates for Centers for Medicare and Medicaid Services (CMS) Programs" Fact Sheets. [. . .]

2. [All records reflecting] CMS recovery efforts for improper payments related to erroneous eligibility determinations under Section 1903(u) of the Social Security Act. Responsive records should include the overpayment amount and the recoveries by state and year. [. . .]

3. [All records reflecting] Medicaid improper payment rates for all 50 states and the District of Columbia between 2012 and 2020. [. . .]

4. [All records reflecting] [s]tate Medicaid eligibility error rates for all 50 states and the District of Columbia between 2012 and 2020. [. . .]

5. [All records reflecting] [c]ommunications between CMS and states regarding efforts to recover Medicaid improper payments[.]

6. [All records reflecting] CMS's responses, and all internal and external communications regarding CMS's responses to a March 11, 2019 letter from Senators Toomey and Grassley and a December 22, 2020 letter from Senator Ron Johnson regarding Medicaid improper payments and recovery efforts. [. . .]

A true and correct copy of AFPF's FOIA request is attached hereto as **Exhibit 1**.

5.      In its request, AFPF identified the relevant time period as "January 1, 2019, to the present" for Items One, Two, and Five. Ex. 1. AFPF identified the relevant time period as "January 1, 2012, to the present" for Items Three and Four. *Id.* And it identified the relevant time period as "March 11, 2019, to January 19, 2021" for Item Six. *Id.*

6.      AFPF defined the term "present" as "the date on which the agency begins it search for responsive records." *Id.*

7.      AFPF defined the term "record" as "any medium of information storage in the form and format maintained by the agency at the time of the request." *Id.* AFPF explained that "[i]f any portion of a 'record' . . . is responsive to [its] request, then [CMS] should process and disclose

2

the record in its entirety." *Id.*  Thus, "[i]f [CMS] consider[ed] a medium of information storage to contain multiple records that it believe[d] c[ould] be segmented on the basis of the subject-matter of scope of AFPF's request," it would need to process all potentially segmented records as responsive. *Id.*

8.  For Items Three and Four of its request, AFPF clarified it did not "seek records reflecting the blended or combined rates for multiple states known as cohorts, but rather the specific improper payment rate for each state[.]" *Id.*

9.  AFPF requested a public interest fee waiver and classification as a representative of the news media for fee purposes. *Id.*

10.  By letter, dated June 1, 2021, CMS acknowledged it had received AFPF's FOIA request and assigned it tracking number 052120217034.  A true and correct copy of CMS's acknowledgment letter is attached hereto as **Exhibit 2**.

11.  CMS failed to indicate in its acknowledgment letter whether it had placed AFPF's request into the agency's "simple" or "complex" processing queue. *See id.*  It also failed to provide an estimated date of completion and to invoke an extension of its response deadline due to unusual circumstances. *See id.*

12.  CMS also did not make any determinations on AFPF's fee-related requests. *See id.*

13.  CMS failed to provide any further substantive update on the processing of AFPF's request prior to the filing of the instant lawsuit.

14.  AFPF filed this lawsuit on July 27, 2021. *See generally* Compl., ECF No. 1.

15.  CMS filed its Answer on August 27, 2021. *See generally* Answer, ECF No. 9.

## CMS's Processing of AFPF's FOIA Request

16.     Following the filing of the Answer, CMS completed initial searches for responsive records and engaged in negotiations with AFPF regarding, among other things, the universe of potentially responsive records and the timeline for production.  *See, e.g.*, Joint Status Report, ECF Nos. 10 & 11.

17.     Between January and September 2022, CMS released a series of interim and supplemental productions.  The parties also engaged in discussions to resolve several disputed legal issues in the hope of avoiding the need for judicial intervention.  Those efforts were largely successful.  Ultimately, the parties agreed to limit the scope of summary-judgment proceedings to a single question, namely, whether CMS had satisfied its burden under the FOIA's foreseeable-harm standard to justify non-disclosure in part of a single record (and attachments) under Exemption 5 and the attorney-client privilege.

## The September 1990 Memorandum and Attachments

18.     The sole record at issue is a seven-page memorandum with attachments, dated September 18, 1990.  It is Bates numbered CMSMar00475–81.[1]  A true and correct copy of the memorandum, including its attachments, is attached hereto as **Exhibit 3**.

