UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

AMERICANS FOR PROSPERITY
FOUNDATION,

                *Plaintiff*,

      v.

CENTERS FOR MEDICARE AND
MEDICAID SERVICES,

                *Defendant*.

Civil Action No. 21-2021 (CJN)

---

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND RESPONSE
IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

ARGUMENT ........................................................................................................... 1

I.      The Harm of Disclosing Attorney-Client Communications is Self-Evident ...................... 1

        A.      Self-Evident Harms Are Cognizable Under the Foreseeable Harm Standard ....... 4

        B.      Judges in this District Recognize that the Harm of Disclosing Attorney-Client
                Communications is Self-Evident ........................................................... 9

II.     The Centers Has Demonstrated That Disclosure Would Cause Foreseeable Harm ......... 13

CONCLUSION........................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*ACLU v. CIA*,
  Civ. A. No. 18-2784 (CJN), 2022 WL 306360 (D.D.C. Feb. 2, 2022)......................................12

*Al Latif v. Obama*,
  677 F.3d 1175 (D.C. Cir. 2012)............................................................................................13

*Am. Small Bus. League v. Dep't of Def.*,
  411 F. Supp. 3d 824 (N.D. Cal. 2019).................................................................................8

*Arieff* v. *Dep't of Navy*,
  712 F.2d 1462 (D.C. Cir. 1983)...........................................................................................15

*Avila v. Dep't of State*,
  Civ. A. No. 17-2685 (RC), 2022 WL 2104483 (D.D.C. June 10, 2022)..................................10

*Ball v. U.S. Marshals Serv.*,
  Civ. A. No. 19-1230 (JEB), 2021 WL 4860590 (D.D.C. Oct. 19, 2021)...................................5

*Beverly Enters., Inc. v. Herman*,
  119 F. Supp. 2d 1 (D.D.C. 2000)...........................................................................................7

*Black Hills Clean Water Alliance v. Forest Serv.*,
  Civ. A. No. 20-5034, 2022 WL 2340440 (D.S.D. June 29, 2022)..........................................13

*Cabezas v. FBI*,
  Civ. A. No. 19-0145 (CJN), 2022 WL 898789 (D.D.C. Mar. 28, 2022)...........................12, 13

*Cayuga Nation v. Dep't of Interior*,
  Civ. A. No. 20-2642 (ABJ), 2022 WL 888178 (D.D.C. Mar. 25, 2022)...........................10, 14

*Ctr. for Investigative Rep. v. Customs & Border Prot.*,
  436 F. Supp. 3d 90 (D.D.C. 2019)..........................................................................................8

*Ctr. for Investigative Rep. v. Dep't of Lab.*,
  424 F. Supp. 3d 771 (N.D. Cal. 2019)...................................................................................9

*Chelmowski v. United States*,
  Civ. A. No. 17-1394 (JEB), 2021 WL 3077558 (D.D.C. July 21, 2021), *aff'd*, No. 21-5208,
  2022 WL 11337053 (D.C. Cir. Oct. 17, 2022).........................................................................6

*Ecological Rts. Found. v. EPA*,
  Civ. A. No. 19-0980 (BAH), 2021 WL 535725 (D.D.C. Feb. 13, 2021).............................9, 14

**Cases (cont.)**

*Ecological Rts. Found. v. EPA*,
    541 F. Supp. 3d 34 (D.D.C. 2021) ............................................................................ 5

*Gabbs Exploration Co. v. Udall*,
    315 F.2d 37 (D.C. Cir. 1963) .................................................................................... 9

*In re Lindsey*,
    148 F.3d 1100 (D.C. Cir. 1998) ............................................................................ 2, 6

*In re Sealed Case*,
    107 F.3d 46 (D.C. Cir. 1997) ............................................................................... 3, 10

*In re Sealed Case*,
    877 F.2d 976 (D.C. Cir. 1989) ............................................................................. 3, 8

*In re Witness Before Special Grand Jury 2000-2*,
    288 F.3d 289 (7th Cir. 2002) .................................................................................. 2

*Johnson v. Exec. Off. for U.S. Att'ys*,
    310 F.3d 771 (D.C. Cir. 2002) .............................................................................. 15

*Kendrick v. FBI*,
    Civ. A. No. 20-2900 (TNM), 2022 WL 4534627 (D.D.C. Sept. 28, 2022) .............................. 5

*Louise Trauma Ctr. LLC v. Dep't of Homeland Sec.*,
    Civ. A. No. 20-1128 (TNM), 2022 WL 1081097 (D.D.C. Apr. 11, 2022) .............................. 10

*Mead Data Ctr., Inc. v. Dep't of Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) .............................................................................. 16

*MetLife, Inc. v. Fin. Stability Oversight Council*,
    865 F.3d 661 (D.C. Cir. 2017) ............................................................................... 7

