**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

AMERICANS FOR PROSPERITY
FOUNDATION

       *Plaintiff,*

v.

CENTERS FOR MEDICARE AND
MEDICAID SERVICES,

       *Defendant.*

</td><td>

)
)
)
)
)
)
)
)
)
)
)
)
)

</td><td>

Civil Action No. 21-2021 (CJN)

</td></tr>
</table>

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S
<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Ryan P. Mulvey
D.C. Bar No. 1024362
Eric R. Bolinder
D.C. Bar No. 1028335

AMERICANS FOR PROSPERITY
FOUNDATION
1310 North Courthouse Road, Suite 700
Arlington, VA 22201
Telephone: (571) 444-2841
rmulvey@afphq.org
ebolinder@afphq.org

*Counsel for Plaintiff*

## TABLE OF CONTENTS

Table of Authorities ....................................................................................................... iii

Introduction ..................................................................................................................... 1

Argument .......................................................................................................................... 2

   I.   The foreseeable-harm standard is not met by claims of "self-evident" harm. .................... 2

   II.  With the attorney-client privilege, an agency must show real and foreseeable harm in addition to its satisfaction of the technical prerequisites for use of the privilege. .......... 5

        A.   OIP's foreseeable-harm guidance is relevant and persuasive. ............................... 6

        B.   CMS has not rehabilitated its misplaced policy arguments. .................................. 7

        C.   Recent Exemption 4 caselaw in this district is instructive. ................................. 10

        D.   The caselaw cited by CMS is unpersuasive and conclusory. ............................... 11

   III.  CMS has not satisfied its burden to justify withholding the record at issue. .................... 13

   IV.  The Court should conduct *in camera* review. ................................................................. 15

Conclusion ...................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*American Civil Liberties Union v. Central Intelligence Agency*,
  No. 18-2784, 2022 WL 306360 (D.D.C. Feb. 2, 2022) ........................................................16

* *Black Hills Clean Water Alliance v. Forest Service*,
  No. 20-5034, 2022 WL 2340440 (D.S.D. June 29, 2022) ...........................................11, 12, 13

*Carter v. Department of Commerce*,
  830 F.2d 388 (D.C. Cir. 1987) ........................................................................................16

*Cayuga Nation v. Department of the Interior*,
  No. 20-2642, 2022 WL 888178 (D.D.C. Mar. 25, 2022) .....................................................16

* *Center for Investigative Reporting v. U.S. Customs & Border Protection*,
  436 F. Supp. 3d 90 (D.D.C. 2019) ......................................................................7, 10, 14, 15

*Center for Medical Progress v. Department of Health & Human Services*,
  No. 21-0642, 2022 WL 4016617 (D.D.C. Sept. 3, 2022) .....................................................11

*City Stores Co. v. Lerner Shops of District of Columbia, Inc.*,
  410 F.2d 1010 (D.C. Cir. 1969) ......................................................................................13

*Ecological Rights Foundation v. Environmental Protection Agency*,
  No. 19-0980, 2021 WL 535725 (D.D.C. Feb. 13, 2021) ......................................................12

*Environmental Protection Agency v. Mink*,
  410 U.S. 74 (1973) ..........................................................................................................8

*Food & Drug Administration v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000) .........................................................................................................9

*Greenspan v. Board of Governors of the Federal Reserve System*,
  No. 21-1968, 2022 WL 17356879 (D.D.C. Dec. 1, 2022) ...................................................10

*Gross v. FBL Financial Services, Inc.*,
  557 U.S. 167 (2009) .........................................................................................................4

*Hutchins v. District of Columbia*,
  188 F.3d 531 (D.C. Cir. 1999) .......................................................................................15

*Judicial Watch, Inc. v. Department of Commerce*,
  375 F. Supp. 3d 93 (D.D.C. 2019) ..............................................................................2, 5, 7

*King v. Burwell*,
  576 U.S. 473 (2015) .........................................................................................................3

*Leopold v. Department of Justice,*
No. 19-3192, 2021 WL 124489 (D.D.C. Jan. 13, 2021).....................................................11

*Motor Vehicle Manufacturers Ass'n v. Ruckelshaus,*
719 F.2d 1159 (D.C. Cir. 1983)..........................................................................................3

*National Archives & Records Administration v. Favish,*
541 U.S. 157 (2004).............................................................................................................7

*New York Times Co. v. Department of Justice,*
756 F.3d 100 (2d Cir. 2014)................................................................................................7

*North v. Walsh,*
881 F.2d 1088 (D.C. Cir. 1989)..........................................................................................8

*Perioperative Services & Logistics, LLC v. Department of Veterans Affairs,*
No. 21-5223, 2023 WL 192419 (D.C. Cir. Jan. 17, 2023) ...............................................14

*Reporters Committee for Freedom of the Press v.*
*Customs & Border Protection,*
567 F. Supp. 3d 97 (D.D.C. 2021) ...............................................................................13, 14

