IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICANS FOR PROSPERITY FOUNDATION, | ) ) ) ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) ) | Civil Action No. 21-2021 (CJN) |
| CENTERS FOR MEDICARE AND MEDICAID SERVICES, | ) ) ) ) | |
| *Defendant*. | ) ) ) | |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM BRIEF**

Pursuant to the Court's August 9, 2023 Minute Order, Plaintiff Americans for Prosperity Foundation ("AFPF") respectfully submits this supplemental memorandum brief. As set out in the recent Joint Status Report, *see* ECF No. 36, AFPF will also separately move to exclude the *ex parte* declaration filed by Defendant Centers for Medicare and Medicaid Services ("CMS").

\*     \*     \*

Because CMS has decided to file a secret, *ex parte* declaration, AFPF cannot respond directly to the agency's newest arguments for why disclosure of a thirty-three-year-old record can be reasonably foreseen to lead to concrete harm to interests protected by Exemption 5 and the attorney-client privilege. The reasons why the Court ought to exclude that declaration are set out in AFPF's concurrent motion and need not be repeated here. That said, there are four points the Court should bear in mind when ruling on the parties' cross-motions for summary judgment.

*First*, AFPF recognizes the deeply important role the attorney-client privilege plays in the American legal system. But this is not a case about that privilege as such. This is a case about the Freedom of Information Act ("FOIA"). And the lodestar for the Court's interpretation of the

FOIA—or really any statute—must be the plain meaning of the text and not the government's policy preferences. *See, e.g.*, *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 175 (2009).

Congress weighed the policy implications of the 2016 FOIA Amendments and decided the foreseeable-harm standard should apply, without distinction or differentiation, to all privileges invoked with Exemption 5, including the attorney-client privilege. *See, e.g.*, Hr'g Tr. 36:19–37:11. To accept CMS's notion of "self-evident" harm that flows from mere loss of privilege cannot be justified by the statutory text, as the Court appeared to recognize at the motion hearing. *See id.* 49:15–18. As the Supreme Court has explained, if the FOIA, as written, fails to provide adequate grounds for withholding records when "release would threaten" what an agency considers its "vital interests," the agency needs to plead its case before legislators, not judges. *Milner v. Dep't of the Navy*, 562 U.S. 562, 572 (2011) ("All we hold today is that Congress has not enacted the FOIA exemption the Government desires. We leave to Congress, as is appropriate, the question whether it should do so."). But even if the Court were to find the foreseeable-harm standard somewhat ambiguous and prone to CMS's interpretation, AFPF should still prevail because "the recognized principal purpose of the FOIA requires [courts] to choose that interpretation most favoring disclosure." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 366 (1976).

**Second**, and relatedly, CMS's suggestion that a categorical approach to the attorney-client privilege would not render the foreseeable-harm standard surplusage falls apart under closer scrutiny. *See* Hr'g Tr. 41:24–42:25. CMS argues that, "[e]ven if the harm of disclosure were, *per se*, foreseeable in the attorney/client context," the standard would still "appl[y] across all exemptions[.]" *Id.* 42:5–9. Here, the agency fails to grasp the force of the canon against surplusage. CMS effectively advocates for a judicially created carve-out to the foreseeable-harm standard for attorney-client privileged material. *See, e.g.*, *id.* 20:10–15. If an agency were not

2

required under the foreseeable-harm standard to show anything aside from satisfying the technical requirements for Exemption 5, that would render the foreseeable-harm standard surplusage in the context of the attorney-client privilege precisely because it would be less consequential than the plain meaning of the statutory text. *See Black Hills Clean Water All. v. U.S. Forest Serv.*, No. 20-5034, 2022 WL 2340440, at *12 (D.S.D. June 29, 2022).

**Third**, regardless of whether *in camera* review of the September 1990 memorandum is required for the admission of CMS's *ex parte* declaration, such inspection would independently be useful. Although the Court has questioned whether CMS could even describe the type of "authority" its personnel were "asking about" on the public record, Hr'g Tr. 27:2–10, the agency has already disclosed that information. The draft documents sent for legal review, which are attached to the September 1990 memorandum, concern CMS's ostensible authority to grant Medicaid disallowance-liable states "the opportunity to revise quality control resource errors by using the lesser of the excess resource amount or the paid claims amount." Decl. of Ryan P. Mulvey Ex. 3, ECF No. 25-4. The likelihood that the redacted portions of that sort of record impinge more broadly on questions about CMS's contemporary authority is suspect, especially since the agency previously pled ignorance about how the September 1990 memorandum and draft documents were used within the relevant program office. *See, e.g.*, Mulvey Decl. Ex. 5.

The September 1990 memorandum and draft documents are also unlikely to show how disability disallowances are handled by CMS under its current regulatory scheme. CMS's 2017 Payment Error Rate Measurement ("PERM") and Medicaid Eligibility Quality Control ("MEQC") rule, for example, implements various pieces of legislation, none of which predate 2002. *See, e.g.*, 82 Fed. Reg. 31,158, 31,158 (July 5, 2017) (codified at 42 C.F.R. pts. 431 & 457). Indeed, the Affordable Care Act, which postdates the September 1990 memorandum by roughly twenty years,

dramatically transformed this entire regulatory space. *See id.* And, at least with respect to MEQC, CMS itself suggests the program was overhauled in 1994. *See id.* at 31,159. The agency's representations in the *Federal Register* therefore suggest that, while the September 1990 memorandum may have important historical value, it is doubtful to contain any legal advice with continuing force and effect. Nor does it appear likely to be the sort of document that would be incorporated or reutilized in some fashion as a statement of the agency's broader legal authority.

**Fourth**, and finally, assuming CMS could make a more granular case for what concrete harm it foresees would flow from disclosure, the Court should not accept such claims on their face and thereby defer to the agency's representations. The foreseeable-harm standard only allows an agency to sustain its withholding determination when its prediction of harm is *reasonable*. *See* Pl.'s Reply Br. at 15, ECF No. 33; *see also* Hr'g Tr. at 32:11–18. In this vein, the Court should remain circumspect of any new declaration that, at this point, attempts to provide details that could have already been entered into the record during summary-judgment briefing. And no court should countenance an agency's efforts to reduce its satisfaction of the foreseeable-harm standard to a sort of pleading exercise with declarants "replacing very-general terms with less-general terms." Hr'g Tr. 27:23–28:5. That would allow CMS to turn the foreseeable-harm standard "into a game of 'Mad Libs," where it "fill[s] in the blanks" with just the right magic words. *Nat'l Pub. Radio, Inc. v. Dep't of Homeland Sec.*, No. 20-2468, 2022 WL 4534730, at *8 (D.D.C. Sept. 28, 2022). "If such an exercise were sufficient to satisfy an agency's burden . . . [the] 'reasonably foreseeable' requirement would be so easy to evade as to be essentially dead letter." *Id.*

//

//

## **CONCLUSION**

For these reasons, the Court should deny CMS's motion for summary judgment, grant AFPF's cross-motion, and order CMS to disclose in full the record at issue.

Dated: August 30, 2023

Respectfully submitted,

*/s/ Ryan P. Mulvey*
Ryan P. Mulvey
D.C. Bar No. 1024362
Eric R. Bolinder
D.C. Bar No. 1028335

AMERICANS FOR PROSPERITY FOUNDATION
1310 N. Courthouse Road, Suite 700
Arlington, VA 22201
Telephone: (571) 444-2841
rmulvey@afphq.org
ebolinder@afphq.org

*Counsel for Plaintiff*