IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICANS FOR PROSPERITY FOUNDATION, <br><br> *Plaintiff*, <br><br> v. <br><br> CENTERS FOR MEDICARE AND MEDICAID SERVICES, <br><br> *Defendant*. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. 21-2021 (CJN) |

**PLAINTIFF'S MOTION TO EXCLUDE**
**DEFENDANT'S *EX PARTE* SEALED DECLARATION**

On August 23, 2023, Defendant Centers for Medicare and Medicaid Services ("CMS") filed an *ex parte* and sealed supplemental declaration. *See* ECF No. 37. That filing was and is improper—both procedurally and substantively. CMS's secret declaration should be excluded from the evidentiary record. Even if the declaration is not excluded, the Court should unseal the declaration, in whole or in part, and afford Plaintiff Americans for Prosperity Foundation ("AFPF") another opportunity to respond to the agency's arguments for why it reasonably foresees harm in disclosure of a record created thirty-three years ago. As required by Local Civil Rule 7(m), AFPF conferred with opposing counsel, who confirmed CMS opposes this motion and the relief sought.

**FACTUAL AND PROCEDURAL BACKGROUND**

The sole record at issue in this Freedom of Information Act ("FOIA") lawsuit is a September 1990 memorandum (with attachments) that reflects attorney review and clearance of draft documents CMS intended to send to certain state governments concerning Medicaid disallowance liabilities for Fiscal Year 1982. *See* Pl.'s Statement of Undisputed Material Facts

¶¶ 6–24 [hereinafter "Pl.'s SUMF"], ECF No. 25-2.  CMS is withholding the thirty-three-year-old record, in part, under Exemption 5 and the attorney-client privilege.  The parties agree the technical requirements for use of the privilege are met.  Pl.'s SUMF ¶¶ 27 & 29.  Their dispute centers instead on whether CMS has satisfied its independent and meaningful burden under the FOIA's foreseeable-harm standard to identify a concrete harm that would—not could—flow from disclosure.  *See* Pl.'s SUMF ¶ 30; *see generally* 5 U.S.C. § 552(a)(8)(A)(i)(I).

At the August 9, 2023 motion hearing, the Court appeared skeptical CMS had satisfied its foreseeable-harm burden with evidence submitted during summary-judgment briefing.  *See* Hr'g Tr. 5:13–15 ("Why does the disclosure of a document created in 1990, cause harm 33 years later?"); *id.* 8:25–9:3 ("[I]s there any argument that the government is making today about this document that it could not make about attorney-client privilege[d] documents generally?"); *id.* 48:4–6 ("[J]ust based on the record, as it exists now, [it] might be insufficient for me to grant the government's summary judgment [motion]."). The Court opined CMS "might have a slightly more specific articulation of the harm . . . that it is unable to state on the public record." *Id.* 11:22–25 ("Might have.  I didn't say does have.").  After the Court suggested the possibility of an *ex parte* declaration, AFPF lodged its objection. *Id.* 55:16–24.

## LEGAL STANDARD

An agency may only file an *ex parte* declaration after establishing the need to do so under the factors set out in *Arieff v. Department of the Navy*, 712 F.2d 1462 (D.C. Cir. 1983).  The agency must show that *ex parte* review is "'absolutely necessary'" because "(1) the validity of [its] . . . assertion of [an] exemption cannot be evaluated without information beyond that contained in the public affidavits and in the records themselves, and (2) public disclosure of that information would compromise the secrecy asserted." *Id.* at 1471.  A court, for its part, should only grant an agency

2

leave to file an *ex parte* declaration after (1) reviewing all "'public affidavits'" and "'the records themselves'" (*i.e.*, through *in camera* review); and (2) "mak[ing] its reasons for [non-public review] clear" on the record. *Perioperative Servs. & Logistics, LLC v. Dep't of Veterans Affairs*, 57 F.4th 1061, 1067 (D.C. Cir. 2023) (noting the district court "failed to follow that procedure"). Even if a court accepts an *ex parte* declaration, it must ensure nothing can be unsealed. *Lykins v. Dep't of Justice*, 725 F.2d 1455, 1465 (D.C. Cir. 1983). The admission of *ex parte* evidence is at the district court's discretion. *E.g.*, *Labow v. Dep't of Justice*, 831 F.3d 523, 544 (D.C. Cir. 2016).

## ARGUMENT

### I.  *Ex parte* declarations are highly disfavored, even in FOIA cases.

> It is a hallmark of our adversary system that we safeguard party access to the evidence tendered in support of a requested court judgment. The openness of judicial proceedings serves to preserve both the appearance and the reality of fairness in the adjudications of United States courts. It is therefore the firmly held main rule that a court may not dispose of the merits of a case on the basis of *ex parte*, *in camera* submissions.

*Abourezk v. Reagan*, 785 F.2d 1043, 1060–61 (D.C. Cir. 1986).

