UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICANS FOR PROSPERITY FOUNDATION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CENTERS FOR MEDICARE AND MEDICAID SERVICES,<br><br>　　　　Defendant. | Civil Action No. 21-2021 (CJN) |

**DEFENDANT'S OPPOSITION TO MOTION TO
EXCLUDE SEALED, *EX PARTE* DECLARATION**

Defendant Centers for Medicare and Medicaid Services ("CMS"), by and through the undersigned counsel, respectfully opposes Plaintiff American for Prosperity Foundation's motion to exclude CMS's sealed, *ex parte* declaration, ECF No. 40. A proposed order is attached.

**ARGUMENT**

CMS has shown that a sealed, *ex parte* declaration is necessary to establish that disclosing the withheld materials foreseeably would harm interests that the attorney-client privilege protects. Plaintiff does not meaningfully dispute that CMS has already made this showing through the contents of the sealed, *ex parte* declaration itself. In essence, Plaintiff's argument is that it personally remains unaware of the need for a sealed, *ex parte* declaration because it has not seen that declaration, and thus has had no opportunity to evaluate the character or quality of its contents. That is immaterial—what matters simply is whether CMS has demonstrated to this Court, not to Plaintiff, the need for a sealed, *ex parte* declaration. Because CMS has done so, this Court should deny Plaintiff's motion.

Under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, "the receipt of *in camera* affidavits is[,] when necessary, part of a trial judge's procedural arsenal." *Arieff v. Dep't of Navy*, 712 F.2d 1462, 1469 (D.C. Cir. 1983) (internal quotation marks omitted). After all, "the officials of our Executive Branch itself[ ] will hardly have the assurance which it is the purpose of the FOIA exemptions to provide if hostile counsel and experts can ordinarily obtain access to assertedly exempt information." *Id.* at 1470. A sealed, *ex parte* declaration thus is proper if "(1) the validity of the government's assertion of exemption cannot be evaluated without information beyond that contained in the public affidavits and in the records themselves, and (2) public disclosure of that information would compromise the secrecy asserted." *Perioperative Servs. & Logistics, LLC v. Dep't of Vets. Affs.*, 57 F.4th 1061, 1065 (D.C. Cir. 2023) (internal quotation marks omitted).[1]

As the declaration itself makes clear, both these conditions obtain here. The declaration's contents demonstrate that the reasons why disclosing the withheld records foreseeably would harm interests that the attorney-client privilege protects are inextricably intertwined with the contents of the withheld materials themselves, such that CMS cannot make the declaration's reasoning public without also effectively disclosing the withheld materials' contents. *See* Sealed, *Ex Parte* Decl. ¶¶ 3-12, ECF No. 37. Should this Court conclude that the materials that CMS has filed on the public docket do not suffice to demonstrate that it has satisfied the foreseeable harm requirement, the sealed, *ex parte* declaration is necessary to make such a demonstration without "disclosing the very material sought to be kept secret." *Arieff*, 712 F.2d at 1471. While Plaintiff offers several of counterarguments, none of them are unpersuasive.

---

[1] This test, not "the six-factor test first articulated in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980)," governs a district court's decision on whether to review an *ex parte*, *in camera* declaration in a FOIA case. *Perioperative Servs.*, 57 F.4th at 1066.

*First*, Plaintiff's assertion that CMS "fail[ed] to seek leave to file an *ex parte* declaration," Pl.'s Mot. at 4, is inaccurate at best. During the August 9, 2023 motions hearing, this Court allowed CMS to submit (1) an additional public declaration, (2) "an ex parte, in camera, declaration that would describe with more granularity the document and harm," or (3) "the document itself," *ex parte* and under seal, for in camera inspection. Ex. A, Hr'g Tr. at 48:8-18. The Court then said that it would "give the government the opportunity to confer, and to decide whether it would like to submit one, two or three of those things to me to, to basically supplement the record." *Id.* at 48:22-25; *see also id.* at 49:25-50:3 ("I'd like to give the government the opportunity to submit something of its choosing on topics one, two or three—issues or things, one, two or three."); 52:20-21 ("the government shall submit whatever it wishes to submit along these lines"). Based on this exchange, CMS understands the Court to have granted it leave to file a sealed, *ex parte* declaration.[2] Plaintiff appears to recognize as much as it does not dwell on this cursory assertion for longer than half a sentence or flesh it out with any analysis. *See Trump v. Thompson*, 20 F.4th 10, 46 (D.C. Cir. 2021) ("'mentioning an argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones is tantamount to failing to raise it'").

*Second*, Plaintiff's argument that "the agency's filings to date" do not demonstrate the need for a sealed, *ex parte* declaration, Pl.'s Mot. at 4, overlooks the declaration itself, which amply demonstrates the need for its own filing. In a similar vein, Plaintiff asserts that "[i]t remains unclear why CMS cannot provide more thorough insight into its foreseeable-harm analysis on the public record," *id.* at 5, but the fact that Plaintiff is not itself privy to the reasons why a sealed, *ex parte* declaration is necessary is immaterial to whether CMS has demonstrated to this Court the need for

---

[2]  If CMS misunderstood the Court in this regard, CMS respectfully requests leave to file the declaration in this manner *nunc pro tunc*.

