IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICANS FOR PROSPERITY FOUNDATION, | ) ) ) ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) ) | Civil Action No. 21-2021 (CJN) |
| CENTERS FOR MEDICARE AND MEDICAID SERVICES, | ) ) ) ) | |
| *Defendant*. | ) ) ) | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO EXCLUDE DEFENDANT'S *EX PARTE* SEALED DECLARATION**

Defendant Centers for Medicare and Medicaid Services ("CMS") attempts to justify its *ex parte* and sealed declaration in large part by pointing to arguments it has not made—and refuses to make—on the public record. *See, e.g.*, Def.'s Opp'n at 1 ("CMS has already made this showing through the contents of the sealed, *ex parte* declaration itself."), ECF No. 41; *see also id.* at 2 (citing Sealed, *Ex Parte* Decl. ¶¶ 3–12, ECF No. 37). This line of argument reveals the agency's misunderstanding of the process for, and appropriateness of, submitting *ex parte* declarations in Freedom of Information Act ("FOIA") cases.

As a rule, unless filing is authorized by statute, an *ex parte* declaration—like any other document that a party wishes to keep off the record—must be accompanied by a motion that sets out why sealing is needed. *See* Local Civil Rule 5.1(h)(1) ("Failure to file a motion to seal will result in the document being placed on the public record."). In FOIA cases, this motion must include a public—that is, a non-*ex parte*—argument for why *ex parte* review of the declaration is "'absolutely necessary'" because "(1) the validity of the government's assertion of [an] exemption

cannot be evaluated without information beyond that contained in the public affidavits and in the records themselves, and (2) public disclosure of that information would compromise the secrecy asserted." *Arieff v. Dep't of the Navy*, 712 F.2d 1462, 1471 (D.C. Cir. 1983). CMS never made this public argument in its previous briefs or the Second Gilmore Declaration, *see* ECF No. 32-1[1]; it did not make this public argument during the recent oral hearing; and it did not properly present this public argument in its "Notice of Lodging," which merely pointed to the non-public contents of the new *ex parte* declaration (from an unidentified individual) as justification for its submission. *See* Def.'s Not. of Lodging at 2, ECF No. 38.

      The requirement that a party file a motion for leave complements the necessity of a judicial order on the appropriateness of receiving an *ex parte* declaration. "[B]efore accepting . . . [an *ex parte*] filing, the Court 'must both make its reasons for doing so clear and make as much as possible of the *in camera* submission available to the opposing party' . . . and to the public[.]" *Shapiro v. Dep't of Justice*, 239 F. Supp. 3d 100, 111 (D.D.C. 2017); *see Armstrong v. Exec. Office of the President*, 97 F.3d 575, 580–81 (D.C. Cir. 1996) (same). Unsurprisingly, CMS now concedes— as it must—that an order is required before the court may review an *ex parte* declaration. Def.'s Opp'n at 7 ("CMS agrees that it would be appropriate for this Court to explain on the record . . . its reasons for any conclusion that the sealed, *ex parte* declaration is necessary[.]").

      Even as it makes this concession, CMS fails to address binding casealaw that directs the Court to conduct *in camera* review of the record at issue before accepting an *ex parte* declaration, and to unseal portions of an *ex parte* declaration that do not need to be kept non-public.

---

[1] As Plaintiff Americans for Prosperity Foundation ("AFPF") argued months ago, "[t]he inadequacy of CMS's position inheres in its failure to describe how disclosure would cause concrete harm. . . . Rather than refuse to provide the Court with further information, CMS should have moved to submit an *ex parte* declaration[.]" Pl.'s Reply Br. at 14, ECF No. 33.

2

*Perioperative Servs. & Logistics, LLC v. Dep't of Veterans Affairs*, 57 F.4th 1061, 1067 (D.C. Cir. 2023); *Lykins v. Dep't of Justice*, 725 F.2d 1455, 1465 (D.C. Cir. 1984); *Ray v. Turner*, 587 F.2d 1187, 1211 n.43 (D.C. Cir. 1978). These matters also should be treated as conceded in AFPF's favor. *Cf. Sykes v. Dudas*, 573 F. Supp. 2d 191, 202 (D.C. Cir. 2008).

CMS's remaining arguments are unpersuasive or inapt.