19.     Of the seven pages, CMS released two pages in full (including one blank page), redacted in part three pages, and withheld in full two pages.  *See* Ex. 3.

20.     Page CMSMar00475 is a September 18, 1990 memorandum sent to David McNally, then-Director of CMS's Office of Medicaid Management ("OMM"), by Donna Eden, an employee in the Department of Health and Human Service's ("HHS") Office of the General

---

[1] CMS did not produce a redacted copy of CMSMar00481 but indicated that the page—*i.e.*, page seven of the memorandum—was withheld in full.  *See* Ex. 3.

Counsel ("OGC").[2]  *Id.*  The document memorializes OGC's response to OMM's request for "review and clearance" of a separate memorandum that "proposed giving states which are disallowance liable for fiscal year 1982 (FY 82) the opportunity to review quality control resource errors by using the lesser of the excess resource amount or the paid claims amount."  *Id.*  CMS redacted a substantial portion of this page.  *Id.*  I understand the agency maintains the redacted content reflects legal advice concerning OMM's proposed memorandum and letter.

21.     Page CMSMar00476 appears to be the reverse of the September 18, 1990 OGC memorandum.  *See id.*  CMS released this page in full, but the page is effectively blank.  *Id.*

22.     Page CMSMar00477 is an attachment to the September 18, 1990 OGC memorandum that is dated July 25, 1990.  *Id.*  It reflects OMM's initial request for OGC's legal review of a draft memorandum and letter.  *Id.*  CMS released this page without redaction.  *Id.*

23.     Pages CMSMar00478–79 comprise the actual document for which OMM sought OGC's legal review.  *Id.*  The draft was included as an attachment to CMSMar00477.  *Id.*  According to OMM's initial request for OGC review, the draft "explains that States which are disallowance liable for FY 1982 have the opportunity to revise resource errors by using the excess resource amount or the paid claims amount, whichever is less."  *Id.*  CMS redacted these pages in part and only released non-substantive content.  *See id.*

24.     Pages CMSMar00480–81 comprise an attachment to the draft memorandum sent to OGC with OMM's request for legal review.  *Id.*  Specifically, the document is a "copy of the State letter [CMS] plan[ned] to send to each State that is disallowance liable for FY 1982."  *Id.*  CMS withheld this letter in full.  *Id.*

---

[2] At the time the record at issue was created, I understand CMS existed under a different name: the Health Care Financing Administration ("HCFA").  For the sake of convenience, I refer only to CMS with the understanding that I also mean to include any predecessor agency.

25.     At the time of AFPF's FOIA request, the September 1990 OGC memorandum and its attachments were already more than thirty years old.  Further, the draft materials reviewed by OGC at the behest of OMM pertain to state-government Medicaid disallowance liabilities during Fiscal Year 1982; by my calculation, Fiscal Year 1982 ended roughly forty years ago.

**CMS's Treatment of the September 1990 Memorandum and Attachments**

26.     As explained in its March 2022 interim response letter, CMS initially withheld portions of the September 1990 OGC memorandum and attachments pursuant to Exemption 5 in conjunction with the deliberative-process privilege.  A true and correct copy of CMS's interim response letter is attached hereto as **Exhibit 4**.

27.     On or about March 31, 2022, I advised counsel for CMS that the agency's assertion of the deliberative-process privilege was statutorily barred by the FOIA's 25-year "sunset" provision, which is part of Exemption 5.  *See* 5 U.S.C. § 552(b)(5) ("provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested").  I continued to inquire as to the agency's position on the impact of the "sunset" provision in late April and early May 2022.

28.     On or about May 31, 2022, CMS provided AFPF with a draft *Vaughn* index that provided a description of the grounds for certain withholdings challenged by AFPF.  As reflected in that document, CMS modified its argument for the applicability of Exemption 5 to the September 1990 OGC memorandum.  Rather than rely on the deliberative-process privilege, CMS invoked the attorney-client privilege.

29.     APFF continued to protest the agency's generalized justification for non-disclosure. AFPF explained it believed CMS's analysis under the foreseeable-harm standard was inadequate.