*Moody v. IRS*,
    654 F.2d 795 (D.C. Cir. 1981) ............................................................................. 2, 3

*Motor Vehicle Mfrs. Ass'n of U.S. v. Ruckelshaus*,
    719 F.2d 1159 (D.C. Cir. 1983) .............................................................................. 5

*Nat'l R.R. Passenger Corp. v. United States*,
    431 F.3d 374 (D.C. Cir. 2005) ............................................................................... 7

*N.Y. State Dep't of Soc. Servs. v. Dublino*,
    413 U.S. 405 (1973) ............................................................................................. 5

**Cases (cont.)**

*Nat'l Sec. Archive v. CIA*,
   752 F.3d 460 (D.C. Cir. 2014) ............................................... 14

*Network Proj. v. Corp. for Pub. Broad.*,
   561 F.2d 963 (D.C. Cir. 1977) ................................................. 9

*NLRB v. SW Gen., Inc.*,
   137 S. Ct. 929 (2017) ........................................................... 4

*Perioperative Servs. & Logistics, LLC v. Dep't of Veterans Affairs*,
   No. 21-5223, 2023 WL 192419 (D.C. Cir. Jan. 17, 2023) ..................... 15

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979) ............................................................. 6

*Reps. Comm. for Freedom of the Press v. Customs & Border Prot.*,
   567 F. Supp. 3d 97 (D.D.C. 2021) ...................................... 11, 14

* *Reps. Comm. for Freedom of the Press v. FBI*,
   3 F.4th 350 (D.C. Cir. 2021) ........................................... passim

* *Rosenberg v. Dep't of Def.*,
   442 F. Supp. 3d 240 (D.D.C. 2020) .............................. 1, 5, 7, 8

*Seife v. FDA*,
   43 F.4th 231 (2d Cir. 2022) .................................................... 9

*Selgjekaj v. Exec. Off. for U.S. Att'ys*,
   Civ. A. No. 20-2145 (CRC), 2021 WL 3472437 (D.D.C. Aug. 6, 2021) .............. 10

*Swidler & Berlin v. United States*,
   524 U.S. 399 (1998) ...................................................... 2, 3, 14

*Thompson v. Kennickell*,
   797 F.2d 1015 (D.C. Cir. 1986) ............................................... 7

*Tobias v. Dep't of the Interior*,
   Civ. A. No. 18-1368 (CJN), 2021 WL 4262488 (D.D.C. Sept. 20, 2021) ......... 11, 12

*United States v. Philip Morris Inc.*,
   314 F.3d 612 (D.C. Cir. 2003) .......................................... 1, 2, 4, 8

*United States v. Volvo Powertrain Corp.*,
   854 F. Supp. 2d 60 (D.D.C. 2012), *aff'd*, 758 F.3d 330 (D.C. Cir. 2014) .............. 7

**Cases (cont.)**

*United States v. Zolin*,
  491 U.S. 554 (1989)..................................................................................................... 8

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981)................................................................................................. 2, 14

**Statutes**

5 U.S.C. § 552
  § 552(a)(8)(A)(i)(I) ................................................................................................. 1, 7, 13
  § 552(b)(4) .................................................................................................................... 8
  § 552(b)(5) .................................................................................................................... 4

**Other Authorities**

162 Cong. Rec. S1496 (daily ed. Mar. 15, 2016) ........................................................ 4

*Applying the 'Foreseeable Harm' Standard Under Exemption Five*,
  15 FOIA Update No. 2 (1994) .............................................................................. 7, 10

Oxford's English Dictionary (7th ed. 2012) ............................................................... 6

Defendant Centers for Medicare and Medicaid Services, by and through the undersigned counsel, respectfully files this reply in support of its motion for summary judgment, ECF No. 24, and response in opposition to Plaintiff Americans for Prosperity Foundation's cross-motion for summary judgment, ECF No. 25. A response to the Foundation's statement of facts, ECF No. 25-2, and proposed order are attached.

## ARGUMENT

Under the Freedom of Information Act ("FOIA"), agency may withhold records if it "reasonably foresees that disclosure would harm an interest protected by an exemption" to FOIA's disclosure requirement. 5 U.S.C. § 552(a)(8)(A)(i)(I). The issue here is whether release of certain materials that fall within the attorney-client privilege's scope foreseeably would harm interests that the privilege protects. As the Centers explained in moving for summary judgment, the harm of disclosing attorney-client communications is self-evident, and in any event the Centers has shown foreseeable harm under any standard.