* *Reporters Committee for Freedom of the Press v.*
*Federal Bureau of Investigation,*
3 F.4th 350 (D.C. Cir. 2021).................................................................... *passim*

*Rosenberg v. Department of Defense,*
342 F. Supp. 3d 62 (D.D.C. 2018) ....................................................................................13

*Rosenberg v. Department of Defense,*
442 F. Supp. 3d 240 (D.D.C. 2020) ................................................................................5, 7

*United States v. United Drill & Tool Corp.,*
81 F. Supp. 171 (D.D.C. 1948)........................................................................................12

*United States v. Weber Aircraft Corp.,*
465 U.S. 792 (1985)............................................................................................................8

*Wilson v. Federal Communications Commission,*
No. 21-0895, 2022 WL 4245485 (D.D.C. Sept. 15, 2022)...............................................11

*WP Co., LLC v. Small Business Administration,*
575 F. Supp. 3d 114 (D.D.C. 2021) ..................................................................................11

*WP Co., LLC v. Small Business Administration,*
No. 20-1240, 2021 WL 2982173 (D.D.C. July 15, 2021) ................................................11

**Statutes**

5 U.S.C. § 552(a)(4)(B) ....................................................................................11, 15

* 5 U.S.C. § 552(a)(8)(A)(i) ..............................................................................2, 4

5 U.S.C. § 552(b) ....................................................................................................4

**Rules**

Federal Rule of Civil Procedure 56(c)(1) ............................................................15

Federal Rule of Civil Procedure 56(e)(2) ............................................................15

**Legislative Materials**

H.R. Rep. No. 114-391 (2016)........................................................................3, 6, 9

S. Rep. No. 114-4 (2015) ................................................................................5, 6, 9

**Other Authorities**

*About the Office*, Department of Justice Office of Information Policy,
   https://www.justice.gov/oip/about-office ...............................................................7

* Department of Justice, OIP Guidance: Applying the "Foreseeable Harm"
   Standard Under Exemption 5, FOIA Update, vol. XV,
   no. 2 (Jan. 1, 1994)..........................................................................6, 13, 15

*Reasonable*, Black's Law Dictionary (11th ed. 2019) ................................................15

## INTRODUCTION

Plaintiff Americans for Prosperity Foundation ("AFPF") and Defendant Centers for Medicare and Medicaid Services ("CMS") have narrowed this Freedom of Information Act ("FOIA") case to a single issue: Has the agency provided an adequate justification under the foreseeable-harm standard to continue withholding a record the parties otherwise agree is protected by the attorney-client privilege?  That record—which is seven-pages long with attachments—is thirty years old and concerns state Medicaid disallowance liabilities for Fiscal Year 1982.  No one at the agency seems to know how the record was used, and no declarant has come forward to explain how disclosure today would be reasonably foreseen to harm an interest protected by Exemption 5.  The best CMS can muster is generalized claims about "chill" and an insistence that "self-evident" harms are cognizable and sufficient to meet the foreseeable-harm test.  But CMS's position runs afoul of the plain text of the FOIA.  It also offends the legislative history and completely ignores relevant guidance published by the Department of Justice's Office of Information Policy ("OIP").

For the foreseeable-harm standard to mean anything, it must be rigorously applied to every case and with every exemption.  Claiming abstract harm from the release of a record created more than three decades ago—a record no one at the agency knows anything about—cannot meet the standard.  Nor could it be enough for an agency to recite the policy reasons for a privilege applying in the first instance.  AFPF therefore asks the Court to deny CMS's motion for summary judgment and to grant AFPF's cross-motion for summary judgment.

1

## ARGUMENT

**I.     The foreseeable-harm standard is not met by claims of "self-evident" harm.**

An agency may only "withhold information" under the FOIA if it "reasonably foresees that disclosure would harm an interest protected by an exemption" or if disclosure is otherwise "prohibited by law."  5 U.S.C. § 552(a)(8)(A)(i).  An agency cannot simply offer an argument for the technical application of a statutory exemption or attendant privilege.  More is required.  *See Judicial Watch, Inc. v. Dep't of Commerce*, 375 F. Supp. 3d 93, 101 (D.D.C. 2019).  An agency must give *precise* reasons why disclosure of *specific* records would in fact be reasonably foreseen to harm an interest protected by an exemption.  "Self-evident" harms render the "independent and meaningful burden" to "articulate both the nature of the harm from release and the link between the specific harm and specific information contained in the material withheld" entirely meaningless.  *Reporters Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 369 (D.C. Cir. 2021) [hereinafter "*Reporters Committee I*"] (cleaned up).