FOIA lawsuits are unique. Discovery is rare. There is no administrative record lodged at the outset of a case. And requesters often lack the facts needed to test an agency's arguments for withholding records. Indeed, requesters "face[] an 'asymmetrical distribution of knowledge'" precisely because "the agency alone possesses, reviews, discloses, and withholds the subject matter of the request." *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006) (citation omitted). An agency has "a nearly impregnable defensive position save for the fact that the statute places the burden 'on the agency to sustain its action.'" *Id.* (citation omitted). That burden must ordinarily be met on the public record with a *Vaughn* index and supporting declarations that provide "the court and the challenging party a measure of access without exposing the withheld information." *Id.*; *see Lykins*, 725 F.2d at 1463 ("detailed indexes and justifications"

3

are needed to "enable[] the adversary system to operate by giving a requester as much information as possible"). *In camera* review of *ex parte* submissions—especially, *ex parte* declarations or affidavits—is therefore highly disfavored. *Ray v. Turner*, 587 F.2d 1187, 1211 n.43 (D.C. Cir. 1978) ("In camera affidavits, unlike in camera inspection, provide no real check on the accuracy of an agency's representations."). Such submissions are reserved for the most extraordinary cases. *Id.*; *cf. United States v. Libby*, 429 F. Supp. 2d 18, 21 (D.D.C. 2006) ("courts . . . permit such [secret] proceedings only in the rarest of circumstances").

This case does not involve "unusually and especially sensitive circumstances." *Ray*, 587 F.2d at 1211 n.43. It is not a national security case. *Lykins*, 725 F.2d at 1465 ("[W]e have expressed reservations about such use [of "*in camera* affidavits"] in cases which do not involve national security."). It is not about CMS's refusal to acknowledge whether responsive records exist. *See Phillippi v. Cent. Intelligence Agency*, 546 F.2d 1009, 1013 (D.C. Cir. 1976) (admitting *ex parte* evidence in support of a *Glomar* response); *see also Montgomery v. Internal Revenue Serv.*, 40 F.4th 702, 711 (D.C. Cir. 2022) (same). And it does not even concern the technical use of an exemption—the very subject-matter contemplated by *Arieff* and later cases. Simply put, CMS has not explained and cannot "adequately explain[] why [its] secrecy concerns . . . [are] greater [here] than in most FOIA cases." *Yeager v. Drug Enf't Admin.*, 678 F.2d 315, 324 (D.C. Cir. 1982).

**II.    CMS has not shown why an *ex parte* declaration is necessary.**

Setting aside CMS's failure to seek leave to file an *ex parte* declaration, *see, e.g.*, *Shapiro v. Dep't of Justice*, 239 F. Supp. 3d 100, 110 (D.D.C. 2017), there is little that can be gleaned from the agency's filings to date that would satisfy the *Arieff* standard for the admission of secret testimony. CMS has yet to explain why a more granular description of any reasonably foreseen harm "would of necessity" divulge the contents of the September 1990 memorandum and its

4

attachments. *Arieff*, 712 F.2d at 1471. The agency's previous declaration, for example, only suggested "it would be difficult if not impossible *to describe the withheld materials in greater detail without effectively disclosing their contents*[.]" [Corrected] Suppl. Decl. of Hugh Gilmore ¶ 3, ECF No. 32-1 (emphasis added). But the Court does not need a more detailed description of the substantive contents of the "withheld materials." *See, e.g.*, Hr'g Tr. 51:7–21 (hypothesizing that another declaration might address harms independent of the contents of the September 1990 memorandum). It remains unclear why CMS cannot provide more thorough insight into its foreseeable-harm analysis on the public record.

CMS's notice of lodging hardly clarifies the matter. If anything, that notice reinforces AFPF's objections. CMS boldly asserts it wants to keep "additional contextual information beyond the four corners" of the September 1990 memorandum off the docket.[1] [Def.'s] Not. of Lodging at 2, ECF No. 38. But that is exactly the type of information that should <u>not</u> be admitted *ex parte*. *See Lykins*, 725 F.2d at 1463; *Arieff*, 712 F.2d at 1470; Hr'g Tr. 28:11–17. An *ex parte* filing is supposed to relieve an agency of "disclos[ing] the very records or information it seeks to protect." *Shapiro*, 239 F. Supp. 3d at 111. CMS cannot employ a secret filing to introduce *other types* of evidence that neither address the validity of its privilege claim—which is not contested— nor reveal the contents of the September 1990 memorandum and attached draft documents.[2]

In the normal course of litigation, if a party wishes to introduce extrinsic evidence—and, here, such evidence arguably includes testimony about how the September 1990 memorandum, quite apart from its actual substance, was or is still being used within the agency—it must do so

---

[1] Of course, CMS disclaimed knowing anything further about the record at issue prior to summary-judgment briefing. *See* Pl.'s SUMF ¶ 28; *see also* Mulvey Decl. ¶ 30; Mulvey Decl. Ex. 5.