3

such material. Notably, Plaintiff does not dispute that the sealed, *ex parte* declaration's own contents justify its filings. That is understandable, as Plaintiff has not seen the declaration itself. But while CMS "understand[s] [Plaintiff's] frustration" with the idea of this Court "rel[ying] on a declaration that [it] cannot see, let alone rebut . . . that dilemma is inherent in those FOIA cases where, as here, an *ex parte* declaration is the only way to decide the dispute without disclosing the very material sought to be kept secret." *Perioperative Servs.*, 57 F.4th at 1067 (cleaned up); *cf. In re Grand Jury Subpoena No. 7409*, G.J. No. 18-0041 (BAH), 2018 WL 8334867, at *8 (D.D.C. Sept. 19, 2018) (a party's "difficult position in not being privy to the information reviewed and relied upon in resolving the pending motion" is immaterial, as "[t]he law is well-settled . . . that courts may use in camera, ex parte proceedings to determine the propriety of" action (cleaned up)).

Plaintiff's assertion that a sealed, *ex parte* declaration is unusual "[i]n the normal course of litigation," Pl.'s Mot. at 5, is neither here nor there, as FOIA does not present a normal litigation circumstance. "FOIA cases . . . present an unusual problem that demands an unusual solution: One party knows the contents of the withheld records while the other does not; and the courts have been charged with the responsibility of deciding the dispute without altering that unequal condition, since that would involve disclosing the very material sought to be kept secret." *Arieff*, 712 F.2d at 1471. "The task can often not be performed by proceeding in the traditional fashion, so that what is a rarity among our cases generally must become a commonplace in this unique field." *Id.*

*Third*, precedent squarely forecloses Plaintiff's argument that even if CMS may submit the withheld records under seal and *ex parte*, it may not submit "additional contextual information beyond the [records'] four corners." Pl.'s Mot. at 5. An agency may submit under seal and *ex parte* a declaration that explains "not [only] the contents of agency records but [also] factual assertions and expert opinion relating to those contents." *Arieff*, 712 F.2d at 1469 (cleaned up). When such

4

information is both necessary to explain why a withholding is proper and inextricably intertwined with the withheld materials, as is so here, the declaration's contents are themselves "information assertedly exempt from production under the FOIA." *Id.* at 1471. Indeed, Plaintiff acknowledges that "[a]n *ex parte* filing is supposed to relieve an agency of disclosing the very . . . information it seeks to protect." Pl.'s Mot. at 5 (cleaned up). In its notice of lodging that accompanied the sealed, *ex parte* declaration, CMS explained that "understanding the harm that [the records'] disclosure would cause requires additional contextual information beyond the four corners of these materials themselves." Notice of Lodging at 2, ECF No. 38. That is because, as the declaration itself makes clear, the declaration's explanation of why producing the withheld records foreseeably would harm interests that the attorney-client privilege protects is inextricably intertwined with the withheld information itself. To reveal the declaration's contents thus would reveal the withheld information. To the extent that Plaintiff intends to suggest that CMS may submit only a declaration that simply explains what the withheld records are, without furnishing any additional "factual assertions" or "opinion relating to those contents," *Arieff*, 712 F.2d at 1469, the D.C. Circuit has held otherwise.

Indeed, a declaration that merely states what the withheld records are, without providing contextual information that sheds light on why their withholding is proper, would be of little value to a court. As this Court recognized, submitting the withheld records alone, without an explanation of why their release foreseeably would harm interests that the attorney-client privilege protects, "is probably not very helpful," because the Court "would be gleaning" only what it can "from the document," without knowing "the government's view of the harm." Hr'g Tr. at 51:3-6. Insight into "the nature of the harm," this Court explained, "can only really come from a declaration." *Id.* at 51:21, 51:24-25. While it may "be interesting . . . to see the document" itself, "the problem with that is" that this Court "wouldn't have the Government saying, in a document, signed . . . under

5

penalty of perjury, [t]hese are the harms that we reasonably foresee from production of this particular document." *Id.* at 52:9-13. To assist this Court in understanding why releasing the withheld materials foreseeably would harm interests that the attorney-client privilege protects, it is necessary to venture beyond the records' four corners to put their contents in context.

*Fourth*, Plaintiff's argument that "extending" *Arieff* to the foreseeable harm context "could set a troubling precedent,"[3] Pl.'s Mot. at 6, fails because applying *Arieff* here requires no extension, much less a troubling one. *Arieff*, 712 F.2d at 1469, 1471 (cleaned up), applies to filing of a sealed, *ex parte* declaration "disclosing information assertedly exempt from production under the FOIA," even one that contains "not [only] the contents of agency records but [also] factual assertions and expert opinion relating to those contents." Nothing about this formulation excludes declarations that explain why releasing withheld records foreseeably would harm an interest that an exemption protects, rather than only why such material falls within an exemption's scope in the first place. Nor is there any reason to draw such an arbitrary distinction, given that an agency generally must demonstrate both that a record is exempt and that it has satisfied the foreseeable harm requirement to withhold that record. *See* 5 U.S.C. § 552(a)(8)(a)(i). *Arieff* did not specifically discuss the foreseeable harm requirement for a good reason—it could not have done so, as Congress enacted the foreseeable harm requirement into law thirty-three years later. *See* FOIA Improvement Act of 2016, Pub. L. No. 114-185, § 2, 130 Stat. 538, 539. Applying *Arieff* here entails nothing more than applying existing precedent to a new situation in a way that gives effect to the principles that animate it, a familiar and uncontroversial aspect of common-law adjudication. *See Williams v.*