*First*, CMS claims it "underst[ood] the Court to have granted it leave to file a sealed, *ex parte* declaration." Def.'s Opp'n at 3. But the agency has not identified such explicit authorization, notwithstanding its out-of-context citations to the August 9, 2023 hearing transcript. The Court's directions were, at most, advisory. *See* Hr'g Tr. 48:14–16 ("The second thing we discussed—and *notionally* I mean—is *perhaps* an ex parte, in camera, declaration[.]") (emphasis added). Indeed, after AFPF raised an objection to the prospect of an *ex parte* declaration, the Court acknowledged that AFPF's position was "fair" and redirected CMS to "submit . . . a supplemental memorandum of no more than five pages that describes what it's doing." *Id.* 56:7, 18–20. That filing should have been a motion that included additional information about CMS's foreseeable-harm analysis and a detailed argument for why an *ex parte* declaration was necessary under *Arieff*. *See id.* 56:21–25; *see also* Pl's Mot. to Exclude at 7 ("[T]he Court's discussion of a possible *ex parte* filing at the hearing cannot fairly substitute for CMS making the necessary showing under *Arieff* prior to filing and the Court ruling on that showing."), ECF No. 40.

At the same time, regardless of whether the Court granted CMS leave during the hearing, what really matters is whether such leave was procedurally and substantively proper. On this front CMS again concedes that AFPF has the stronger argument. Def.'s Opp'n at 7 ("CMS agrees that it would be appropriate for this Court to explain on the record . . . its reasons for any conclusion that the sealed, *ex parte* declaration is necessary[.]"). Considering this concession, CMS's attempt

3

to recast its opposition as a motion *nunc pro tunc* is understandable. *Id.* at 3 n.2. Unfortunately, CMS has not argued why there is good cause for such a motion, which should have been filed four weeks ago, and it has not set forth any facts demonstrating excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B); *see also Inst. for Policy Studies v. Cent. Intelligence Agency*, 246 F.R.D. 380, 383 (D.D.C. 2007); *cf. Smith v. Dist. of Columbia*, 430 F.3d 450, 456–57 (D.C. Cir. 2005) (finding abuse of discretion in receiving an untimely filing in the absence of the specific motion required by Rule 6(b)(1)(B)). CMS also makes this request in a single-sentence footnote, which is hardly adequate. *See Hutchins v. Dist. of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) (a court "need not consider cursory arguments made only in a footnote").

*Second*, CMS insists it has already shown why an *ex parte* declaration is necessary. *See* Def.'s Opp'n at 3–4. As addressed above, *see supra* at pp. 1–2, that position cannot stand. The agency's grounds for proceeding *ex parte* are set forth in the sealed declaration itself. That hardly qualifies as the sort of public argument required by *Arieff* and its progeny, as well as the local rules and basic, long-standing principles governing adversarial legal proceedings.

*Third*, CMS suggests it may use its *ex parte* declaration to provide "additional contextual information beyond the four corners" of the September 1990 memorandum. Def.'s Not. of Lodging at 2; *see* Def.'s Opp'n at 4–5. Not so. Insofar as *Arieff* referred to "factual assertions and expert opinion," those "assertions" and "opinion" were provided *ex parte* because they necessarily and quite literally revealed the information the agency sought to withhold. 712 F.2d at 1471 ("Evaluation of the claim that the name of the drug would disclose the disease for which it was prescribed would be impossible without further explanation; and that explanation would of necessity disclose the name of the drug itself."). Such an intimate connection between exempt information and testimony about its withholding makes perfect sense in the context of an

Exemption 6 claim, such as the one considered by the *Arieff* court. It makes much less sense here, where the agency must explain the foreseeable harm in disclosure, which is distinct from any explanation for why a particular exemption or privilege applies.

CMS does argue that its newest declaration "inextricably intertwine[s]" testimony about foreseeable harm with the contents of the September 1990 memorandum. *See* Def.'s Opp'n at 5. But CMS does little more than recite the underlying purpose of *ex parte* declarations in support of that claim; the agency offers no application of law to asserted facts, and it provides no response to AFPF's arguments for why a more detailed description of foreseeable harm need not entail further elaboration of the actual content of the record at issue, let alone any sort of "factual assertion" or "expert opinion" that reveal those contents. *See* Mot. to Exclude at 5–6.