30.     By e-mail dated, June 23, 2022, counsel for CMS provided me with a further explanation for CMS's treatment of the September 1990 OGC memorandum:

> [T]he agency stands by withholding the information as attorney-client privilege.  It seems as though Plaintiff really just wants copies of the two memorandums sent for review.  However, there is no indication that these memorandums were every [*sic.*] finalized or sent out.  Final versions – or anything close to a final version – was not returned from the search conducted.  [The agency] is reasonably certain that the search would have returned final versions of the letters or additional conversations about the letters.  Therefore, the reasonable conclusion is that these memorandums were simply never finalized and were more than likely scraped (or "died on the vine").  Unfortunately, since these memorandums were from 1990, there is no one in the program office [who] would be able to tell us what happened to these memorandums.

A true and correct copy of this e-mail is attached hereto as **Exhibit 5**.

31.     On or about October 3, 2022, I informed counsel for CMS by e-mail that AFPF was willing to stipulate that the technical requirements for the attorney-client privilege were satisfied vis-à-vis the September 1990 OGC memorandum.  This agreement limited the parties' legal dispute to whether CMS had satisfied the FOIA's foreseeable-harm standard.  I subsequently confirmed AFPF's position and gave consent to opposing counsel to represent the parties' agreement in CMS's motion for summary judgment.

\*   \*   \*

I declare under penalty of perjury that the foregoing is true and correct.

Ryan P. Mulvey

Executed this 13th day of December, 2022.

**DECLARATION OF RYAN P. MULVEY**

**<u>INDEX OF EXHIBITS</u>**

<u>Exhibit 1</u> — Americans for Prosperity Foundation's May 21, 2021 FOIA Request

<u>Exhibit 2</u> — Centers for Medicare & Medicaid Services' June 1, 2021 FOIA Acknowledgement

<u>Exhibit 3</u> — September 18, 1990 Office of the General Counsel Memorandum with Attachments

<u>Exhibit 4</u> — Centers for Medicare & Medicaid Services' March 15, 2022 Interim Response

<u>Exhibit 5</u> — June 23, 2022 Email from Department of Justice

# EXHIBIT 1



May 21, 2021

**VIA E-MAIL**

FOIA Officer
Centers for Medicare & Medicaid Services
FOIA Office Service Center
7500 Security Blvd
Baltimore, Maryland 21244
E-mail: FOIA_Request@cms.hhs.gov

      **Re:**    **Freedom of Information Act Request**

Dear FOIA Officer:

      I write on behalf of Americans for Prosperity Foundation ("AFPF"), a 501(c)(3) nonpartisan organization dedicated to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society.[1]  As part of its mission to educate the public, AFPF pursues government transparency via records requests. Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, AFPF requests all records reflecting[2]:

1. CMS recovery efforts for the $143 billion of improper Medicaid payments identified in the 2019 and 2020 "Estimated Improper Payment Rates for Centers for Medicare & Medicaid Services (CMS) Programs" Fact Sheets.[3] The time period for this request item is January 1, 2019, to the present.[4]

2. CMS recovery efforts for improper payments related to erroneous eligibility determinations under Section 1903(u) of the Social Security Act. Responsive records

---

[1] *See* AMS. FOR PROSPERITY FOUND., www.americansforprosperityfoundation.org (last visited May 19, 2021).

[2] For purposes of this request, the term "record" means any medium of information storage in the form and format maintained by the agency at the time of the request.  If any portion of a "record," so defined, is responsive to AFPF's request, then the agency should process and disclose the record in its entirety.  If the agency considers a medium of information storage to contain multiple records that can be segmented on the basis of the subject-matter or scope of AFPF's request, AFPF explicitly seeks access to those separate "records" as well.  They should not be treated as "non-responsive."

[3] *See* CENTERS FOR MEDICARE & MEDICAID SERVICES, 2020 ESTIMATED IMPROPER PAYMENT RATES FOR CENTERS FOR MEDICARE & MEDICAID SERVICES (CMS) PROGRAMS (Nov. 16, 2020), *available at* https://go.cms.gov/3bG6iAt and CENTERS FOR MEDICARE & MEDICAID SERVICES, 2019 ESTIMATED IMPROPER PAYMENT RATES FOR CENTERS FOR MEDICARE & MEDICAID SERVICES (CMS) PROGRAMS (Nov. 18, 2019), *available at* https://go.cms.gov/3bX4gfJ.