## I.    The Harm of Disclosing Attorney-Client Communications is Self-Evident

"[T]he foreseeability of harm" to an interest that a FOIA exemption protects "[n]aturally . . . is context specific." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 370, 372 (D.C. Cir. 2021). In so holding, the D.C. Circuit endorsed Judge Mehta's decision in *Rosenberg v. Department of Defense*, 442 F. Supp. 3d 240, 259 (D.D.C. 2020), *see id.*, which explained that "withheld information may be so obviously sensitive . . . that a simple statement illustrating why the privilege applies and identifying the harm likely to result from release may be enough." As the D.C. Circuit has recognized, the harm of disclosing attorney-client communications is self-evident. *See United States v. Philip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003) ("the general injury caused by the breach of the attorney-client privilege" is "clear enough"). This is so for four reasons.

*First*, the attorney-client privilege "rests at the center of our adversary system." *Philip Morris*, 314 F.3d at 618 (cleaned up). The privilege promotes (1) "broader public interests in the observance of law and administration of justice," (2) "full and frank communication between attorneys and their clients," and (3) "sound legal advocacy by ensuring that the counselor knows all the information necessary to represent his client." *Id.* (cleaned up). "Only by ensuring that privileged information is never disclosed will these important interests be advanced." *Id.*

In response to this, the Foundation argues only that "nebulous claims of 'chill' are generally suspect," and that the idea that disclosing attorney-client communications "could dissuade agency personnel from seeking legal counsel is hyperbole." Pl.'s Mem. at 12, ECF No. 25-1. But in recognizing the attorney-client privilege in the first place, the law rejects these arguments, and embraces the view that clients—including agencies—will be reluctant to seek legal advice absent an assurance of confidentiality. *See Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) ("The privilege is intended to encourage full and frank communication between attorneys and their clients" (internal quotation marks omitted)); *Upjohn Co. v. United States*, 449 U.S. 383, 392 (1981) (limiting the privilege "discourage[s] the communication of relevant information . . . to attorneys seeking to render legal advice"); *In re Lindsey*, 148 F.3d 1100, 1112 (D.C. Cir. 1998) ("We may assume that if the government attorney-client privilege does not apply in certain contexts this may chill some communications between government officials and government lawyers"). While the Foundation is correct that "government lawyers" have a unique "duty to act in the public interest," Pl.'s Mem. at 13 (quoting *In re Witness Before Special Grand Jury 2000-2*, 288 F.3d 289, 293 (7th Cir. 2002)), this argument is misplaced, as the privilege is not designed to protect attorneys at all— it "exists solely for the benefit of the client." *Moody v. IRS*, 654 F.2d 795, 801 (D.C. Cir. 1981).

2

*Second*, the attorney-client privilege's "ancient lineage," *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989), makes the harm inherent in its breach familiar to our law. The Foundation argues that the privilege's deep roots in our law are "irrelevant," Pl.'s Mem. at 13, but the Supreme Court has emphasized the fact that the privilege is "one of the oldest recognized privileges in law" in construing it more expansively than "privileges not recognized by the common law." *Swidler & Berlin*, 524 U.S. at 410. And common sense suggests that the more familiar a privilege is to our law, the more "manifest" the harm inherent in its breach will be. *Reps. Comm.*, 3 F.4th at 372.

*Third*, the attorney-client privilege's unqualified nature means that the interests it protects are ones that our law deems to outweigh all others categorically. *See Swidler & Berlin*, 524 U.S. at 409 ("we have rejected use of a balancing test in defining the contours of the privilege"); *Moody*, 654 F.2d at 799 n.10 ("the attorney client privilege" is not "a qualified one"); *In re Sealed Case*, 107 F.3d 46, 51 (D.C. Cir. 1997) (the attorney-client privilege is "absolute"). The Foundation argues that this "is neither here nor there," Pl.'s Mem. at 14, but compromising values that our law deems to be categorically weightier than any conceivable competing value naturally causes harm.

*Fourth*, Congress was particularly concerned with the deliberative process privilege when it enacted the FOIA Improvement Act, which created the foreseeable harm standard. *See Reps. Comm.*, 3 F.4th at 369. The Foundation does not dispute this, *see* Pl.'s Mem. at 14-15, but stresses that Congress did not limit the foreseeable harm standard to the deliberative process privilege. That is of course true, but it does not follow that "the foreseeability of harm" owing to disclosure is equally "manifest," *Reps. Comm.*, 3 F.4th at 372—and thus, that an agency's burden to show foreseeable harm is the same—under the deliberative process and attorney-client privileges.

In seeking summary judgment, the Centers explained that "Congress' unique concern over agencies' reliance on the deliberative process privilege is reflected in its choice" to subject only

the deliberative process privilege to a 25-year sunset provision. Def.'s Mem. at 7, ECF No. 24-1 (citing 5 U.S.C. § 552(b)(5)). Because early drafts of the FOIA Improvement Act imposed a sunset provision on all Exemption 5 withholdings, not just those under the deliberative process privilege, "the lack of such a limit on the attorney-client privilege in the Act's final text reflects a deliberate legislative choice." *Id.* The Foundation's insistence that Congress might have chosen to limit the sunset provision only to the deliberative process privilege "for any number of reasons," Pl.'s Mem. at 16 (internal quotation marks omitted), is unpersuasive. Given that "Congress was particularly concerned with increasing agency overuse and abuse of . . . the deliberative process privilege," *Reps. Comm.*, 3 F.4th at 369, it is reasonable to infer that Congress limited the sunset provision to the deliberative process privilege because it was most concerned with that particular privilege.