CMS disputes this straightforward, textualist reading of the foreseeable-harm standard and appeals instead to a form of purposivism that it defends with inapposite caselaw.[1]  The agency suggests, for example, that "to hold that self-evident harms are categorically non-cognizable . . . would yield a bizarre result" because "the more obviously a record's disclosure would foreseeably harm an interest an exemption protects, the harder that record would be to withhold."  Reply in Supp. of Mot. for Summ. J. & Resp. in Opp'n to Pl.'s Cross-Mot. for Summ. J. at 5 [hereinafter "Def.'s Opp'n"], ECF No. 32.  But this does not follow.  The more likely an agency expects disclosure to lead to harm, the *easier* it should be to explain that prediction in a non-conclusory

---

[1] The Exemption 7 cases CMS cites do not stand for the proposition it asserts.  *See* Def.'s Opp'n at 5–6.  No district court has ruled that "the harm of disclosure can be self-evident."  *Id.* at 5.  And CMS's other cases—such as *United States v. Philip Morris, Inc.*—do not involve the FOIA.

way.  CMS's line of argument only makes sense if one blurs the analytical distinction between the application of exemptions and the independent inquiry into foreseeable harm.

In other words, CMS fails to distinguish the separate burdens it bears to show (1) why a record is privileged and (2) why its release would cause harm *beyond the mere loss of privilege*. As the D.C. Circuit has explained, the fact a "privilege [is] applicable . . . does not end the matter." *Reporters Comm. I*, 3 F.4th at 369.  "[W]hat is needed is a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually" harm the interests protected by the underlying exemption.  *Id.* at 370.

CMS also argues that honoring the foreseeable-harm standard would "turn FOIA inside-out[.]"  Def.'s Opp'n at 5.  Yet CMS's authorities establish that, when attempting to "effectuate" statutory "purpose," it is paramount to attend to the "intent of Congress."  *Motor Vehicle Mfrs. Ass'n v. Ruckelshaus*, 719 F.2d 1159, 1165 (D.C. Cir. 1983).  Here, congressional intent—to the extent it matters—cuts against CMS.  *See* Mem. of P. & A. in Opp'n to Def.'s Mot. for Summ. J. & in Supp. of Pl.'s Cross-mot. for Summ. J. at 5–8 [hereinafter "Pl.'s Mot."], ECF No. 25-1. "Congress adopted the [foreseeable-harm standard] . . . in part out of 'concerns that some agencies were overusing FOIA exemptions that allow, but do not require, information to be withheld from disclosure.'"  *Reporters Comm. I*, 3 F.4th at 369 (cleaned up and citation omitted).  Congress wanted the standard to apply to *all* discretionary exemptions, including Exemption 5 when used with "legal privileges."  H.R. Rep. No. 114-391 at 9 (2016).

CMS's appeal to purposivism must anyway take a back seat to the text of the FOIA.  "If the statutory language is plain," a court should "enforce it according to its terms."  *King v. Burwell*, 576 U.S. 473, 486 (2015).  Indeed, "[s]tatutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately

expresses the legislative purpose." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) (internal quotation marks and citation omitted). The foreseeable-harm standard anticipates that an agency will articulate how disclosure "harm[s] an interest protected by an exemption" *separate and apart* from the reasons for why an exemption applies. *Cf.* 5 U.S.C. § 552(a)(8)(A)(i) *with id.* § 552(b). CMS may disagree with Congress's decision to raise the bar to justify withholding information, but the agency's policy objections cannot carry the day. To countenance CMS's reading of the FOIA would reduce the foreseeable-harm inquiry into a sort of pleading exercise, at least when courts have allowed "self-evident" harms to be sufficient.

Finally, CMS's arguments for "self-evident" harm rest on a confused understanding of the context-bound nature of an agency's foreseeable-harm inquiry. CMS not only argues incorrectly that "context" should refer to the policy grounds for treating a record as privileged, *see* Mem. of P. & A. in Supp. of Def.'s Mot. for Summ J. at 4–5 [hereinafter "Def.'s Br."], ECF No. 24-1, but it now suggests a record being privileged provides enough "context" *on its own* to establish reasonably foreseeable harm. *See* Def.'s Opp'n at 6 ("The fact that the attorney-client privilege protects a record plainly goes to the record's purpose."). This self-referential approach must fail. Although an agency's foreseeable-harm analysis may differ according to the exemption at hand, the "context" considered under the standard *as applied* refers to the specific circumstances and content of the record in dispute. *See Reporters Comm. I*, 3 F.4th at 372. Here, no one at the agency appears to know anything about the context or specific circumstances of this record.