[2] The D.C. Circuit has suggested that a requester may be entitled to "seek appropriate discovery" when an agency claims it cannot put further detail into public filings. *Phillippi*, 546 F.2d at 1013.

on the public record. A party cannot simultaneously claim the same information is "privileged." *See Abourezk*, 785 F.2d at 1061 ("[I]f the court's finding is that the privilege does apply, then the court may not rely upon the information in reaching its judgment."); *cf. In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982) ("Courts need not allow a claim of [attorney-client] privilege when the party claiming the privilege seeks to use it in a way that is not consistent with the purposes of the privilege."). To permit "selective disclosure of confidential materials" as grounds for granting a dispositive motion would effectively sanction a party's use of "privileges both as a sword and as a shield." *Sec. & Exch. Comm'n v. Lavin*, 111 F.3d 921, 933 (D.C. Cir. 1997).

Finally, except perhaps in the most unusual cases, extending the narrow exception in *Arieff* to admit *ex parte* testimony about an agency's satisfaction of the foreseeable-harm standard would be like opening Pandora's Box. It could set a troubling precedent for agencies to justify their foreseeable-harm determinations, as a rule, with *ex parte* declarations lest they risk disclosure of supposedly "privileged" material that is not even responsive to the FOIA request at issue. *See Ray*, 587 F.2d at 1211 n.43; *cf. Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973). Controlling case law, like mighty Zeus, has warned against unleashing such misery on the FOIA world by hewing closely to the *Arieff* rule. *See, e.g.*, *Lykins*, 725 F.2d at 1465; *see also Abourezk*, 785 F.2d at 1061 ("Even in administering [the FOIA] . . . we have been vigilant to confine to a narrow path submissions not in accord with our general mode of open proceedings.").

### III. Granting CMS leave to file an *ex parte* declaration requires a public explanation for why such secret evidence needs to be admitted.

Although CMS will likely argue the Court's comments during the recent motion hearing reflected an expectation that CMS may proceed *ex parte*, this is still procedurally improper. "[B]efore accepting . . . [an *ex parte*] filing, the Court 'must both make its reasons for doing so clear and make as much as possible of the *in camera* submission available to the opposing party'

6

. . . and to the public[.]" *Shapiro*, 239 F. Supp. 3d at 111; *see Armstrong v. Exec. Office of the President*, 97 F.3d 575, 580 (D.C. Cir. 1996) (same).  The court should also carry-out *in camera* review of the record at issue before entertaining any *ex parte* declaration.  *See Perioperative Servs. & Logistics, LLC*, 57 F.4th at 1067; *Ray*, 587 F.2d at 1211 n.43.  "In the absence of these explanations, the use of the in camera affidavit arguably [is] error." *Armstrong*, 97 F.3d at 581; *see generally Montgomery*, 40 F.4th at 713–14 (same).

Here, "there was no finding (and [there is] no basis in the record for a finding) that the government ha[s] a crucial interest in secrecy . . . that outweigh[s] the importance of an effectively functioning adversary system[.]" *Lykins*, 725 F.2d at 1466.  Considering AFPF's objections, the Court's discussion of a possible *ex parte* filing at the hearing cannot fairly substitute for CMS making the necessary showing under *Arieff* prior to filing and the Court ruling on that showing. The Court also has yet to conduct *in camera* review of the September 1990 memorandum.

**IV.   In the alternative, the Court should unseal portions of CMS's secret declaration.**

If the Court does not exclude CMS's *ex parte* declaration, it should still unseal those portions of the declaration that do not warrant protection.  As addressed above, a court must ensure that nothing in a non-public filing can be shown to an opposing party.[3]  *Perioperative Servs. & Logistics, LLC*, 57 F.4th at 1067; *Lykins*, 725 F.2d at 1465; *Ray*, 587 F.2d at 1211 n.43 ("As a check against agency abuse . . . a court . . . should make available to all parties any portions of the [i]n camera affidavit that it determines, after full consideration of the agency's arguments, do not warrant a protective order."); *see Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 16 n.10 (D.D.C. 2009); *see also Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1386 (D.C. Cir. 1979) ("If the material in the affidavit appears nonsensitive, the court can order it released[.]").  As it stands,

---

[3] CMS even withheld the name of its declarant!

the Court has not undertaken any sort of review to ensure that CMS's *ex parte* declaration, in its entirety, warrants being kept off the public record.

## CONCLUSION

CMS's *ex parte* declaration should be excluded and stricken from the evidentiary record. Alternatively, the Court should order *in camera* review of the September 1990 memorandum and attachments, review CMS's *ex parte* declaration, unseal those portions that can be shared with AFPF on the public docket, and grant AFPF leave to respond further to CMS's arguments.

Dated: August 30, 2023

Respectfully submitted,

<u>*/s/ Ryan P. Mulvey*</u>
Ryan P. Mulvey
D.C. Bar No. 1024362
Eric R. Bolinder
D.C. Bar No. 1028335

AMERICANS FOR PROSPERITY FOUNDATION
1310 N. Courthouse Road, Suite 700
Arlington, VA 22201
Telephone: (571) 444-2841
rmulvey@afphq.org
ebolinder@afphq.org

*Counsel for Plaintiff*