---

[3] Plaintiff's assertion that applying *Arieff* here merely "could" have negative consequences, not that it foreseeably "would" have such consequences, Pl.'s Mot. at 6, is more than a touch ironic under the circumstances. *See Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369-70 (D.C. Cir. 2021) (foreseeable harm standard requires explanation of "how disclosure 'would'— not 'could'—adversely impair internal deliberations").

*Taylor*, 529 U.S. 362, 385 (2000) ("in the common law, rules of law often develop incrementally as earlier decisions are applied to new factual situations"). And while Plaintiff appeals to "mighty Zeus," Pl.'s Mot. at 6, CMS instead relies on the earthlier authority of D.C. Circuit precedent.

*Fifth*, Plaintiff's claim that "[t]his case does not involve 'unusual and especially sensitive circumstances,' *Ray v. Turner*, 587 F.2d 1187, 1211 n.43 (D.C. Cir. 1978)," is irrelevant. Sealed, *ex parte* declarations are proper where an agency cannot show that its withholdings are proper on the public record without revealing the very information withheld. *See Arieff*, 712 F.2d at 1471. Plaintiff's reliance on *Ray*, which predates *Arieff*, is misplaced, as *Ray*'s guidance on this matter essentially mirrors the *Arieff* standard. *See Ray*, 587 F.2d at 1211 n.43 ("As a check against agency abuse of the In camera affidavit procedure, a court should require the agency to explain why the information in its in camera submission should not have been included in a public affidavit, and should make available to all parties any portions of the In camera affidavits that it determines, after full consideration of the agency's arguments, do not warrant a protective order."). To whatever extent *Ray*'s meaning may once have been unclear, *Arieff* has since clarified it. And notably, *Arieff*, 712 F.2d at 1469, recognized that sealed, *ex parte* declarations may be proper in the "deliberative process privilege" context. It follows that such declarations may be proper in the context of the attorney-client privilege, which serves interests weightier than those that the deliberative process privilege protects. *See* Def.'s Mem. at 5-8, ECF No. 24-1; Def.'s Reply at 1-4, ECF No. 29.

Finally, Plaintiff argues that this Court should, at a minimum, explain the need for a sealed, *ex parte* declaration or review the withheld records in camera. Pl.'s Mot. at 6-7. CMS agrees that it would be appropriate for this Court to explain on the record, to the extent possible without revealing the withheld or otherwise privileged information, its reasons for any conclusion that the sealed, *ex parte* declaration is necessary to demonstrate that releasing the withheld records

foreseeably would harm interests that the attorney-client privilege protects. And although CMS believes in camera review would not be "a wise use of increasingly burdened judicial resources," *Mead Data Ctr., Inc. v. Dep't of Air Force*, 566 F.2d 242, 262 (D.C. Cir. 1977), especially in light of the declaration, it will promptly submit the records for in camera inspection if so ordered.[4]

**CONCLUSION**

This Court should deny Plaintiff's motion to exclude the *ex parte*, sealed declaration.

Dated: September 13, 2023

Respectfully submitted,

MATTHEW M. GRAVES
D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: */s/ Bradley G. Silverman*
    BRADLEY G. SILVERMAN
    D.C. Bar #1531664
    Assistant United States Attorney
    601 D Street NW
    Washington, DC 20530
    (202) 252-2575
    bradley.silverman@usdoj.gov

*Attorneys for the United States of America*

---

[4] Plaintiff also has filed a "supplemental memorandum brief," ECF No. 39, but because it mostly reiterates points that Plaintiff has already made in its moving papers and during the motions hearing, CMS declines to address them yet again. CMS notes only the incoherence of Plaintiff's claim that to recognize the self-evident harm of disclosing attorney-client communications "would render the foreseeable-harm standard surplusage in the context of the attorney-client privilege." Pl.'s Supp. Mem. at 3, ECF No. 39. Statutory language that would have independent force in some context by definition is not surplusage, regardless of whether or not it has force in other contexts.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICANS FOR PROSPERITY FOUNDATION,<br><br>  Plaintiff,<br><br>  v.<br><br>CENTERS FOR MEDICARE AND MEDICAID SERVICES,<br><br>  Defendant. | Civil Action No. 21-2021 (CJN) |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Plaintiff's motion to exclude sealed, *ex parte* declaration, the various memoranda submitted in support thereof and opposition thereto, and the entire record herein, it is hereby

ORDERED that Plaintiff's motion is DENIED.

SO ORDERED.

_____  _____
Dated                                                            CARL J. NICHOLS
                                                                 United States District Court Judge