In this regard, none of the hypothetical statements the Court posed during the hearing, which it imagined could be included in an *ex parte* declaration, would "of necessity disclose" the contents of the September 1990 memorandum rather than explain how the record may have continuing relevance within CMS such that disclosure would lead to concrete harms apart from mere loss of attorney-client privilege. *See* Hr'g Tr. 11:08–13 (whether the "document continues to provide the framework under which people analyze particular claims"); *id.* 15:17–16:4; *id.* 27:2–12; *id.* 51:8–13 ("The nature of the document is . . . seeking advice on the question of its authority X, Y, Z, P, D, Q, which are really important things to CMS for the following reasons. . . . And it goes to the core of our mission with respect to hospital audits or whatever."). The Court acknowledged as much, *id.* 28:18 ("It depends. It depends."), but CMS takes the matter for granted.

*Fourth*, CMS claims this case does not present a novel use of *Arieff* but merely the application of "existing precedent to a new situation in a way that gives effect to the principles that animate it." Def.'s Opp'n at 6. CMS's position is nonsensical. The application of existing rules

5

to factually distinct circumstances is the textbook definition of a novel extension of precedent. More importantly, if the Court were to accept CMS's *ex parte* declaration—which does not concern the technical application of Exemption 5 or the attorney-client privilege—the Court would be deviating from *Arieff* and applying its holding to a distinct legal question, namely, an agency's satisfaction of the foreseeable-harm standard. CMS suggests this is an "arbitrary distinction," *id.*, but it does not explain why that is so. Nor does CMS grapple with the mine run of FOIA cases dealing with *ex parte* declarations, all of which caution against expanding the exception to the general rule against secret proceedings.[2] *Lykins*, 725 F.2d at 1465; *see Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986) ("Even in administering [FOIA] . . . we have been vigilant to confine to a narrow path submissions not in accord with our general mode of open proceedings.").

*Fifth*, CMS insists that AFPF's reliance on *Ray v. Turner* is "misplaced." Def.'s Opp'n at 7. It is unclear what CMS is arguing. The agency simultaneously claims that *Ray* and *Arieff* reflect "essentially" the same standard, but "*Ray*'s meaning may once have been unclear." *Id.* In fact, only a year after deciding *Arieff*, the D.C. Circuit published its opinion in *Lykins v. Department of Justice*, which not only approvingly cited *Ray* together with *Arieff*, but reiterated the importance of limiting *ex parte* submissions to extraordinary cases, "justif[ying] to the greatest extent possible [their use] on the public record," and "mak[ing] available to the adverse party as much as possible of the *in camera* submission." *Lykins*, 725 F.2d at 1465. The Circuit continues to refer to *Ray* in cases involving *in camera* inspection, *Juarez v. Dep't of Justice*, 518 F.3d 54, 60 (D.C. Cir. 2008), and *ex parte* affidavits. *E.g.*, *Agrama v. Internal Revenue Serv.*, No. 17-5256, 2019 WL 2067719, at *1 (D.C. Cir. Apr. 19, 2019) (unpublished). In short, *Ray* remains good law.

---

[2] It is telling that, despite the foreseeable-harm standard having been a part of the FOIA for just over seven years, CMS cannot identify a single case where a court accepted an *ex parte* declaration that solely addresses an agency's satisfaction of that standard.

## **CONCLUSION**

For these reasons and those set out in AFPF's motion, CMS's *ex parte* declaration should be excluded and stricken from the record. Alternatively, the Court should order *in camera* review of the September 1990 memorandum and attachments, review CMS's *ex parte* declaration and unseal those portions that can be shared with AFPF on the public docket, and grant AFPF leave to respond further to CMS's arguments.

Dated: September 20, 2023                    Respectfully submitted,

*/s/ Ryan P. Mulvey*
Ryan P. Mulvey
D.C. Bar No. 1024362
Eric R. Bolinder
D.C. Bar No. 1028335

AMERICANS FOR PROSPERITY
FOUNDATION
1310 N. Courthouse Road, Suite 700
Arlington, VA 22201
Telephone: (571) 444-2841
rmulvey@afphq.org
ebolinder@afphq.org

*Counsel for Plaintiff*