[4] For purposes of this request, the term "present" should be construed as the date on which the agency begins its search for responsive records.  *See Pub. Citizen v. Dep't of State*, 276 F.3d 634 (D.C. Cir. 2002).

Centers for Medicare & Medicaid Services
May 21, 2021
Page 2

    should include the overpayment amount and the recoveries by state and year. The time period for this request item is January 1, 2019, to the present.

3. Medicaid improper payment rates for all 50 states and the District of Columbia between 2012 and 2020.[5]  The time period for this request item is January 1, 2012, to the present.

4. State Medicaid eligibility error rates for all 50 states and the District of Columbia between 2012 and 2020.[6]  The time period for this request item is January 1, 2012, to the present.

5. Communications between CMS and states regarding efforts to recover Medicaid improper payments from January 1, 2019 to the present.

6. CMS's responses, and all internal and external communications regarding CMS's responses, to a March 11, 2019 letter[7] from Senators Toomey and Grassley and a December 22, 2020 letter[8] from Senator Ron Johnson regarding Medicaid improper payments and recovery efforts. The time period for this request is March 11, 2019, to January 19, 2021.

    For the purposes of this request, please omit daily news clippings or other mass mailings unless there is commentary related to them.  For all items of this request, if the agency uncovers responsive email records, AFPF's request specifically seeks the entirety of any email chain, any portion of which contains an individual email message responsive to this request, *i.e.*, the entire email chain is responsive.  If the agency identifies responsive records that it deems outside its legal control (*e.g.*, congressional records), AFPF requests that the agency inform AFPF that such records exist.

### Request for a Public Interest Fee Waiver

    AFPF requests a waiver of any and all applicable fees. The FOIA and applicable regulations provide that the agency shall furnish requested records without or at reduced charge if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[9]

    In this case, the requested records unquestionably shed light on the "operations or activities of the government" as they relate to efforts by CMS to recover improperly spent taxpayer dollars,

---

[5] Please note that AFPF does not seek records reflecting the blended or combined rates for multiple states known as cohorts, but rather the specific improper payment rate for each state (*e.g.*, Georgia's improper payment rate is x.x%).

[6] *Id.*

[7] SENATOR PAT TOOMEY, TOOMEY, GRASSLEY SLAM 27 YEARS OF IMPROPER MEDICAID PAYMENTS (Mar. 11, 2019), *available at* https://bit.ly/33YFYO0.

[8] SENATOR RON JOHNSON, JOHNSON, SENATORS SEND LETTER TO CMS RAISING ALARM OVER GROWING MEDICAID IMPROPER PAYMENTS (Dec. 22, 2020), *available at* https://bit.ly/3f1A1pN.

[9] 5 U.S.C. § 552(a)(4)(A)(iii); *see also Cause of Action v. Fed. Trade Comm'n*, 799 F.3d 1108, 1115–19 (D.C. Cir. 2015) (discussing proper application of public-interest fee waiver test).

Centers for Medicare & Medicaid Services
May 21, 2021
Page 3

which is required by law.[10]   Responsive records will significantly contribute to public understanding because, to date, CMS has released neither improper payment rates by state nor full evidence of its attempts to recover improper payments.

AFPF intends to educate the public with the results of this FOIA request.  It has the intent and ability to make those results available to a reasonably broad public audience through various media.  Its staff has significant experience and relevant expertise; AFPF professionals will analyze responsive records, if any, use their editorial skills to turn raw materials into a distinct work, and share the resulting analysis with the public.  AFPF is a non-profit organization as defined under Section 501(c)(3) of the Internal Revenue Code, and it has no commercial interest in making this request.