The Foundation also points to a floor statement by Senator Leahy asserting that "[c]ourts should not read the absence of a sunset for these other privileges as Congress's intent to strengthen or expand them in any way." 162 Cong. Rec. S1496 (daily ed. Mar. 15, 2016). But even setting aside that "floor statements by individual legislators rank among the least illuminating forms of legislative history," *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 943 (2017), the Centers does not argue that the sunset provision reflects a congressional intent to strengthen or expand the attorney-client privilege. The sunset provision merely illustrates that Congress was most concerned with agencies' reliance on the deliberative process privilege—a fact that, again, the Foundation does not dispute.

A.    **Self-Evident Harms Are Cognizable Under the Foreseeable Harm Standard**

The Foundation argues more broadly that the foreseeable harm standard does not "admit 'self-evident' harms." Pl.'s Mem. at 6. But nothing in FOIA's text or case law supports such a sweeping assertion. To the contrary, the D.C. Circuit has explained that "the general injury caused by the breach of the attorney-client privilege" is "clear enough," *Philip Morris*, 314 F.3d at 622,

and endorsed the view that "withheld information may be so obviously sensitive . . . that a simple statement illustrating why the privilege applies and identifying the harm likely to result from release may be enough," *Rosenberg*, 442 F. Supp. 3d at 259, *cited with approval in Reps. Comm.*, 3 F.4th at 370. Indeed, to hold that self-evident harms are categorically non-cognizable under the foreseeable harm standard would yield a bizarre result—the more obviously a record's disclosure would foreseeably harm an interest an exemption protects, the harder that record would be to withhold. The foreseeable harm standard does not turn FOIA inside-out, making the most clearly protected records the toughest to withhold. *See N.Y. State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 419-20 (1973) ("We cannot interpret federal statutes to negate their own stated purposes"); *Motor Vehicle Mfrs. Ass'n of U.S. v. Ruckelshaus*, 719 F.2d 1159, 1165 (D.C. Cir. 1983) ("A statute should ordinarily be read to effectuate its purposes rather than to frustrate them"). Nor does it categorically subvert the attorney-client privilege, which precedent recognizes as fundamental to our system of jurisprudence.

Unsurprisingly, judges in this District recognize that the harm of disclosure can be self-evident not only as to attorney-client communications but also as to a variety of other bases for withholding, such as when records would reveal private personal information or law enforcement techniques, procedures, and guidelines. *See, e.g.*, *Kendrick v. FBI*, Civ. A. No. 20-2900 (TNM), 2022 WL 4534627, at *10 (D.D.C. Sept. 28, 2022) ("proper assertion of 7(E) goes a long way to show the risk of foreseeable harm from disclosure"); *Ecological Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 65 (D.D.C. 2021) (an "agency need not establish much more than the fact of disclosure to establish foreseeable harm" under Exemption 7(C)); *Ball v. U.S. Marshals Serv.*, Civ. A. No. 19-1230 (JEB), 2021 WL 4860590, at *9 (D.D.C. Oct. 19, 2021) ("justifications for non-disclosure generally are also sufficient evidence of foreseeable harm" under Exemption 7(C));

*Chelmowski v. United States*, Civ. A. No. 17-1394 (JEB), 2021 WL 3077558, at *5 (D.D.C. July 21, 2021), *aff'd*, No. 21-5208, 2022 WL 11337053 (D.C. Cir. Oct. 17, 2022) (foreseeable harm standard met for essentially same reasons records exempt under Exemption 6 in the first place).

The Foundation concedes, as it must, that a record's "very context and purpose" can "make the foreseeability of harm manifest." *Reps. Comm.*, 3 F.4th at 372. It argues, however, that the relevant "context" includes only "the particulars of a given record," excluding "the broader policy grounds for treating [a record] as privileged," Pl.'s Mem. at 7-8. Nothing in *Reporters Committee* supports this cramped, artificial distinction. Instead, the term "context" naturally is understood to encompass the full set of circumstances surrounding a record, including whether it implicates the attorney-client privilege. *See* Oxford's English Dictionary 150 (7th ed. 2012) ("circumstances that form the setting for an event, statement, or idea").[1] And even by the Foundation's own standard, the fact that a record falls within the attorney-client privilege's scope—i.e., that the record reflects "confidential communications made between clients and their attorneys . . . for the purpose of securing legal advice or services," *Lindsey*, 158 F.3d at 1267—is of course a "particular[ ]" fact about the record, Pl.'s Mem. at 7, and thus, according to the Foundation, counts as relevant context. Regardless, *Reporters Committee* held that foreseeability of harm can be manifest not only from a record's "context," but also from its "purpose." 3 F.4th at 372. The fact that the attorney-client privilege protects a record plainly goes to the record's purpose. *See Lindsey*, 158 F.3d at 1267.