A simple illustration proves the point. There is a real contextual difference between records that reflect attorney-client communications amid an agency's ongoing litigation, on the one hand, and attorney-client communications dating from thirty years ago about an agency's legal authority to act on forty-year-old Medicaid disallowance liabilities. Both kinds of records are technically

privileged—*e.g.*, communicated under an assurance of confidentiality, *etc.*—but the likelihood of harm (and the nature of that harm) arising from disclosure is wildly different and appreciable only after considering the content, age, and continued relevance of the records within the agency.  As the district court in *Rosenberg v. Department of Defense* explained:

> In some instances, the withheld information may be so obviously sensitive—such as the disclosure of internal deliberations between a high-ranking military commander and senior government officials about a new detention operation in the United States—that a simple statement illustrating why the privilege applies and identifying the harm likely to result from release "may be enough."  In other instances—such as where the withheld deliberations involve more mundane, quotidian matters or the decision has already been made—more explanation may be necessary.

442 F. Supp. 3d 240, 259–60 (D.D.C. 2020) (internal citations omitted).

In any case, CMS's appeal to dictionary definitions reveals how underinclusive its concept of foreseeable harm is.  If "'context' naturally is understood to encompass the full set of circumstances surrounding a record," Def.'s Opp'n at 6, then age, authorship, and contemporary relevance—all of which the agency ignores—should be considered.  But that sort of approach conflicts with a theory of "self-evident" harm predicated merely on disclosure breaking privilege.

## II.   With the attorney-client privilege, an agency must show real and foreseeable harm in addition to its satisfaction of the technical prerequisites for use of the privilege.

The "successful invocation of a FOIA exemption cannot justify [an agency's] withholding of exempt material without a more particularized inquiry into what sort of foreseeable harm would result from the material's release."  *Reporters Comm. I*, 3 F.4th at 370 n.2; *see Judicial Watch, Inc.*, 375 F. Supp. 3d at 100; S. Rep. No. 114-4 at 8 (2015) (an agency should examine the "content of a particular record" and whether disclosure would lead to harm, "given its age, content, and character").  With the attorney-client privilege, this means considering whether release of a record would interfere with the solicitation and provision of the same kind of advice in the same context.

A.      OIP's foreseeable-harm guidance is relevant and persuasive.

As AFPF explained, *see* Pl.'s Mot. at 9–10, long-standing guidance issued by OIP instructs "agencies . . . [to] consider making liberal waivers of the attorney-client privilege under the FOIA . . . through rigorous application of the 'foreseeable harm' elements" relevant to the attorney-work-product and deliberative-process privileges. *See* Dep't of Justice, OIP Guidance: Applying the "Foreseeable Harm" Standard Under Exemption 5, FOIA Update, vol. XV, no. 2 (Jan. 1, 1994) [hereinafter "OIP Guidance"], *available at* https://bit.ly/3iDJhSi. CMS musters two arguments for why AFPF's reliance on the OIP Guidance is "misplaced," but each argument misses its target.

*First*, CMS claims "[n]othing in the FOIA Improvement Act's text or legislative history indicates that Congress was even aware of this [guidance] . . . let alone approved it." Def.'s Opp'n at 7. This is misleading. The OIP Guidance implements an October 1993 memorandum issued by then-Attorney General Janet Reno, which is cited in the Act's legislative history. *See, e.g.*, S. Rep. No. 114-4 at 3 n.6. Although Congress never explicitly referenced the OIP Guidance, it was undoubtedly aware of the concept of "foreseeable harm" and the inquiry undertaken when contemplating discretionary release under the "presumption of openness" embraced by multiple presidential administrations over previous decades. In this sense, Congress "[c]odif[ied]" the substance of the OIP Guidance, *id.* at 3, and built on it by turning its instructions into a "permanent requirement." H.R. Rep. No. 114-391 at 9. What was once discretionary policy via guidance is now a mandatory requirement via statute.

*Second*, CMS insists *Rosenberg v. Department of Defense* "rejected the idea that courts must apply the [OIP Guidance's] analysis[.]" Def.'s Opp'n at 8. But this reading of *Rosenberg* cannot be reconciled with the language of the case. To be sure, the *Rosenberg* court noted "[t]here is no basis in FOIA's text or case law . . . to require an agency *to mechanically recite each factor*

[of the guidance] *in order to meet its heightened burden*."  442 F. Supp. 3d at 260 n. 7 (emphasis

added).  But the court confirmed that "some or all of th[ose] factors may be relevant in making the

context-specific determination that the release of withheld information is likely to cause harm to

an exemption-protected interest."  *Id.*; *cf. Ctr. for Investigative Reporting v. U.S. Customs &

Border Prot.*, 436 F. Supp. 3d 90, 105 (D.D.C. 2019) (citing S. Rep. No. 114-4 at 8).  That is what

AFPF argued in its opening brief, Pl's Mot. at 10,[2] and what CMS now seeks to evade.

> **B.      CMS has not rehabilitated its misplaced policy arguments.**

CMS continues to stand by a series of policy arguments for why it satisfies the foreseeable-

harm standard with abstract claims of "self-evident" harm.  None is apt or persuasive.  CMS's

opposition underscores the need for a robust argument for why the release of otherwise privileged

records would lead to reasonably foreseeable harm.