### Request to Be Classified as a Representative of the News Media

In addition to a public interest fee waiver, AFPF requests that it be classified as a "representative of the news media" for fee purposes.[11]   As the D.C. Circuit has explained, the "representative of the news media" test is properly focused on the requestor, not the specific FOIA request at issue.[12]   AFPF satisfies this test because it gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience.  Although not required, AFPF gathers the news it publishes from a variety of sources.  It does not merely make raw information available to the public, but distributes distinct work product, including press releases, blog posts, reports, and other informative materials.[13]   These distinct works are distributed to the public through various online outlets, such as websites, Twitter, and Facebook.  The statutory definition of a "representative of the news media" contemplates that organizations such as AFPF, which electronically disseminate information and publications via "alternative media[,] shall be considered to be news-media entities."[14]

### Record Production and Contact Information

In an effort to facilitate document review, please provide the responsive documents in electronic form, preferably in their native format, in lieu of a paper production.  If a certain portion of responsive records can be produced more readily, AFPF requests that those records be produced first and the remaining records be produced on a rolling basis as circumstances permit.

---

[10] *See, e.g.*, 42 U.S.C. § 1396b.

[11] 38 U.S.C. § 1.561(b)(7).

[12] *See Cause of Action*, 799 F.3d at 1121.

[13] *See, e.g.*, *Government documents reveal Export-Import Bank fails to protect taxpayers … again*, AMS. FOR PROSPERITY (Oct. 30, 2020), *available at* https://bit.ly/3hD09Jn; *NEW REPORT: Public Records Show Kansas Government Arbitrarily Chose Which Businesses Could Stay Open Amid Pandemic*, AMS. FOR PROSPERITY (July 21, 2020), *available at* https://bit.ly/3tOM5Pn; AMS. FOR PROSPERITY FOUND., GONE IN AN INSTANT: HOW INSTANT MESSAGING THREATENS THE FREEDOM OF INFORMATION ACT (Mar. 16, 2020), *available at* https://bit.ly/2zQOEKI.

[14] 5 U.S.C. § 552(a)(4)(A)(ii)(II).

Centers for Medicare & Medicaid Services
May 21, 2021
Page 4

    If you have any questions about this request, please contact me by telephone at (571) 329-4234 or by email at KSchmidt@AFPhq.org.  Thank you for your attention to this matter.

*Kevin Schmidt*

_____

KEVIN SCHMIDT
DIRECTOR OF INVESTIGATIONS

# **<u>EXHIBIT 2</u>**

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C5-11-06
Baltimore, Maryland 21244-1850



**Office of Strategic Operations and Regulatory Affairs / Freedom of Information Group**
Request has been assigned: Control Number: **052120217034** and PIN: **BQF5**

**RE: Medicaid Overpayment**

6/1/2021

**Kevin Schmidt**
**Americans for Prosperity Foundation**
**1310 North Courthouse Road, 7th Floor**
**Arlington, VA 22201**

Dear Mr. Schmidt:

The purpose of this letter is to acknowledge receipt of your Freedom of Information Act (FOIA) request (5 U.S.C. § 552) and to provide you with a tracking number for your request.  Your FOIA request, dated **5/21/2021** was received on **5/21/2021** by the Centers for Medicare & Medicaid Services (CMS). To check the status of your request as it is being processed, please refer to the CMS FOIA website http://www.cms.gov/apps/FOIA and enter the control number and PIN (listed above) that have been assigned to your request.

Once we complete our initial analysis of your request, we will initiate a search for responsive records. If however, we determine that your request needs clarification, we will contact you. Additionally, if our searching units advise us that you have requested a voluminous amount of records that require extensive search, production and review, we will contact you to discuss options for narrowing the scope of your request in order to process your request as quickly and efficiently as possible.

Please note that CMS receives a very high volume of FOIA requests.  The following unusual circumstances, as defined by Federal FOIA Regulations, may impact our ability to fulfill a FOIA request within 20 business days.  These include circumstances such as (1) the request requires us to search for and collect records from multiple components and/or field offices; (2) the request involves a voluminous amount of records that must be located, compiled, transferred to this office, and reviewed. In addition, given our high volume of requests, and in accordance with federal regulations, our processing policy includes factors such as the date of the request as well as the complexity of the request.

The FOIA law assumes that requesters are willing to pay fees up to $25.00.  If estimated fees to process your request exceed $25.00, we will notify you and may suspend processing until we receive written confirmation that you are willing to pay the estimated fees.
Additionally, for requests in which the estimated fees exceed $250.00, the law authorizes us to collect the fees *in advance* prior to processing the request.