The Foundation says that acknowledging "self-evident" harm would render the foreseeable harm standard superfluous. *See* Pl.'s Mem. at 6-7. Not at all—the foreseeable harm standard applies to all withholdings except where disclosure is prohibited by law, not only to withholdings

---

[1]     Although "language of an opinion is not always to be parsed as though we were dealing with language of a statute," *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979), the D.C. Circuit appeared to use the term "context" in its ordinary sense.

based on the attorney-client privilege. 5 U.S.C. § 552(a)(8)(A)(i). While the harm of disclosure is self-evident as to the attorney-client privilege, it is not self-evident as to various other withholding bases, such as the deliberative process privilege. *See Reps. Comm.*, 3 F.4th at 369-70. Recognizing that disclosure's harm may be self-evident in some contexts thus would not render the foreseeable harm requirement superfluous. *See Thompson v. Kennickell*, 797 F.2d 1015, 1022 (D.C. Cir. 1986) ("Appellants' reading of the statute is not necessary to avoid making either subsection superfluous."); *United States v. Volvo Powertrain Corp.*, 854 F. Supp. 2d 60, 69 (D.D.C. 2012), *aff'd*, 758 F.3d 330 (D.C. Cir. 2014) ("The government's construction [ ] would not render the intervention superfluous."). The Foundation's argument that "FOIA does not distinguish between privileges for the purposes of the foreseeable-harm standard," Pl.'s Mem. at 13, meanwhile, is simply a non-sequitur. The fact that the foreseeable harm standard does not expressly distinguish between privileges hardly means that "the foreseeability of harm" is equally "manifest" across all contexts. *See Reps. Committee*, 3 F.4th at 372; *see also Rosenberg*, 442 F. Supp. 3d at 259.

The Foundation's reliance on a 28-year-old Department of Justice memorandum, *Applying the 'Foreseeable Harm' Standard Under Exemption Five* ("FOIA Memorandum"), 15 FOIA Update No. 2 (1994), is misplaced. Nothing in the FOIA Improvement Act's text or legislative history indicates that Congress was even aware of this memorandum, which predated the Act by over 22 years, let alone approved of it. *See MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 674 (D.C. Cir. 2017) (rejecting argument that Congress drafted a statute in light of a particular case, because there was no "evidence that Congress was aware of the case at all"); *Nat'l R.R. Passenger Corp. v. United States*, 431 F.3d 374, 378 (D.C. Cir. 2005) (declining to assume that Congress intended to codify an agency ruling absent "evidence that Congress ever knew of the [ ] ruling"); *Beverly Enters., Inc. v. Herman*, 119 F. Supp. 2d 1, 9 (D.D.C. 2000) ("assuming

Congress was even aware of the [agency's] construction, there is simply no evidence of express approval"). Tellingly, the only case discussing this memorandum that the Foundation cites (and the only such case the Centers knows) rejected the idea that courts must apply the memorandum's analysis under the foreseeable harm standard, explaining that "[t]here is no basis in FOIA's text or case law [ ] to require an agency to mechanically recite each factor in order to meet its heightened burden under the FOIA Improvement Act." *Rosenberg*, 442 F. Supp. 3d at 260 n.7.

The Foundation's reliance on caselaw from the Exemption 4 context is equally misplaced. Exemption 4, which covers "trade secrets and commercial or financial information obtained from a person" if they are "privileged or confidential," 5 U.S.C. § 552(b)(4), lacks the attorney-client privilege's "ancient lineage," *Sealed Case*, 877 F.2d at 980, or "centrality . . . to the proper functioning of our adversary system of justice," *United States v. Zolin*, 491 U.S. 554, 562 (1989). While the interests that Exemption 4 serves are important, our law does not deem them to be as weighty as those that the attorney-client privilege protects. *See Philip Morris*, 314 F.3d at 618; *supra* at 1-4. Whether disclosure's harm can be self-evident under Exemption 4 thus says nothing about whether such harm can be self-evident as to the attorney-client privilege.