*First*, CMS concedes its appeal to the centrality the attorney-client privilege amounts,

ultimately, to a type of "chill" argument.  *See.* Def.'s Opp'n at 2.  And the agency fails to dispute

AFPF's point that generic "chill" arguments are inadequate.  *See Judicial Watch, Inc.*, 375 F. Supp.

3d at 101; *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 107–08.  CMS also fails to grapple

with the Second Circuit's decision in *New York Times Co. v. Department of Justice*, which casts

doubt on the notion that the prospect of disclosure will, by itself, dissuade agency personnel from

seeking out legal counsel.  *See* 756 F.3d 100, 116–17 (2d Cir. 2014).  The agency instead offers a

slew of cases that are irrelevant to the FOIA and the foreseeable-harm standard.  *See* Def.'s Opp'n

---

[2] The OIP Guidance has never been rescinded or superseded.  Given the presumption of regularity
in agency operations, *cf. Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174–75 (2004),
CMS faces a high hurdle to explain such valid guidance is irrelevant.  *See About the Office*, Dep't
of Justice Office of Info. Pol'y, https://www.justice.gov/oip/about-office ("The mission of [OIP]
. . . is to . . . oversee agency compliance with [FOIA] . . . [by] developing government-wide policy
guidance[.]") (last visited Feb. 8, 2023).

at 2 (citing *Swidler & Berlin v. United States*, 524 U.S. 399 (1998) (grand jury subpoenas); *Upjohn Co. v. United States*, 449 U.S. 383 (1981) (IRS summons); and *In re Lindsey*, 148 F.3d 1100 (D.C. Cir. 1998) (grand jury subpoena)).  These cases may be relevant to the threshold inquiry of whether privilege applies, but not to the heightened showing necessary to demonstrate foreseeable harm.

*Second*, CMS reiterates the attorney-client privilege enjoys an "ancient lineage" and attempts to characterize AFPF's arguments as dishonoring those "deep roots."  *See id.* at 3.  CMS's position, however, is once again short on argument and long on appeals to historical justifications for protecting the attorney-client relationship.  CMS does not address the Supreme Court's direction that "privileges" used alongside Exemption 5 are only "rough analogies" to the same privileges applied in civil discovery.  *Envtl. Prot. Agency v. Mink*, 410 U.S. 74, 86 (1973).  Nor does the agency address the D.C. Circuit's explanation that "an individual may . . . obtain under FOIA information . . . even when the documents could not be obtained through discovery."  *North v. Walsh*, 881 F.2d 1088, 1099 (D.C. Cir. 1989).  CMS instead rehearses inapplicable cases like *United States v. Philip Morris Inc.*, which speak of the "general injury caused by the breach of the attorney-client privilege" but do not situate that reasoning within the FOIA context.  That failure is fatal.  The foreseeable-harm inquiry is distinct from the argument for applying Exemption 5. The FOIA requires a careful explanation of how disclosure of specific information— *notwithstanding privilege*—would lead to concrete harm.  CMS has not done so.

*Third*, CMS argues that "compromising values that our law deems to be categorically weightier"—such as the "unqualified nature" of the attorney-client privilege—"naturally causes harm."  Def.'s Opp'n at 3.  This ignores that there is no distinction between absolute and qualified privilege in the FOIA context.  *See, e.g.*, *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799 (1985).  And CMS fails to respond to AFPF's point that "OIP has long advised agencies to consider

the same foreseeable-harm factors for the attorney-client privilege as the attorney-work-product and deliberative-process privileges—both *qualified privileges*[.]"  Pl.'s Mot. at 14.  Finally, CMS's position is unsupported by the caselaw.  It is not "self-evident" that disclosure of a record reflecting inter-government consultation with agency counsel would comprise foundational legal principles in such a way as to imperil the rule of law as CMS implies.

*Fourth*, CMS still insists "'Congress was particularly concerned with . . . the deliberative process privilege'" when it passed the 2016 FOIA Amendments and, by implication, did not intend to impose any special burden on the attorney-client privilege.  Def.'s Opp'n at 3–4.  CMS's argument proves too much.  The statutory text does not support the agency's conclusion that the foreseeability of harm is ever "self-evident," including when attorney-client privilege is in play.  The best authority CMS can muster is a judicial gloss on the legislative history, Def.'s Opp'n at 4, which is undercut by the primary sources.  S. Rep. No. 114-4 at 2–3; H.R. Rep. No. 114-391 at 9.