If your request sought a fee waiver or expedited processing, we will send additional communication to provide you with our determination decision(s).

If you are not satisfied with any aspect of the processing and handling of this request, please contact Breita Gillard at 410-786-5126.

You also have the right to seek dispute resolution services from:

> Joseph Tripline
> CMS FOIA Public Liaison
> Centers for Medicare & Medicaid Services
> 7500 Security Blvd., MS: N2-20-16
> Baltimore, Maryland 21244-1850
> Telephone:  (410) 786-5353 Fax (443)-380-7260

> and/or:

> Office of Government Information Services
> National Archives and Administration
> 8601 Adelphi Road – OGIS
> College Park, MD 20740-6001
> Telephone:  202-741-5770
> Toll-Free: 1-877-684-6448
> E-mail: ogis@nara.gov
> Fax: 202-741-5769

Sincerely yours,

*Jeffery Wallace*

Jeffery Wallace
Director, Division of Analysis - B
Freedom of Information Group

# EXHIBIT 3

**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Office of the Secretary
Office of the General Counsel

Room 500 East High Rise
Baltimore, MD 21207

SEP 18 1990

MEMORANDUM

TO      :   David McNally
            Director, Office of Medicaid Management

FROM    :   Donna Eden *Donna Eden*
            Office of the General Counsel

SUBJECT:    Revised State Findings on Fiscal Year 1982
            Disallowances--ACTION


        You have requested our review and clearance on the captioned
memorandum which proposed giving states which are disallowance
liable for fiscal year 1982 (FY 82) the opportunity to revise
quality control resource errors by using the lesser of the excess
resource amount or the paid claims amount. (b)(5)

(b)(5)

Attachment

CMSMar00475

CMSMar00476



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Health Care
Financing Administration

~~DHHS/OS/OGC/HCF DIV.~~
RECEIVED IN WASH., D.C.

Refer to: FMC 21   **Memorandum**

1990 JUL 25 PM 2: 08

Date    JUL 2 0 1990

From    Director
        Office of Medicaid Management, MB

Subject  Revised State Findings on Fiscal Year (FY) 1982 Disallowances--
         ACTION

To      Deputy Associate General Counsel
           for Program Review
        Office of the General Counsel (OGC)

We are requesting OGC review and clearance of the attached
memorandum.  The memorandum explains that States which are
disallowance liable for FY 1982 have the opportunity to revise
resource errors by using the excess resource amount or the paid
claims amount, whichever is less.  The attachment to the
memorandum is a copy of the State letter we plan to send to each
State that is disallowance liable for FY 1982.

Questions regarding this matter can be referred to Carol Jordan
on extension 65939.

                              David McNally

Attachment

CMSMar00477

Refer To: FMC-21

Director
Office of Medicaid Management, MB

Revised State Findings on Michel II Fiscal Year (FY) 1982
Disallowances--ACTION

All Associate Regional Administrators
Division of Medicaid

(b)(5)

(b)(5)

CMSMar00478

Page 2 - All ARAs, Division of Medicaid

(b)(5)

(b)(5)

If members of your staff have questions they may direct them
to Carol Jordan FTS 646-5939.


                              David McNally

Attachment

cc:
All Regional Administrators

bcc:
OFO
DFM
OIA
MEQC Branch Chiefs (Regions I-X)

FMC-21:C.Jordan:MJWalsh-65930
06-22-90:CJs disc

CMSMar00479

Pages 6 through 7 redacted for the following reasons:
- - - - - - - - - - - - - - - - - - - - - - - - - - - -
(b)(5)

# EXHIBIT 4

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C5-11-06
Baltimore, Maryland 21244-1850



**Office of Strategic Operations and Regulatory Affairs/Freedom of Information Group**
Refer to: Control Number 052120217034 and PIN BQF5

3/15/2022

Kevin Schmidt
Americans for Prosperity Foundation
1310 North Courthouse Road, 7th Floor
Arlington, VA 22201

Dear Mr. Schmidt:

This letter is a third interim response to your Freedom of Information Act (FOIA) (5 U.S.C. §
552) request of 5/21/2021 which you sent to the Centers for Medicare & Medicaid Services
(CMS). Within your correspondence you requested information on the following items of your
request:

1. *CMS recovery efforts for the $143 billion of improper Medicaid payments identified in
   the 2019 and 2020 "Estimated Improper Payment Rates for Centers for Medicare &
   Medicaid Services (CMS) Programs" Fact Sheets. The time period for this request item is
   January 1, 2019, to the present.*

2. *CMS recovery efforts for improper payments related to erroneous eligibility
   determinations under Section 1903(u) of the Social Security Act. Responsive records
   should include the overpayment amount and the recoveries by state and year. The time
   period for this request item is January 1, 2019, to the present.*

For these items of the request, the agency processed 1,849 pages.  After careful review, I have
determined to release 205 pages to you, in full, and 3 pages, in part, with portions redacted
pursuant to Exemption (b)(5) of the FOIA.  Additionally, 1,640 pages are withheld entirely
pursuant to Exemption (b)(5) of the FOIA, and 1 page was determined to be a blank page.

Exemption 5 of the FOIA permits the withholding of "inter-agency memorandums or letters
which are pre-decisional and contain staff advise, opinion and recommendation which are part of
the agency's deliberative decision-making process."  The intent of this exemption is to preserve
free and candid dialogue leading to decision making; to protect against public confusion that

might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action.

Please be advised that CMS's review of records which may be responsive to your request remains active and ongoing.  As additional responsive records are reviewed, CMS will promptly release all non-exempt records that are responsive to your request.

Sincerely yours,

*Hugh Gilmore*

Hugh Gilmore
Director
Freedom of Information Group

Enclosure

# EXHIBIT 5

**Ryan Mulvey**

| | |
|---|---|
| **From:** | Silverman, Bradley (USADC) <Bradley.Silverman@usdoj.gov> |
| **Sent:** | Thursday, June 23, 2022 6:31 PM |
| **To:** | Eric Bolinder; Ryan Mulvey |
| **Subject:** | AFPF v. HHS |

Hi Ryan and Eric, the below is from Hugh and Samantha—does it address your questions?

- As for the February 2022 Production "Line 4" (25 documents WIF) materials, we think creating a draft Vaughn index of the withheld materials would be the best way to describe each document and explain the reasons for withholding.  However, if the final version of a particular document was not returned from the search, which it appears the final versions were not in this case, then it will take some time to try and track down the status of each document.  It will require consultation with HHS and the program office, and we may not be successful in finding the final version or discovering whether the document was simply never finalized and abandoned.  Therefore, Hugh thinks it will take about a month to fully research each document.  We'll do our best, but we may not be able to adequately answer for each document.

- As for the February 2022 Production "Line 5" (2 documents WIF) materials, again, this will require consultation with HHS to determine what, if any of this information made it into a report to Congress.  Hugh will review the document again to see if anything is obviously releasable.  However, again, this will take some time to accomplish.

- As for the April 2022 Production "Line 21" (17 documents) materials – OMB requested that this information be withheld and Hugh will have to go back to them for further consultation.  Either OMB will have to agree to release the withheld materials, or OMB will need to provide a better explanation regarding the foreseeable harm.  Although Hugh can provide a "due date" to OMB, there is no guarantee they will meet that deadline.

Therefore, for these three items, Hugh estimates that he will need at least a month to try to track down the information and complete the necessary consultations before we will be able to substantively answer Plaintiff's questions concerning these documents.

With regards to the March 2022 Production "Line 6" (1 document with attachments) – the Sept. 1990 OGC & OMM Memoranda, the agency stands by withholding the information as attorney-client privilege.  It seems as though Plaintiff really just wants copies of the two memorandums sent for review.  However, there is no indication that these memorandums were every finalized or sent out.  Final versions – or anything close to a final version – was not returned from the search conducted.  Hugh is reasonably certain that the search would have returned final versions of the letters or additional conversations about the letters.  Therefore, the reasonable conclusion is that these memorandums were simply never finalized and were more than likely scraped (or "died on the vine").  Unfortunately, since these memorandums were from 1990, there is no one in the program office would be able to tell us what happened to these memorandums.