Regardless, although the Foundation contends otherwise, there does not actually appear to be a judicial consensus that the harm of disclosure cannot be self-evident under Exemption 4. As the Foundation acknowledges, at least one judge in the Northern District of California concluded that disclosure "necessarily" causes harm under Exemption 4. *Am. Small Bus. League v. Dep't of Def.*, 411 F. Supp. 3d 824, 836 (N.D. Cal. 2019). The Foundation argues that Chief Judge Howell rejected this view in *Center for Investigative Reporting v. Customs & Border Protection*, 436 F. Supp. 3d 90, 113 (D.D.C. 2019). Not so. The Court in that case did not address that argument at all—most likely because the agency had "not established that the withheld information falls within

the scope of Exemption 4 in the first instance." Likewise, the Court in *Center for Investigative Reporting v. Department of Labor*, 424 F. Supp. 3d 771, 780 (N.D. Cal. 2019), held only that the foreseeable harm standard applies under Exemption 4, without elaborating on just what an agency must show to demonstrate foreseeable harm under Exemption 4—likely because the agency did "not attempt to make such a showing" at all. In the end, although the Foundation claims that "most courts are rejecting" the idea of self-evident harm under Exemption 4, it musters only a single on-point case, *Seife v. FDA*, 43 F.4th 231, 241 (2d Cir. 2022)—hardly the "trend" it claims. Pl.'s Mem. at 11.  Most importantly, the D.C. Circuit has not reached a similar holding, trendy or not.

### B.  Judges in this District Recognize that the Harm of Disclosing Attorney-Client Communications is Self-Evident

As the Centers explained in moving for summary judgment, judges in this District have frequently recognized that the harm of disclosing attorney-client communications is self-evident. The Foundation attempts to downplay this extensive body of cases, but its efforts are unpersuasive.

In *Ecological Rights Foundation v. EPA*, Civ. A. No. 19-0980 (BAH), 2021 WL 535725, at *32 (D.D.C. Feb. 13, 2021), for example, the Court concluded that "[w]hen invoking the attorney-client privilege, [ ] an agency likely does not need to reach far beyond the fact of disclosure to show foreseeable harm." The Foundation insists that this language is "pure obiter dictum." Pl.'s Mem. at 17. But the Foundation fails to engage with its underlying reasoning, and "even assuming that it is dicta," the Foundation "point[s] to nothing that minimizes its persuasive force." *Network Proj. v. Corp. for Pub. Broad.*, 561 F.2d 963, 975 (D.C. Cir. 1977); *accord Gabbs Exploration Co. v. Udall*, 315 F.2d 37, 39 (D.C. Cir. 1963) ("If these conclusions were dicta, it does not necessarily follow that they were wrong" (internal quotation marks omitted)).

But even were the Court to discount the persuasive reasoning in *Ecological Rights* as mere dicta, that case is hardly unique in noting that disclosing attorney-client communications presents

a reasonably foreseeable harm. *See, e.g.*, *Avila v. Dep't of State*, Civ. A. No. 17-2685 (RC), 2022 WL 2104483, at *12 (D.D.C. June 10, 2022) (disclosing attorney-client communications "would jeopardize agency officials' ability to freely give and receive legal advice in [the agency's] operations"); *Cayuga Nation v. Dep't of Interior*, Civ. A. No. 20-2642 (ABJ), 2022 WL 888178, at *9 (D.D.C. Mar. 25, 2022) ("disclosure of privileged information is a harm in and of itself when it comes to the attorney-client relationship" (cleaned up)); *Louise Trauma Ctr. LLC v. Dep't of Homeland Sec.*, Civ. A. No. 20-1128 (TNM), 2022 WL 1081097, at *6 (D.D.C. Apr. 11, 2022) ("the context and purpose of attorney work product makes self-evident the harm from its disclosure" (internal quotation marks omitted)); *Selgjekaj v. Exec. Off. for U.S. Att'ys*, Civ. A. No. 20-2145 (CRC), 2021 WL 3472437, at *5 (D.D.C. Aug. 6, 2021) (it is "hardly debatable that the government's ability to prosecute [ ] cases would be impeded if its attorneys were deprived of a zone of privacy within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories" (cleaned up)).

The Foundation insists that all these cases rest on "conclusory analysis." Pl.'s Mem. at 17. But if anything, the fact that so many judges in this District deem these conclusions so apparent as to require little elaboration cuts against, not toward, its position. It also downplays *Louise Trauma Center* and *Selgjekaj*, as they "involved the attorney-work-product" doctrine. *Id.* at 17 n.4. But the attorney-client privilege and work-product doctrine serve the same purpose—"the rendering of effective legal services," *Sealed Case*, 107 F.3d at 51—so disclosure's harm in both contexts is alike. Indeed, the very memorandum the Foundation repeatedly cites explains that "there is a good deal of overlap between [the attorney-client] privilege and the attorney work-product privilege." FOIA Memorandum, *supra*. If anything, the harm of disclosure is even *greater* under the attorney-client privilege. *See Sealed Case*, 107 F.3d at 51 (attorney-client privilege is more "absolute").