CMS also doubles-down on the supposed relevance of Exemption 5's 25-year "sunset provision" and criticizes AFPF for pointing to a floor statement that provides insight into why that "sunset" only applies to the deliberative-process privilege.  Again, the "sunset provision" is irrelevant to the parties' dispute because—as a matter of textual interpretation—it has nothing to do with the foreseeable-harm standard.  *Cf. Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000) (courts must read "the words of a statute . . . in their context and with a view to their place in the overall statutory scheme").  CMS also misunderstands the relevance of Senator Leahy's floor statement, which highlights the agency's misguided reliance on legislative history to draw out an implied congressional imprimatur for "self-evident" harm.[3]

---

[3] CMS now tries to suggest, in its view, that "[t]he sunset provision merely illustrates that Congress was most concerned with agencies' reliance on the deliberative process privilege."  Def.'s Opp'n at 4.  That is dubious.  CMS raised the "sunset" provision in its opening brief as one of the

**C.      Recent Exemption 4 caselaw in this district is instructive.**

CMS tries to dismiss the relevance of developments under Exemption 4 on two grounds. *First*, it argues that "[w]hether disclosure's harm can be self-evident under Exemption 4 . . . says nothing about whether such harm can be self-evident as to the attorney-client privilege."  Def.'s Opp'n at 8.  But CMS provides no reasons for why this is so.  Exemption 4 covers information that originates outside the government and, therefore, protects non-governmental interests; Exemption 5, on the other hand, covers inter- and intra-government materials and is discretionary. If "self-evident" harm is not cognizable as part of the foreseeable-harm inquiry required with Exemption 4 withholdings—which the government tends to treat as mandatory, at least in practice—then, *a fortiori*, "self-evident" harm should not be relevant to purely discretionary withholdings under Exemption 5.

*Second*, CMS disagrees there is any "judicial consensus" on whether self-evident harms are cognizable with Exemption 4.  *See* Def.'s Opp'n at 8–9.  For example, CMS claims Chief Judge Howell rejected AFPF's view in *Center for Investigative Reporting v. Customs & Border Protection*.  Yet that decision clearly supports AFPF's position:

> To meet this [foreseeable-harm] requirement, the defendants must explain how disclosing, in whole or in part, the specific information withheld under Exemption 4 would harm an interest protected by this exemption, such as by causing "genuine harm to the submitter's economic or business interests," and thereby dissuading others from submitting similar information to the government[.]

436 F. Supp. 3d 90 at 113 (cleaned up and internal citations omitted).

Other judges in this district have adopted AFPF's reading of *Center for Investigative Reporting*.  *See generally Greenspan v. Bd. of Governors of the Fed. Reserve Sys.*, No. 21-1968,

---

"considerations" counseling in favor of lowering the agency's burden for meeting the foreseeable-harm standard in the context of the attorney-client privilege.  Def.'s Br. at 5.

2022 WL 17356879, at *5–6 (D.D.C. Dec. 1, 2022); *Wilson v. Fed. Comm'cns Comm'n*, No. 21-0895, 2022 WL 4245485, at *11 (D.D.C. Sept. 15, 2022); *WP Co., LLC v. Small Bus. Admin.*, 575 F. Supp. 3d 114, 119 (D.D.C. 2021); *WP Co., LLC v. Small Bus. Admin.*, No. 20-1240, 2021 WL 2982173, at *4 & 9 (D.D.C. July 15, 2021); *Leopold v. Dep't of Justice*, No. 19-3192, 2021 WL 124489, at *7 (D.D.C. Jan. 13, 2021).  And Chief Judge Howell ratified her reasoning a few months ago.  *See Ctr. for Medical Progress v. Dep't of Health & Human Servs.*, No. 21-0642, 2022 WL 4016617, at *11 (D.D.C. Sept. 3, 2022).

There is a clear trend in the caselaw towards rejecting any notion of "self-evident" harm with application of the foreseeable-harm standard to Exemption 4 withholdings in this district. The logic undergirding that trend applies equally to Exemption 5.

### D.    The caselaw cited by CMS is unpersuasive and conclusory.

CMS has done little to counter AFPF's arguments about the conclusory nature of the handful of decisions to address the interplay of foreseeable harm and the attorney-client privilege. The agency attempts to flip the burden in this case by arguing AFPF "cites no cases . . . for the notion that self-evident harms are not cognizable[.]"  Def.'s Opp'n at 13.  But it is CMS that bears the "burden . . . to sustain its action" and identify unambiguous authorities that justify its reading of the FOIA.  5 U.S.C. § 552(a)(4)(B).

AFPF has cited one case that is directly on point: *Black Hills Clean Water Alliance v. Forest Service*, No. 20-5034, 2022 WL 2340440 (D.S.D. June 29, 2022).  The *Black Hills* court was at pains to explain "an agency's allegation that . . . [a record], if disclosed, would reveal confidential, privileged material does nothing more than bring that information within the gambit of the attorney-client privilege."  *Id.* at *12.  To rule otherwise would "nullify FOIA's additional requirement that an agency must show it reasonably foresees harm . . . if the record[] [were]

disclosed." *Id.*  But CMS claims *Black Hills* "merits no weight" and is "unpersuasive" because its "analysis overlooks that . . . the foreseeable harm standard is not limited to the attorney-client privilege[.]"  Def.'s Opp'n at 13.  That argument falls short.  This case, like *Black Hills*, involves records protected by the attorney-client privilege.  And this case, like *Black Hills*, pertains to an agency's claim of *ipso facto* satisfaction of the foreseeable-harm standard based on invocation of the attorney-client privilege.  No decision from this jurisdiction is so directly on point nor is there another that engages with arguments such as those raised by AFPF.  *See United States v. United Drill & Tool Corp.*, 81 F. Supp. 171, 172 (D.D.C. 1948) ("While . . . [out-of-district] opinions are not binding . . . they are exceedingly persuasive, particularly as no Court has held the other way.").