Finally, in *Reporters Committee for Freedom of the Press v. Customs & Border Protection*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021), another judge in this District explained that "an agency's burden under the foreseeable harm requirement may be more easily met" under the attorney-client privilege than the deliberative process privilege, as "the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated." He reasoned that the "[r]elease of attorney-client communications would undoubtably undermine our legal culture," because "the observance of law otherwise promoted by the privilege would be hampered during agency decisionmaking," stressing the privilege's "prominent and sacrosanct role in the law." *Id.* (internal quotation marks omitted).

The Foundation points to the Court's warning that a "conclusory statement" will not suffice to show foreseeable harm. *Reps. Comm.*, 567 F. Supp. 3d at 124. But the Court was addressing the specific situation where an agency "barely provided any explanation at all"—only the "five words" that disclosure would "undermine the attorney-client privilege." *Id.* at 124. This description "covers more minor communications, disclosure of which would have less dire consequences, if any." *Id.* The Court did not address explanations that go beyond those five words. *Id.*

This Court, too, has recognized that the burden to show foreseeable harm in the attorney-client privilege context is low. In *Tobias v. Department of the Interior*, Civ. A. No. 18-1368 (CJN), 2021 WL 4262488, at *2 (D.D.C. Sept. 20, 2021) (cleaned up), this Court explained that "[s]o long as the agency specifically focused on the information at issue under review, and it concluded that disclosure of that information would chill future internal discussions, the court can conclude that the agency correctly understood the governing legal requirement and explained why it was met." This Court thus concluded that an agency had demonstrated foreseeable harm because disclosure "would impair the ability of agency employees to fully inform agency counsel when seeking legal

advice, resulting in unsound legal advice and advocacy on behalf of the agency." *Id.* In *ACLU v. CIA*, Civ. A. No. 18-2784 (CJN), 2022 WL 306360, at *11 (D.D.C. Feb. 2, 2022) (internal quotation marks omitted), meanwhile, this Court concluded that an agency had shown foreseeable harm by explaining that if "confidential attorney-client communications were disclosed, it would subject the legal guidance to scrutiny and reveal preliminary legal risk analysis and strategy."

The Foundation argues that *Tobias* and *ACLU* "arguably lack[ed] detailed consideration of how the foreseeable-harm standard should be applied to records withheld under the attorney-client privilege." Pl.'s Mem. at 18. But this Court's analysis was not defective—it simply reflected that the harm of disclosing attorney-client communications is self-evident. The Foundation also argues that *Tobias* and *ACLU* "are marked by their actual engagement with the evidentiary record." Pl.'s Mem. at 18. It is difficult to see how this Court's analysis could have "lacked detailed consideration of" the foreseeable harm inquiry while simultaneously reflecting "actual engagement with the evidentiary record." *Id.* Regardless, the declarations the Centers has submitted here describe the harm of disclosure with a degree of detail similar to that of the public declarations in *Tobias* and *ACLU*. *Compare Tobias*, 2021 WL 4262488, at *2 ("disclosure of attorney work product 'would expose attorneys' preparation materials to scrutiny, harming the adversarial trial process'"), *and ACLU*, 2022 WL 306360, at *11 ("if the confidential attorney-client communications were disclosed, 'it would subject the legal guidance to scrutiny and reveal preliminary legal risk analysis and strategy'"), *with* 1st Gilmore Decl., ECF No. 24-3, *and* Attach., 2d Gilmore Decl.

In *Cabezas v. FBI*, Civ. A. No. 19-0145 (CJN), 2022 WL 898789, at *8 (D.D.C. Mar. 28, 2022) (internal quotation marks omitted), meanwhile, this Court concluded that "[d]isclosure of the legal advice at issue would disrupt the adversarial process of litigation by providing access to information related to the government's potential legal strategies." The Foundation suggests that

this Court simply failed to address the foreseeable harm standard as to the attorney-client privilege. Pl.'s Mem. at 18. But this Court cited 5 U.S.C. § 552(a)(8)(A)(i), explained that an "agency carries the burden of proving the applicability of an exemption and showing either a foreseeable risk of harm or that the law prohibits disclosure," and identified the harm that disclosure of the records at issue would cause. 2022 WL 898789, at *1, *8. The Centers does not lightly assume that this Court failed to apply an applicable legal requirement merely because the Court did not recite the magic words "foreseeable harm" in the attorney-client privilege section of its analysis, especially when the Court discussed the foreseeable harm standard at length in the preceding section of its analysis concerning the deliberative process privilege. *See Al Latif v. Obama*, 677 F.3d 1175, 1225 (D.C. Cir. 2012) ("we presume that the district court knew and applied the law correctly" (cleaned up)).