With respect to *Ecological Rights Foundation v. Environmental Protection Agency*, No. 19-0980, 2021 WL 535725 (D.D.C. Feb. 13, 2021), *vacated in part*, 541 F. Supp. 3d 34 (D.D.C. 2021), CMS now admits the case contains dicta.  Def.'s Opp'n at 9.  It nevertheless insists AFPF has "fail[ed] to engage with its underlying reasoning."  *Id.*  But as AFPF argued, there is no underlying reasoning with which to engage, or at least nothing that is remarkably distinct from the legal arguments extensively briefed by the parties in this case.

CMS fails to buttress its reading of the other decisions discussed in the parties' briefs.  The agency quibbles with the relevance of a few decisions to the adequacy of its declarations.  *See* Def.'s Opp'n at 11–12.  In the end, the agency basically advocates a type of numbers game: "[T]he fact that so many judges in this District deem these conclusions so apparent as to require little elaboration cuts against, not towards, [AFPF's] position."  Def.'s Opp'n at 10.  Not so.  Setting aside CMS's claim that any of its authorities straightforwardly advocates the notion of "self-evident" harm, the "[d]ecisions of district courts . . . are . . . not binding . . . and are looked to only

for their persuasive effect . . . *no matter how great their number*." *City Stores Co. v. Lerner Shops of D.C., Inc.*, 410 F.2d 1010, 1014 (D.C. Cir. 1969) (emphasis added).

**III.   CMS has not satisfied its burden to justify withholding the record at issue.**

CMS stands by two boilerplate assertions for why disclosure, in this case, is likely to harm an interest protected by the attorney-client privilege.  But the agency continues to disregard other important factors.  *See* OIP Guidance.  It now claims, for the first time, that it is unable to offer any further public justification for its withholding.  The Court should reject these arguments.

*First*, CMS reiterates "the records at issue 'were communicated under an understanding that they would remain confidential,' [and] their disclosure in and of itself would harm interests that the attorney-client privilege protects."  Def.'s Opp'n at 13.  This appeal to "self-evident" harm merely recites part of the technical showing required for invoking privilege.  *See Black Hills Clean Water All.*, 2022 WL 2340440, at *12.  The agency has only offered a generalized explanation of harm, which is inadequate.  *Reporters Comm. for Freedom of the Press v. Customs & Border Prot.*, 567 F. Supp. 3d 97, 124 (D.D.C. 2021) [hereinafter "*Reporters Committee II*"]; *cf. Rosenberg v. Dep't of Def.*, 342 F. Supp. 3d 62, 79 (D.D.C. 2018) ("government must do more than perfunctorily state that disclosure" will result in harm).

In this respect, CMS tries to turn *Reporters Committee II* on its head by claiming it has offered something more substantive than the "conclusory statement" rejected by Judge McFadden.  Def.'s Opp'n at 14.  But the agency misreads *Reporters Committee II*.  The outcome in that case did not, in relevant part, turn on whether records were "communicated under an understanding of confidentiality"; it turned on whether disclosure of the privileged materials (*viz.*, "minor communications") would lead to reasonably foreseen concrete harm.  *Reporters Comm. II*, 567 F.

Supp. 3d at 124 (The agency's "description . . . covers more minor communications, *disclosure of which would have less dire consequences, if any*.") (emphasis added); *see also id.* at 124 n.8.

*Second*, CMS again suggests "disclosure 'would . . . discourage [CMS employees] from seeking legal advice on the scope of [the agency's] authority to take certain actions in the future, because [they] would know that any such communications may become public." Def.'s Opp'n at 14. Yet CMS has not proffered details about any "chill" to ongoing or future agency action. *See Reporters Comm. I*, 3 F.4th at 372; *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106.