Tellingly, the Foundation cites no cases from this District for the notion that self-evident harms are not cognizable under the foreseeable harm standard. The only case it cites for this point, *Black Hills Clean Water Alliance v. Forest Service*, Civ. A. No. 20-5034, 2022 WL 2340440, at *12 (D.S.D. June 29, 2022), is unpersuasive. There, the Court reasoned that to acknowledge that disclosing attorney-client communications causes self-evident harm would "effectively nullify[ ]" the foreseeable harm standard. *Id.* But this analysis overlooks that, as explained, the foreseeable harm standard is not limited to the attorney-client privilege, and the harm of disclosure is not self-evident in other contexts. *See supra* § I.B. *Black Hills Clean Water Alliance* thus merits no weight.

## II.    The Centers Has Demonstrated That Disclosure Would Cause Foreseeable Harm

In any event, the Centers has satisfied its burden to demonstrate foreseeable harm under any standard. First, because the records at issue "were communicated under an understanding that they would remain confidential," their disclosure in and of itself would harm interests that the attorney-client privilege protects. 1st Gilmore Decl. ¶¶ 11-12; *see also Cayuga Nation*, 2022 WL

888178, at *9 ("disclosure of privileged information is a harm in and of itself when it comes to the attorney-client relationship"); *Ecological Rts. Found.*, 2021 WL 535725, at *32 ("The purpose of the attorney-client privilege . . . for example, is to provide an assurance of confidentiality to clients, such that disclosure of privileged information is a harm in and of itself." (cleaned up)). The Centers' attestation that the records at issue were in fact communicated under an understanding of confidentiality goes well beyond the "conclusory statement" that Judge McFadden found lacking in *Reporters Committee*, 567 F. Supp. 3d at 124. There, the agency did not attest that the withheld records were actually communicated under an understanding of confidentiality. *Id.* To the contrary, the agency's description of the withheld records covered "minor communications, disclosure of which would have less dire consequences. *Id.* The Centers has shown that this is not the case here.

Second, disclosure "would [ ] discourage [the Centers] from seeking legal advice on the scope of its authority to take certain actions in the future, because it would know that any such communications may become public." 1st Gilmore Decl. ¶ 13; *see also Swidler & Berlin*, 524 U.S. at 403 ("The privilege is intended to encourage full and frank communication between attorneys and their clients" (internal quotation marks omitted)); *Upjohn Co.*, 449 U.S. at 392 (narrowing the privilege "discourag[es] the communication of relevant information . . . to attorneys seeking to render legal advice"). This concern is hardly speculative—as the D.C. Circuit has recognized in the context of the deliberative process privilege, the "premature release of privileged information would risk embarrassment of individuals who had put forth certain ideas on the understanding and assurance that their communications would remain confidential." *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 464 (D.C. Cir. 2014).

The Foundation criticizes this explanation as "vague." Pl.'s Mem. at 22. But "given the contents of the withheld materials and the information about them that [the Centers] has already

made public, it would be difficult if not impossible to describe the withheld materials in greater detail without effectively disclosing their contents, which would obviate the attorney-client privilege's purpose." 2d Gilmore Decl. ¶ 3; *see also Perioperative Servs. & Logistics, LLC v. Dep't of Veterans Affairs*, No. 21-5223, 2023 WL 192419, at *2 (D.C. Cir. Jan. 17, 2023) (circumstances can limit what an agency must say to justify a withholding without "'disclosing the very material sought to be kept secret'" (citing *Arieff v. Dep't of Navy*, 712 F.2d 1462, 1471 (D.C. Cir. 1983))); *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (explaining, in the segregability context, that "the agency is not required to provide so much detail that the exempt material would be effectively disclosed").

\*     \*     \*

## CONCLUSION

This Court should enter judgment for the Centers, and deny the Foundation's cross-motion for summary judgment.[2]

Dated: January 18, 2023                     Respectfully submitted,

                                            MATTHEW M. GRAVES
                                            D.C. Bar No. 481052
                                            United States Attorney

                                            BRIAN P. HUDAK
                                            Chief, Civil Division

                                            /s/ Bradley G. Silverman
                                            BRADLEY G. SILVERMAN
                                            D.C. Bar No. 1531664
                                            Assistant United States Attorney
                                            601 D Street NW
                                            Washington, DC 20530
                                            (202) 252-2575
                                            bradley.silverman@usdoj.gov

                                            *Attorneys for the United States*

---

[2] The Centers suggests that this Court inspect the records at issue *in camera* to determine whether their release would cause harm. Pl.'s Mem. at 23-24. The Centers believes that the harm of disclosure is sufficiently clear that *in camera* review would merely waste judicial resources. *See Mead Data Ctr., Inc. v. Dep't of Air Force*, 566 F.2d 242, 262 (D.C. Cir. 1977) ("It is neither consistent with the FOIA nor a wise use of increasingly burdened judicial resources to rely on in camera review of documents as the principal tool for review of segregability disputes." (citation omitted)). But should the Court deem it helpful, the Centers will submit the records if so directed.