In response to AFPF's arguments about the vagueness of CMS's position, the agency claims "it would be difficult if not impossible to describe the withheld materials in greater detail without effectively disclosing their contents[.]" Def.'s Opp'n at 15; *see* 2d Decl. of Hugh Gilmore ¶ 3, ECF No 32-1. But this is neither here nor there. CMS's declarations are not inadequate because they fail to "describe the withheld material[] in greater detail"—indeed, AFPF concedes the record at issue falls within the attorney-client privilege. The inadequacy of CMS's position inheres in its failure to describe how disclosure would cause concrete harm. The missing detail from the testimony of CMS's declarant does not implicate the same concerns about effective waiver of an exemption. And if it did, CMS misunderstands the right course of action. Rather than refuse to provide the Court with further information, CMS should have moved to submit an *ex parte* declaration, as its own authority explains. *See Perioperative Servs. & Logistics, LLC v. Dep't of Veterans Affairs*, No. 21-5223, 2023 WL 192419, at *4 (D.C. Cir. Jan. 17, 2023) (In "FOIA cases . . . an ex parte declaration is the only way to 'decide the dispute without . . . disclosing the very material sought to be kept secret.'").

CMS needed to do more to describe both the record at issue *and* the ostensible harm in disclosure, as anticipated by the OIP Guidance (which the agency otherwise ignores). CMS could

have explained the record is over thirty years old.  Pl.'s Statement of Undisputed Material Facts ¶ 22 [hereinafter "Pl.'s SUMF"], ECF No. 25-2.  It could have addressed whether there is ongoing agency action related to state government disallowance liability.  *See* OIP Guidance; *see Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 107 ("[I]t will not be 'axiomatic' . . . that disclosure will cause the harms that the defendants claim" because the relevant agency action at issue has concluded).  And it might have considered the relevance of the consultations that gave rise to the record or the ways in which it was used (or is still being used, if at all) within the agency.  Pl.'s SUMF ¶ 28.[4]  Such specificity is missing from the evidentiary record.

Assuming CMS's claims of "self-evident" harm are properly presented, the magnitude of harm in disclosure, given the context of the record at issue, is still minimal and hardly "reasonable" to foresee as coming to pass.  *See Reasonable*, Black's Law Dictionary (11th ed. 2019) ("(1) Fair, proper, or moderate under the circumstances; sensible [. . . ] (2) According to reason[.]").

**IV.   The Court should conduct *in camera* review.**

The FOIA authorizes courts to conduct *in camera* inspection.  5 U.S.C. § 552(a)(4)(B).  Such inspection would be appropriate here to evaluate whether disclosure of the September 1990 memorandum and its attachments would harm an interest protected by Exemption 5, particularly given CMS's refusal to provide detail about its foreseeable-harm analysis.

CMS addresses the possibility of *in camera* review in a footnote.  *See Hutchins v. Dist. of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) (a court "need not consider cursory arguments

---

[4] CMS failed to respond properly to one of AFPF's factual allegations.  *Cf.* Pl.'s SUMF ¶ 28 *with* Def.'s Resp. to Pl.'s Statement of Facts ¶ 28, ECF No. 31-2.  "[A] party asserting that a fact . . . is genuinely disputed must support the assertion" with citation to evidence.  Fed. R. Civ. P. 56(c)(1).  But CMS claims it "lacks knowledge or information sufficient to form a belief" about whether it "know[s] the ultimate status of the draft materials sent to OGC for legal review[.]"  Pl.'s SUMF ¶ 28.  That sort of response is disallowed.  The Court may treat the fact as conceded.  Fed. R. Civ. P. 56(e)(2); *see* Standing Order for FOIA Cases ¶ 9(c), ECF No. 12.

made only in a footnote"). It insists such review would "waste judicial resources." Def.'s Opp'n at 16 n.2. But there is only a single seven-page record at issue. *In camera* review is more likely to serve judicial economy. *See Carter v. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987).

*In camera review* has been used previously in this district when considering an agency's claim that the attorney-client privilege applies and the foreseeable-harm standard satisfied, too. *See Am. Civil Liberties Union v. Cent. Intelligence Agency*, No. 18-2784, 2022 WL 306360, at *11 (D.D.C. Feb. 2, 2022); *see also Cayuga Nation v. Dep't of the Interior*, No. 20-2642, 2022 WL 888178, at *9 (D.D.C. Mar. 25, 2022). The Court should therefore consider ordering CMS to submit an unredacted version of the record at issue for the Court's review, if it would prove useful.

## CONCLUSION

For these reasons, AFPF asks the Court to deny CMS's motion for summary judgment and to grant AFPF's cross-motion for summary judgment. AFPF further asks the Court to order CMS to re-process and produce the responsive record at issue in its entirety within the next twenty days.

Dated: February 8, 2023                      Respectfully submitted,

                                             */s/ Ryan P. Mulvey*
                                             Ryan P. Mulvey
                                             D.C. Bar No. 1024362
                                             Eric R. Bolinder
                                             D.C. Bar No. 1028335

                                             AMERICANS FOR PROSPERITY
                                             FOUNDATION
                                             1310 North Courthouse Road, Suite 700
                                             Arlington, VA 22201
                                             Telephone: (571) 444-2841
                                             rmulvey@afphq.org
                                             ebolinder@afphq.org

                                             *Counsel for Plaintiff*